# **EXHIBIT A**

## De Leeuw, Marc

| | |
|---|---|
| **From:** | De Leeuw, Marc |
| **Sent:** | Wednesday, January 25, 2012 3:58 PM |
| **To:** | 'Simmons, Luann' |
| **Cc:** | Namrow, Eric; Almeling, David S.; Richard K. Herrmann (rherrmann@morrisjames.com) |
| **Subject:** | RE: Stipulation |
| **Attachments:** | Proposed Order re Source Code.pdf |

Luann:

We do not agree with Apple's position (as you know) and do not believe Judge Thynge was unclear.  In view of your e-mail, we will submit the stipulation to Judge Thynge as a proposed order (with no changes other than to make it in to the form of an order).  I attach the proposed order we will submit.  I am available to talk this afternoon if you would like to speak further about this subject.

Best regards.

M.D.

**From:** Simmons, Luann [mailto:LSimmons@OMM.com]
**Sent:** Tuesday, January 24, 2012 3:08 PM
**To:** De Leeuw, Marc
**Cc:** Namrow, Eric; Almeling, David S.; Richard K. Herrmann (rherrmann@morrisjames.com)
**Subject:** RE: Stipulation

Marc,

Thanks for your email.  We have spent considerable time going over the proposed stipulation and the transcript of the hearing before Judge Thynge.  Because our position remains that it is MMI's burden to identify the versions of the product, i.e., the operating system, that are accused of infringement and because we found the transcript insufficiently clear regarding these issues, we cannot enter into the requested stipulation.

Let me know if you are available to chat today about how best to get this back before Judge Thynge to get it resolved by Order or otherwise.

Thanks,
Luann

**From:** De Leeuw, Marc [mailto:DeLeeuwM@sullcrom.com]
**Sent:** Monday, January 23, 2012 2:59 PM
**To:** Simmons, Luann
**Cc:** Namrow, Eric; Almeling, David S.
**Subject:** RE: Stipulation

Luann:

We have not received any response to the revised stipulation, which we believe is straight-forward and reflects what was discussed with Judge Thynge.  Let me know if Apple will agree, or whether this needs to be raised with the Court.

Best regards.

M.D.

**From:** De Leeuw, Marc
**Sent:** Saturday, January 07, 2012 9:35 PM
**To:** 'Simmons, Luann'
**Cc:** Namrow, Eric; Almeling, David S.
**Subject:** RE: Stipulation

Luann:

Attached is a marked-up version of your revised draft.  As I hope you will agree, the revisions reflect what was discussed at the end of the conference with Judge Thynge.  Let me know if this is agreeable to Apple so we can get this on file.

Best regards.

M.D.

**From:** Simmons, Luann [mailto:LSimmons@OMM.com]
**Sent:** Wednesday, January 04, 2012 2:16 PM
**To:** De Leeuw, Marc
**Cc:** Namrow, Eric; Almeling, David S.
**Subject:** RE: Stipulation

Marc,

Attached are our proposed edits to the stipulation.  Once you have had a chance to review the attached, let's schedule a call to discuss so that we can hammer out the language and reach a resolution on this issue.

Thanks,
Luann

**From:** De Leeuw, Marc [mailto:DeLeeuwM@sullcrom.com]
**Sent:** Thursday, December 29, 2011 3:08 PM
**To:** Simmons, Luann
**Subject:** Re: Stipulation

You too. Speak to you next week.

**From:** Simmons, Luann <LSimmons@OMM.com>
**To**: De Leeuw, Marc
**Sent**: Thu Dec 29 18:00:05 2011
**Subject**: RE: Stipulation

Marc,

I didn't want you to think I had forgotten about this – I just need to discuss with my client when Apple reopens on Tuesday.  I should have a response for you on Tuesday or Wednesday, at the latest.

Thanks, and I hope you are enjoying your holidays!

Luann

2

**From:** De Leeuw, Marc [mailto:DeLeeuwM@sullcrom.com]
**Sent:** Friday, December 23, 2011 1:28 PM
**To:** Simmons, Luann
**Subject:** Stipulation

Luann:

Attached is a draft stipulation reflecting the outcome of our call with Judge Thynge yesterday.  As you'll see, I put the second paragraph (and related text) in brackets because I do not know if Apple will be relying on additional source code.

As discussed, I will be out of the office next week.  I'm not going anywhere, however, so you can e-mail me and I can make myself available to talk (other than on Christmas or New Year's Day).  Happy holidays and New Year.

Best regards.

M.D.

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

# <u>EXHIBIT B</u>

1

<pre>
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                         - - -

 4
       MOBILEMEDIA IDEAS LLC,        :   CIVIL ACTION
 5                                    :
                    Plaintiff,        :
 6                                    :
          vs.                         :
 7                                    :
       APPLE, INC.,                   :
 8                                    :
                    Defendant.    :   NO. 10-258-SLR-MPT
 9

10                                    - - -

11                              Wilmington, Delaware
                               Thursday, December 22, 2011
12                              10:00 o'clock, a.m.
                               ***Telephone conference
13                                    - - -

14
       BEFORE:  MARY PAT THYNGE, U.S. MAGISTRATE JUDGE
15                                    - - -

16
       APPEARANCES:
17

18              YOUNG CONAWAY STARGATT & TAYLOR, LLP
                BY:  ADAM W. POFF, ESQ.
19

20                      -and-

21

22

23

24                              Valerie J. Gunning
25                              Official Court Reporter
</pre>

2

APPEARANCES (Continued):

SHAW KELLER LLP
BY:  JOHN W. SHAW, ESQ.

-and-

SULLIVAN & CROMWELL LLP
BY:  MARC DE LEEUW, ESQ. and
        JANE J. JAANG, ESQ.
        (New York, New York)

Counsel for Plaintiff

MORRIS JAMES LLP
BY:  MARY B. MATTERER, ESQ.

-and-

O'MELVENY & MYERS LLP
BY:  LUANN L. SIMMONS, ESQ.
        (San Francisco, California)

Counsel for Defendant

- - -

---

4

1   For your information, Val Gunning is serving as
2   the Court Reporter today.  And please reintroduce yourself
3   each time you talk so that we know who is addressing the
4   issues.
5   Who will be addressing the concerns expressed by
6   MMI?
7   MR. DE LEEUW:  Your Honor, it's Marc De Leeuw
8   from Sullivan & Cromwell.  I will be doing that.
9   THE COURT:  All right.  And who will be doing it
10  on behalf of Apple?
11  MS. SIMMONS:  Good morning, your Honor.  This is
12  Luann Simmons.  I will be arguing for Apple.
13  THE COURT:  All right.  Let's just begin.  I
14  will start with MobileMedia.
15  MR. DE LEEUW:  Thank you, your Honor.  I have to
16  say, I'm sorry that we're bothering your Honor.  It's only a
17  couple days away from your vacation and hopefully mine as
18  well.  I hate to do it at this late date, almost before
19  Christmas, but there are a couple of issues that really we
20  thought needed attention right away.
21  The first one is I think the most problematic.
22  The second one is more a question of just management and
23  obviously a question for your Honor's discretion.
24  On the first issue, this is a follow-up to our
25  last call about the source code that has been produced by

---

3

1   P R O C E E D I N G S

3   (REPORTER'S NOTE:  The following telephone
4   conference was held in chambers, beginning at 10:00 a.m.)
5   THE COURT:  Good morning.  This is Judge Thynge.
6   THE OPERATOR:  This is Kimberly with AT&T
7   Services.  Just a moment and I will connect you to the
8   conference.
9   THE COURT:  Okay.
10  THE OPERATOR:  Thank you.  Connecting Judge
11  Thynge to the conference.
12  A VOICE:  Thank you.
13  THE OPERATOR:  You're welcome.
14  THE COURT:  Good morning, counsel.  This is
15  Judge Thynge.  Who is on the line on behalf of MMI?
16  MR. POFF:  Your Honor, it's Adam Poff from Young
17  Conaway, John Shaw from Shaw Keller, and from Sullivan &
18  Cromwell, Marc De Leeuw and Jane Jaang.
19  Mr. DE LEEUW:  Good morning, your Honor.
20  THE COURT:  Good morning.  Let me just -- and
21  who is on the line on behalf of Apple, please?
22  MS. MATTERER:  Good morning, your Honor.  It's
23  Mary Matterer and Richard Herrmann from Morris James.  And
24  we have Luann Simmons with us from O'Melveny & Myers.
25  THE COURT:  All right.  Thank you.

---

5

1   Apple and other versions of source code.
2   I think toward the end of the last call we had,
3   your Honor, I think I expressed the concern that what would
4   happen in the case would be that MMI would be somehow
5   whipsawed by some sort of clever lawyer's argument later in
6   the day when our experts had been doing their analysis of
7   the materials that had been provided by Apple, reaching
8   their infringement conclusion, and then sometime down the
9   road somehow somebody would say, oh, no, you didn't do X or
10  Y that you needed to do because you didn't review that piece
11  of source code or that particular module.
12  And that was the issue we wanted to avoid.  We
13  were hoping that that would be resolved by a stipulation
14  because I think Ms. Simmons was suggesting toward the end of
15  the call, she thought that most of the products worked in
16  basically the same way with respect to the features at issue
17  since they were first released.  Unfortunately, that hasn't
18  happened, and what I think has come up is, in fact, just
19  what I was concerned about, of some sort of essentially
20  clever lawyer's argument that really does not have much
21  correlation to reality.
22  In our contention, in MMI's contention
23  interrogatories that we served many months ago, we, patent
24  by patent and claim by claim for the accused claims accused
25  certain products of infringement, and we specified the

6

1  features of those products that are accused of infringement.
2  That is how we listed our infringement contentions like in,
3  I have to say, virtually every other case I've been involved
4  in.
5          We listed it for the products some models, but
6  not all of them.  In fact, many of the infringement
7  contentions say, including at least Models -- for instance,
8  at least Models A1288 and 1318 and 1367, for instance, of
9  the iPod touch.
10          We listed some of the models, but essentially,
11  because we were identifying features of the various
12  products, we would identify the products, IPhone, i touch,
13  nano and the like, and then the features, the features that
14  are at issue.  And then we would explain element by element
15  why we thought those features infringed the claims.
16          We never itemized our infringement contention by
17  version of source code or anything else.  And Apple never
18  said, you need to specify in more detail which of the models
19  you're accusing of infringement or which version of the
20  source code you're accusing of infringement.
21          And when we went through our infringement
22  contentions, we, as we thought appropriate to try to be
23  specific, explained the basis of our contentions by citing
24  various publicly available materials that described Apple's
25  products.  And we put out, we explained, for instance, the

7

1  testing that lawyers did of the product.  You know, we
2  pressed the button and something happened.  Technical
3  specifications are available on Apple's website, marketing
4  materials and some user manuals.
5          And some of the user manuals, it just so
6  happens, some user manuals for some type of products happen
7  to include in their title a version of source code, and
8  that's the only reason why source code versions are ever
9  mentioned in the infringement contention.  It's not because
10  we said Version 3.1 or 3.2 is particular to this patent.
11  It's just because that happened to be the -- when we cited
12  to a document, we would cite to the title just as we cited
13  to a technical specification or a marketing material, yet
14  Apple never said anything, you need to be more precise, you
15  need to tell us which version.
16          And so when we got to this process of going to
17  discovery of the source code, we never thought, and I
18  respectfully submit, there was no reason to believe that
19  source code version would be a concern, that we would get
20  what we needed to do for the relevant period.
21          And to get back to the letter that started this
22  all out, Ms. Simmons wrote on September 29, 2011, she had
23  our infringement contentions in hand.  She said, well,
24  rounding up the source code is going to be a big endeavor,
25  but, nevertheless, rather than fight about it, here's what

8

1  we'll do.  We'll begin -- I'm quoting here.  We'll begin
2  collecting and preparing for inspection the Apple source
3  code that relates to, one, the accused functionality and
4  features identified in MMI's infringement contention.  And,
5  two, functionality and features of the accused products on
6  which Apple relies for its noninfringement arguments.
7          And she defined that in a letter as the relevant
8  source code.  So that's what we all thought we were getting.
9  And just to put a further emphasis on it, because I'm sure
10  the transcript can't reflect it, what she referred to is the
11  functionality and features identified in the infringement
12  contentions.  That's what infringement contentions are for.
13  They are supposed to identify what the products are and what
14  the functionality and features were, which we did.
15          And she was going back, rather than just
16  producing the entirety of the source code as we discussed
17  last time, she was going to go back to Apple engineers and
18  collect the source code that relate to the particular
19  functionality and features that had been identified in our
20  infringement contentions.
21          As I said, we never restricted MMI's
22  infringement contentions to particular software versions,
23  and doing so, frankly, would be sort of nonsensical.  We
24  didn't have every user manual that Apple had ever released.
25  In fact, Apple hasn't produced every user manual it ever

9

1  released, and there are many versions of user manuals.
2          Some products don't mention software versions at
3  all.  For instance, the IPod nano user manual that we cite
4  to, that does not have a software version in the title at
5  all.  So despite the fact that the IPod nano that I've used
6  has probably been updated with software several dozen times
7  during the life of the time I've had it, the user manual we
8  cite to is for one user manual, even though there are many,
9  many versions of software that have been used on that
10  product throughout the relevant period.
11          Again, Apple never said anything during the
12  entire time after we served our infringement contentions,
13  after we -- after she said, after Apple's lawyer said they
14  were collecting the relevant source code, their words, that
15  software versions were somehow limiting.  And, in fact, I
16  have to say, your Honor, in my years of practicing, I've
17  never had experience where a defendant says or a plaintiff
18  says that unless specified, one way or the other, that we're
19  only talking about a product with a specific -- in a
20  specific way or with a specific type of use or using a
21  specific software, that somehow a product when identified by
22  feature is somehow limited by a software version.  It was
23  never -- it has never been my experience that that has
24  happened.  It would require essentially in this case every
25  single patent to have literally hundreds of pages of

10

1  infringement contentions, because Apple pumps out software
2  versions I mean every few months. Every few months I wake
3  up on my computer and I get a little dialogue box and it
4  says, would you like the most up-to-date software version?
5          So that is not the nature of our -- of MMI's
6  infringement contention, and there's no legal requirement
7  that I know of, and certainly nothing in any, you know, in
8  any order in this case that would identify that software
9  versions had to be identified.
10         So what we were expecting to get back from Ms.
11  Simmons' letter back in September was the relevant source
12  code. And, frankly, the first day we walked in to start
13  reviewing the source code, when it was only 4.03, if I've
14  got that number right, the insinuation was made, as I think
15  during the last call it was made, you know, we think we can
16  probably stipulate to the fact that other software source
17  code is the same with respect to the features at issue in
18  this case. Obviously, they're not saying the source code is
19  the same. It's clearly not in some respects.
20         But with respect to the issues in this case on
21  infringement, the clear signal was we can probably stipulate
22  to that. After we had all the problems we did with respect
23  to getting the production, we obviously raised that issue
24  with your Honor at the last conference. And I think having
25  read back -- read the transcript, certainly, the insinuation

11

1  I got from that conference was that it was likely we're
2  going to reach a stipulation about this point.
3          And, again --
4          THE COURT: Well, before you continue on, I'm
5  going to tell you right now, I don't have a copy of the
6  transcript. Who did the transcript?
7          MR. DE LEEUW: Your Honor, I have that. It
8  is -- sorry. It is -- where do I find that on the
9  transcript?
10         THE COURT: You find it on the second page,
11  usually, the page --
12         MR. DE LEEUW: Leonard Dibbs.
13         THE COURT: Okay. Len Dibbs?
14         MR. DE LEEUW: And I will be happy to e-mail
15  that. I'm not suggesting that Ms. Simmons --
16         THE COURT: What I'd like you to do, though --
17  Mr. De Leeuw, Marc, what I'd like you to do is move it
18  along. You've taken 15 minutes just --
19         MR. DE LEEUW: I'm about to conclude your Honor,
20  actually.
21         THE COURT: Okay.
22         MR. DE LEEUW: So to conclude, essentially what
23  Apple had promised back in September 2011 was identify and
24  produce all the source code, their words, relevant source
25  code that relates to the accused functionality and features

12

1  that are identified in our infringement contentions or that
2  they would rely on them in noninfringement.
3          And what has happened now is that we have this
4  sort of cute argument that says, well, because the titles of
5  some user manuals mention some software versions, MMI's
6  infringement contentions are only limited to specific
7  software versions for some products, not all of them, and
8  we're only going to produce some little portions of source
9  code.
10         And so what we'd ask your Honor is either for
11  Apple to agree that all the source code with respect to the
12  accused functionality is the same, or to identify
13  specifically what the differences are and produce those
14  differences to us.
15         Thank you, your Honor.
16         THE COURT: And what is Apple's response to the
17  first issue?
18         MS. SIMMONS: Thank you, your Honor. This is
19  Luann Simmons. I will try to keep this short and sweet in
20  the interests of not imposing on the Court's time.
21         THE COURT: No. Take what --
22         MS. SIMMONS: I believe there's a fundamental
23  misunderstanding. The features that are accused of
24  infringement are not features divorced of the operating
25  system that implement those features.

13

1          So MMI has the burden of proof of infringement,
2  and to satisfy that burden and to put Apple on notice of
3  what has actually been accused of infringement, MMI must, as
4  our understanding of what this Court asked them to do at our
5  last hearing, identify the specific versions of the
6  operating system that are accused of infringement.
7          MMI has, although they initially refused to
8  confirm which versions are identified in their infringement
9  contentions, they finally did so on December 15th, and Apple
10  has not produced those versions of the source code, the
11  corresponding source code.
12         THE COURT: Let me go back and understand what
13  you just said because I think what I'm hearing is some
14  gobbledygook.
15         What you are saying is that the features that
16  are accused of infringement, no matter what product it is,
17  but if you go by the features, you can't figure out what
18  source code applies to those features. So they would have
19  to identify the specific source code version for those
20  features?
21         MS. SIMMONS: Not the source code. I think
22  there's a confusion between the versions of the operating
23  system and then the source code that corresponds to that
24  operating system version.
25         We don't -- we're not implying that there's some

14

1  secret version of the source code that we are going to rely
2  on later as some gotcha.  We're simply saying that we need
3  to know which versions of the operating system are accused
4  of infringement because features and functionality change
5  over operating system versions just as with hardware model
6  versions.  And once we know what those versions are, which
7  we now know at least which versions are identified in the
8  infringement contentions, we can go back and produce the
9  code for that, which we have done.
10        THE COURT:  So you're saying to me being advised
11  of what features are being accused by the plaintiff is not
12  enough?
13        MS. SIMMONS:  It is not, and it would improperly
14  shift to Apple the burden of proof of infringement.
15        THE COURT:  Why?  Why would it improperly shift
16  if they've identified the features in -- that they're
17  accusing of infringement?
18        MS. SIMMONS:  MMI has identified what they
19  believe are, you know, based on their theory of
20  infringement, they claim these particular features infringe
21  certain claims.  We would then need to go back through each
22  of the versions of the operating system and decide whether
23  we think the way that feature works in that version matches
24  up with their theory of infringement and then decide, well,
25  it seems like this is one they would accuse of infringement

15

1  as well, so I assume this product is accused of infringement
2  also.
3        THE COURT:  Well, I think it would be fair to
4  understand that when they made the accusation and filed the
5  lawsuit, they wouldn't have had access to your source code
6  to figure out which versions.
7        MS. SIMMONS:  Actually, that's not correct,
8  because the information about the operating system versions,
9  again, there are no secret source code versions that only
10  Apple would know about.  The information about the operating
11  system versions is publicly available in multiple sources,
12  as was acknowledged by MMI's counsel and as is evidenced in
13  their infringement contentions, which rely exclusively on
14  publicly available information.  So, in fact, that
15  information is known to MMI.
16        Moreover, we've had over a year of discovery.
17  So even if it had not been known publicly, which it is, it
18  would be known for sure now.
19        So --
20        THE COURT:  So how does this shift the burden to
21  you and make it so horribly onerous?  I'm trying to figure
22  out, because usually when you accuse a product, even if
23  you're talking about a software aspect of that product, it
24  usually does go to the features of the product, and this
25  feature infringes because X, Y and Z.  And this is how the

16

1  claims read, and we're saying it infringes because of X, Y
2  and Z.
3        So I'm trying to figure out how the version of
4  the operating systems that are accused of infringement,
5  how that so dramatically changes when the features, the
6  broader -- I guess the broader part have been identified as
7  being accused of infringing.
8        MS. SIMMONS:  The features -- and, you know, not
9  getting into the specifics of the features accused in this
10  case, but the features and the way that they are manifested
11  through the different versions of the operating system
12  change over the different versions.  And so, for example,
13  some features maybe even weren't available in earlier
14  versions, or they were, but in a more limited way.
15        Apple then is left to make the determination
16  that, well, this more limited implementation of a particular
17  feature, say, voice dialing.  Apple then would have to go
18  back.  It would be shifted to Apple to try to make some
19  determination as to whether that implementation would fall
20  under MMI's theory of infringement as to why that feature
21  infringes in the first place.
22        It would be essentially -- I mean, for example,
23  Windows, the Windows Operating System.  Your Honor may have
24  extensive experience with that, as I'm sure the rest of us
25  do, has changed dramatically over time and the way different

17

1  features work.  It would not be sufficient notice to
2  Microsoft to say, I'm accusing a feature of opening a file,
3  and by simply going through and analyzing that feature as it
4  operates in the current version of Windows, I thereby get
5  access to and have satisfied my burden to accuse of
6  infringement all versions of Windows.
7        In fact, I think another misunderstanding we're
8  having is the accused product is not the -- it is the IPhone
9  running a particular version of the operating, because these
10  are not hardware patents.  This isn't a patent for a cable,
11  for instance, so that you could just accuse a piece of
12  hardware.
13        MR. DE LEEUW:  Your Honor, it's Marc De Leeuw.
14        THE COURT:  No, Marc, don't even start.  Don't
15  even start.
16        MR. DE LEEUW:  Okay.
17        THE COURT:  I'm going to do this separately.
18        MR. DE LEEUW:  That's fine.
19        THE COURT:  Continue.  Continue.
20        MS. SIMMONS:  Does that answer your Honor's
21  question?
22        THE COURT:  I think so.  Go ahead.  I
23  interrupted you and I didn't know if you had anything else
24  to add on this particular issue.
25        MS. SIMMONS:  I do not.

18

1          THE COURT:  All right.  Now, Marc, you can talk.
2          MR. DE LEEUW:  I apologize for interrupting,
3   your Honor.
4          I think two things.  One, your Honor, I would
5   say this is like every other, or virtually every other case
6   I think your Honor is thinking about and certainly that I've
7   ever been involved in.  You identify feature, and the
8   defendant will sometimes be in the situation of saying, oh,
9   no, that feature wasn't in the product back in the first
10  three years of its existence.  So those three years are not
11  relevant.  But for the last four years, that feature has
12  been there and we'll produce to you the versions of source
13  code or different user manuals for those four-year periods,
14  and that's the normal process and it happens all the time.
15  I mean, for instance, in the Microsoft case, the date picker
16  case, for instance, that went up to, I think it was the
17  Federal Circuit or the Supreme Court.
18         I mean the date picker that's in Microsoft
19  Outlook can be identified as the relevant feature.
20  Microsoft needs to go back and determine which versions of
21  source code have the date picker in it.  That's what we did.
22  We identified the features just like every other case.
23         And, more importantly, beyond that, I mean, if
24  this were an issue that Apple thought it should raise --
25  and this goes back to my point about being whipsawed.  MMI

20

1          THE COURT:  That's the question I've got for
2   Apple.  Has the functionality of the features, functionality
3   in the features changed?  The features that are being
4   accused, has the functionality changed over different
5   versions?
6          MS. SIMMONS:  It absolutely has, your Honor.
7   And, you know, we again respectfully feel a little whipsawed
8   because we thought we did understand the framework in which
9   we were working.  But, yes, some of the accused
10  functionality absolutely has changed over time if we're
11  saying any and all versions not previously identified by MMI
12  of the operating system are at issue.
13         In the initial versions, for example, of the
14  operating system that ran on the IPhone, Apple didn't even
15  offer things like location services, which is the feature
16  that allows you to figure out where you are and get
17  directions from your current location.
18         THE COURT:  But why can't you, for example, if
19  that's a feature that's accused, sit there and say, it
20  didn't exist for IPhone one or IPhone 2 or whatever, and
21  therefore -- but we'll give you the source code from when it
22  started, because it is a functionality that existed.
23         And if you are saying -- unless you're saying to
24  me that you look at the patent and -- you're going to
25  disagree on this, but they've accused this functionality and

19

1   put in its infringement contentions just like what we
2   thought to be in every normal case in the middle of March of
3   this year.  We amended them in June of this year.  Again, no
4   comment ever had been made by Apple that you're not
5   identifying which software versions, which would have been a
6   strange argument, at any time during that time.
7          And then in September, when we first got to the
8   source code, and Ms. Simmons said we'll deal with the source
9   code, they didn't say we're only going to give you versions
10  that are identified in your infringement contentions.  She
11  said just sort of the normal case.  We'll produce source
12  code that relates to the accused functionality and features
13  that are set forth in the infringement contentions.
14         So I respectfully submit, it was functionality
15  and features, the features that were identified in
16  infringement contentions that were always the issue here,
17  and the source code versions only happened to come up
18  because of some titles of some documents.
19         And so, respectfully, I would submit, your
20  Honor, that really shouldn't be the issue here and either
21  Apple should produce all the versions, or I think probably
22  the most efficient thing to do here is to stipulate, because
23  I think Apple has suggested several times that they don't
24  think the functionality has changed with respect to version
25  over version.

21

1   you're saying because this functionality changed in X
2   fashion, it no longer -- this version no longer infringes.
3   That's what they're concerned about.
4          MS. SIMMONS:  Again, our view is that would
5   improperly shift to Apple, the burden of determining what
6   their theory of infringement is as to how this particular
7   implementation of a feature in a particular version of the
8   operating system infringes, because if that implementation
9   has changed over versions, Apple would be left with needing
10  to decide whether we think that fits into their theory.
11         And essentially that would mean that -- and my
12  experience in cases for Apple has apparently been different
13  than MMI's counsel has been.  But that would mean that a
14  plaintiff would be able to say, there's a feature that's
15  implemented in the current version of Apple's operating
16  system.  I'm accusing that feature.  Now Apple, you have to
17  go back in every case and either present noninfringement
18  arguments for it, source code for and discovery for every
19  single version.
20         THE COURT:  I am not necessarily agreeing with
21  you that solely on features.  My understanding is that
22  functionality has also been described as to how that
23  functionality, how that feature, that particular feature,
24  how its functionality infringes under this patent that I
25  guess -- these patents, which I understand are basically

22

1  system patents or method patents.
2      So it's not just a feature and said because the
3  phone rings, that's the feature that we're accusing.  We're
4  accusing how the function of that ring occurs and how we
5  feel it falls within the patent.
6      Isn't that what you are saying, Marc?
7      MR. DE LEEUW:  That's exactly right.
8      THE COURT:  So it goes back to functionality
9  more so than just the broad statement of feature.
10     MR. DE LEEUW:  Yes.
11     THE COURT:  Here's the feature.  Here's the
12 functionality of that feature.  Okay.  Give us all the
13 source code that relates to this type of functionality.
14     MS. SIMMONS:  It is actually for most of these
15 patents at the high level of the feature as you described.
16 So one of the patents describes declining an incoming call.
17 So the feature of being able to decline an incoming call has
18 been accused of infringement.
19     THE COURT:  All right.  So maybe in that
20 circumstance, when it's that broad, under the patent, you
21 may be stuck with giving the source code for everything that
22 deals with that feature.  If you are saying to me that the
23 code, the patent is that broad, I mean, is that broad as far
24 as the claim terms are, then --
25     MS. SIMMONS:  The accused feature/functionality

23

1  is that broad for many of these patents, and Apple would
2  then be left with the chore of going back through each of
3  these versions of the operating system that it has ever
4  produced to determine whether that feature is implemented in
5  a way that coincides with MMI's theory of why that feature
6  infringes.
7      THE COURT:  Yes, but let me just understand.  If
8  the claim terms are that broad, okay, they're that broad,
9  then there's going to be a wider berth for infringement.
10 Right?
11     MS. SIMMONS:  Presumably, yes.
12     THE COURT:  Okay.  It may be a wider berth for
13 infringement.  I'm not talking about whether the patent is
14 going to be invalid or that claim term is going to be
15 invalid.  I'm talking about if the claim term or the -- yes,
16 the claim term or whatever the claim itself is that broad,
17 then whether you like it or not, it is broad.  And to that
18 extent that it covers or it has that type of description, I
19 think you're kind of stuck with producing the source code
20 for it.
21     MS. SIMMONS:  And, again, our issue is not with
22 producing the source code or not producing the source code
23 at this point.  Our concern is that we need to understand
24 what's being accused of infringement.  And, again, the
25 versions of the operating system --

24

1      THE COURT:  You've been told what's being
2  accused of infringement.  This feature in light of the way
3  it falls within our patent and how our patent reads is being
4  accused of this.  And to the extent that there may be more
5  in the weeds a more particularized functionality that goes
6  to that particular feature or that exists in the claim terms
7  than in the claim itself that they are relying upon, yes,
8  they provide you with that functionality.
9      But what you are saying to me is, okay.  They've
10 got to tell us every version of the operating system that
11 we're accusing of infringement.
12     MS. SIMMONS:  Yes, I believe that is their
13 burden to identify, because the features are not divorced
14 from the version of the operating system.  They are
15 implemented differently in different versions of the
16 operating system, and that is, in fact, in some of the
17 infringement contentions, MMI cites to the way the feature
18 is implemented in one version and then also cites to the way
19 it's implemented in a different version, thereby satisfying
20 their burden from our perspective as to those two versions.
21 So we have produced that source code.
22     THE COURT:  So what ones haven't they done an
23 adequate identification for you, because now you've just
24 admitted to me that they have done it.
25     MS. SIMMONS:  That they have now confirmed that

25

1  the versions, that our understanding of which versions are
2  identified in the infringement contentions, they've
3  confirmed that now on the 15 and we produced that code on
4  Tuesday.
5      So if that's what we're talking about, if we're
6  talking about the versions that are identified in their
7  infringement contentions that they have not confirmed, then
8  we're on adequate notice, I totally agree, as to those
9  versions.  If, however, they're saying we want to go back to
10 the earliest version of the operating system that Apple ever
11 offered, we just don't have to tell you that, that is where
12 we feel like we end up getting whipsawed.
13     THE COURT:  I think both of you are talking out
14 of both sides of your mouth, which is what's driving me
15 crazy.
16     The last comment that was made, Marc, is that
17 accurate?
18     MR. DE LEEUW:  I'm not exactly sure what Ms.
19 Simmons was saying there in the last comment.  We certainly
20 did identify certain user manuals as we went through the
21 infringement contentions.
22     THE COURT:  Why don't you --
23     MR. DE LEEUW:  What your Honor I think would
24 understand infringement contentions to do is not just -- you
25 have a feature.  You explain how that feature infringes the

26

1  patent by going through the functionality of that feature.
2      THE COURT:  That is right.
3      MR. DE LEEUW:  And specifying in as much detail
4  as you need to to explain how it is that it works that
5  matches up to the claim elements.
6      And in some cases we use user manuals that
7  specify specific in the title "software version."  But in
8  lots of cases we didn't.  I mean, just as an example, one of
9  the patents-in-suit, the '430 patent -- MMI just happened to
10  be looking at this one -- accused of infringement the
11  IPhone, several models, the iPod touch, including at least
12  three models, the iPod nano, shuffle, the -- several models
13  of IPad and an iPod classic.
14      Nowhere in those infringement contentions are
15  any software versions mentioned because it just so happened
16  that for going through the elements of the claim, there was
17  no need for the specific user manuals.  So that happens to
18  be a patent where there's no software versions mentioned
19  anywhere.
20      Never -- now, it's more than nine months since
21  we served our infringement contention -- has Apple ever said
22  that our infringement contentions for that patent were
23  insufficient or didn't put them on notice.
24      So at least for that patent, I think we would be
25  entitled to, according to Ms. Simmons' theory, every single

27

1  operating system version for every single one of those
2  products since 2004, so that would clear up the issue.
3      We're entitled to source code for every single
4  product for every single time period.  I don't think that's
5  really what Apple is suggesting.  I think the normal course
6  here is, I think as your Honor indicates, you specify what
7  the functions are, the feature -- the functionality of
8  particular features and then the defendant goes back and
9  says, now, here it is.  Here is source code that's relevant
10  to that and this is all that's necessary.  This is the
11  relevant source code for the entire time period.  And if
12  they believed that it has changed in some material way that
13  would be relevant, then they ought to produce that or
14  stipulate that, you know, we'll agree that this source
15  code -- actually, MMI is willing to give up a substantial
16  amount of their rights because we're willing to rely on the
17  source code that has been produced to us even though it may
18  be that earlier versions of the source code are perhaps more
19  clear on infringement.  We're willing to say we'll take this
20  source code and just live with that.
21      But what Apple is saying is, well, we don't want
22  to go back and determine whether anything has changed, but
23  we have already, nine months ago, identified the specific
24  features and functionality of those features that we contend
25  infringe.

28

1      It's really up to them, as Ms. Simmons said in
2  her letter of September, to go back and collect and produce
3  the source code that's relevant to that functionality and
4  features, as she said.  And if it's too big of a burden,
5  then -- should have raised it long ago, but I would just say
6  then stipulate.
7      You know, I think Apple is in a fortunate
8  situation because MMI is willing to stipulate using only the
9  source code that has been given.  It could have been a
10  selected version of source code that was only good for
11  Apple.
12      If it's too big of a burden of proof, Apple
13  should say we're willing to live to this source code with
14  respect to it.  If a feature, as your Honor pointed out, was
15  not existent during a time period, well, that's easy to
16  clear up and say that feature didn't exist during this time
17  period.
18      THE COURT:  Well, it's not just a feature.
19      MR. DE LEEUW:  It would more of a damages issue
20  for the next trial than for this phase.
21      But if this feature and functional specified in
22  the contention interrogatories changed in some fashion that
23  would be relevant to infringement, then Apple should either
24  produce that source code or be willing to stipulate.
25      THE COURT:  Well, my understanding, it's not

29

1  just the feature, it's the functionality, and that
2  functionality has either been described or addressed.
3      MR. DE LEEUW:  That's right, your Honor.  I
4  would --
5      THE COURT:  -- in the contention
6  interrogatories.
7      And if the dispute is with the broadness of
8  the claims of the patent, that is another issue, quite
9  frankly.
10      So I'm having a hard time understanding, and
11  maybe, and I apologize for this, I'm just having a hard time
12  understanding what Apple's concern is in this regard.  I
13  mean, what Apple's concern is regarding the request that's
14  being made by MMI.
15      MS. SIMMONS:  At this point, your Honor, I'm not
16  even clear what the request is, because our understanding
17  from the November hearing was that we were asking us to
18  produce the source code for the earlier versions identified
19  with respect to the 12 patents that they had mentioned in
20  the briefing prior to that hearing.  We discussed it at
21  the hearing.  Your Honor asked them to identify those
22  versions, and then we would produce the code.  We went back
23  and forth, but that has now been done.  We've produced that
24  code.
25      My concern, I suppose, is that at some point

30

1  down the road we're going to be surprised by an allegation
2  that a particular implementation in an earlier version going
3  back that wasn't identified and that we aren't on notice
4  about is also accused.
5          And --
6          THE COURT:  But if you're on notice on the
7  functionality of that, I'm sorry.  I think you're on notice,
8  that version.  If the functionality, as described by them,
9  and that version did that functionality or had that
10  functionality, then I think you are on notice.
11         MS. SIMMONS:  But then Apple is left with a
12  determination of whether the implementation or their
13  description of that functionality is the same as the way
14  it's implemented in earlier versions.
15         And --
16         THE COURT:  Well, I think all you have to sit
17  there and do is try and figure it out.  If they're saying
18  this functionality is being accused, and this type of
19  function and how it does X, Y and Z is being accused, then
20  I think you can figure out what source code is applicable
21  to that.  You're the one who has got the source code.  And
22  by telling you the functionality that's involved and
23  describing that, then there could be multiple versions of
24  source code.
25         But getting back to your question, what are you

31

1  looking for, Marc?  If you could just describe that in this
2  discussion today, what are you looking for on the issue of
3  the source code versions?
4          MR. DE LEEUW:  I think, your Honor, either a
5  stipulation or an order from the Court that the iOS 4.3
6  source code that has been produced for inspection is
7  applicable to all of the accused products and features
8  identified in the infringement contention for all relevant
9  time period so that the other versions of source code
10  function in the same -- in the same way with respect to
11  these functions and features, and for purposes of a
12  noninfringement, Apple and its experts will not rely on any
13  differences in any other version of source code from the 4.3
14  source code that has been produced.  In other words, in
15  short, that the 4.3 source code that has been produced is
16  applicable for infringement purposes for all of the other
17  versions, and I would say that have these functions -- the
18  functionality that has been identified in the infringement
19  contentions.
20         MS. SIMMONS:  And our response to that, of
21  course, would be that would be factually incorrect, so it
22  would be inappropriate.
23         THE COURT:  But you haven't told me how it's
24  factually incorrect.
25         MS. SIMMONS:  For example, as we discussed

32

1  earlier, some of the described functionality and features
2  doesn't even exist in the earliest versions of the operating
3  system.
4          THE COURT:  Okay.  So we take those out because,
5  obviously, if they didn't exist in the -- and that's an
6  argument.  What I think they're concerned about is -- I'm
7  not even certain now what you are concerned about, Marc,
8  because I'm now so confused.
9          MR. DE LEEUW:  Sure.
10         MS. SIMMONS:  I will try --
11         MR. DE LEEUW:  Oh, I'm sorry.
12         MS. SIMMONS:  If I can add one quick thing, we
13  actually haven't just produced 4.3, as I mentioned earlier.
14  Now that once we received the clarification from MMI
15  regarding what's identified in their infringement
16  contentions, we produced those versions as well, so we
17  produced additional versions beyond just 4.3.
18         THE COURT:  Yes?
19         MR. DE LEEUW:  Your Honor, to answer your
20  question, what we're concerned with -- what we want to be
21  able to do is to say, we're at just the point here of
22  liability.  We're not in the damages phase.  A damages trial
23  would be scheduled off into the future.  We want to be able
24  to say that with respect to this functionality that we've
25  identified, that that functionality in the IPhone, whether

33

1  it's 3G, 4G or 4GS, if that functionality is found, it is
2  either -- it either infringes or doesn't infringe based on
3  what our experts have done in terms of analyzing the
4  products and the source code that has been produced.  And I
5  would say the 4.3 source code, because I mean things are
6  coming in literally the last couple of days, and we would
7  have lots of questions about that.
8          But that's really the question, is, you know,
9  are we going to be at trial a year from now and our expert
10  is going to say, the iPhone 3G and 4G and 4GS infringes a
11  particular patent?  And I've looked at -- I've looked at
12  the -- at all three of those products.  I've examined
13  various user manuals and I read the deposition and I've
14  examined source code.
15         And then somebody says, oh, well, but you never
16  looked at the source code for Version 2.1, and the expert
17  would have to say, sure.  I never did.  It was never given
18  to me.
19         And then Apple will say, well, your Honor, Judge
20  Robinson, MMI does not have evidence of infringement of the
21  product as it existed between the years 2004 and 2006
22  because the 2.1 version software was in place, so therefore
23  those claims have to be out.
24         And that is what -- we just want to have one
25  base of source code we can use for the relevant period.  If

34

1   the feature does not exist, that's easy.  Your Honor, I
2   think your reaction is the right one.  That's out.  That
3   will be a damages question, when did the feature exist.
4           THE COURT:  Well, no.  It would also be an
5   infringement question for that particular functionality.
6           MR. DE LEEUW:  MMI wouldn't be accusing -- the
7   functionality that MMI is accusing of infringement is set
8   forth in its infringement contentions, so if it didn't have
9   that functionality during some period of time, we wouldn't
10  be accusing it of infringement during that period of time.
11          THE COURT:  Well, let's put it this way.
12          MR. DE LEEUW:  So I think we're in agreement on
13  that.
14          THE COURT:  If the functionality did not exist
15  at that period of time, it can't infringe that
16  functionality.
17          MR. DE LEEUW:  Correct.  So the only issue is
18  with respect to the product that had the functionality that
19  has been identified, we just want one base of source code to
20  be applicable to those products, and we don't want to be --
21  we've all been using the same word -- "whipsawed" into
22  somehow being said, it being said later that our experts or
23  MMI doesn't have the evidence on some prior -- some product
24  during some period of time because they have not looked at
25  the source code for that product, or the source code is

35

1   different in some way.
2           We, frankly, your Honor, never would have
3   thought this would have been a problem because, you know, as
4   I said, we got the distinct impression that this was going
5   to be a stipulation that we could work out with Apple when
6   we first started doing the review of the source code.  I
7   certainly got that impression from the last conference call
8   I had with your Honor.
9           And that's really, I think, at this point, the
10  most appropriate thing to do.  We have source code that has
11  been produced.  It has been produced over more than a month
12  now.  Our experts have been reviewing it.  And to start
13  going back and trying to -- if there's some specific
14  difference that Apple believes it should rely on,
15  presumably, it's going to want to give that source code to
16  its experts.
17          If there's some particular difference in some
18  particular version of source code, you know, that it wants
19  to hold out of that stipulation, well, then, that's fine,
20  and give that to our expert and let's have that -- that one
21  issue be excluded from the overall stipulation and/or court
22  order.  But otherwise it seems to me the right course here
23  is to say the source code that has been produced is
24  applicable for infringement purposes with respect to the
25  accused functionality for the entire period with respect to

36

1   all accused products.
2           MS. SIMMONS:  And, again, the problem we're
3   having with that is that the accused products, in fact, are
4   and should be the different versions of the operating
5   system.  And so we are then left with -- I mean, there are
6   the easier cases of, well, we didn't even have that
7   functionality in an earlier version.  But the problem will
8   be, and where I believe the burden would be improperly
9   shifted to Apple will be, where there are versions where
10  some form of that functionality, but in a different way is
11  implemented in an earlier operating system version.
12          And that leaves it to Apple to go back and try
13  to make that determination.  Does this implementation of
14  this feature in the earlier version of iOS meet with their
15  theory of infringement?
16          And --
17          MR. DE LEEUW:  Well, your Honor -- I'm sorry.
18          MS. SIMMONS:  In my opinion, that shifts to
19  Apple the burden of establishing infringement for the
20  various accused products.
21          MR. DE LEEUW:  Your Honor, I would say that's
22  what Ms. Simmons said she was going to do back in September.
23  She said they were going to be collecting and producing the
24  source code that relates to the approved functionality and
25  features identified in MMI's infringement contentions.

37

1           So I mean we've been expecting this for many,
2   many months.  We expected that this wouldn't be a problem
3   because they could stipulate.
4           As I said, if there is a particular -- if Ms.
5   Simmons goes back to her clients and they say, you know,
6   look.  With respect to 95 percent of this, you know, we
7   don't see any particular difference in the way the product
8   and functionality was implemented, so we don't see any
9   problem with that, but with respect to, you know, this
10  functionality or this functionality when it existed, I think
11  it was implemented somewhat differently.  Well, then, she
12  could produce the source code for that, and it -- and it
13  could be the subject of further expert analysis.  But for
14  the -- I would think very, very large majority of this, it's
15  all going to be the same.
16          But we, to the extent it wasn't the same, Apple
17  said long ago it was going to produce all the versions.  It
18  was going to produce all the source code that relates to the
19  functionality and features.
20          So we think it's really, frankly, your Honor,
21  just unfair to go back on that now essentially a few weeks
22  before the expert reports are due.
23          THE COURT:  Well, basically, I'm going to grant
24  what plaintiff is requesting.  You guys work out a
25  stipulation and get it to me to sign off.  I'm not doing --

38

1  I'm not trying to do an order on this.  It is what has
2  essentially been discussed today and what Marc has outlined.
3  And if there's something that --
4       MS. SIMMONS:  Which is what, specifically?
5  Again, the version we've produced now, multiple versions of
6  the source code.  Is the stipulation going to include the
7  earlier versions that we have produced, or are we going to
8  have to stipulate to something that is factually incorrect,
9  that Version 4.3 works for all time?
10      THE COURT:  You were supposed to produce source
11 code in response to the infringement contentions.
12 Hopefully, you have produced that source code in response
13 and the versions of that source code related to it.
14      MS. SIMMONS:  We have produced the versions of
15 the source code that relate to the operating system versions
16 that MMI has identified.
17      THE COURT:  I understand that, and you keep
18 limiting it to the operating versions and I keep going back
19 to functionality, okay, because I think that's the
20 difference.  And I'm not agreeing with you, that it's just
21 on the -- that they have to identify the operating versions
22 necessarily, not from what I've heard so far.  But,
23 certainly --
24      MR. DE LEEUW:  Your Honor, what I would
25 indicate, and I think I can work out wording addressing Ms.

39

1  Simmons' problem about not saying something that's factually
2  inaccurate.
3       What I would say is that the 4.3 source code
4  that has been produced to us is the only source code that's
5  relevant for infringement purposes with respect to the
6  identified functionality in the infringement contentions,
7  and we can work out that language.
8       THE COURT:  Well, my question is what is being
9  argued now and coming up, and I think I'm getting whipsawed
10 by both of you.  Okay?
11      MR. DE LEEUW:  I apologize.
12      THE COURT:  No.  I really, truly do, because I
13 know -- I have a pretty good idea of what's going on right
14 now between the two of you.  But what is being suggested to
15 me is that the iOS 4.3 source code was not the only source
16 code produced.  Is that correct?
17      MS. SIMMONS:  That is correct.
18      THE COURT:  Okay.
19      MR. DE LEEUW:  Your Honor, literally over the
20 last couple of days, some pieces of other source code have
21 come in.
22      THE COURT:  So let me finish, Marc.
23      MR. DE LEEUW:  I'm sorry, your Honor.  I
24 apologize.
25      THE COURT:  I hadn't finished.

40

1       So to the extent there was other source code
2  produced that was going to be relied upon by either one of
3  you, that gets included in the stipulation.
4       MR. DE LEEUW:  What I was going to say, your
5  Honor, is, our experts have been spending essentially six
6  weeks reviewing the 4.3 source code.  We just got literally
7  some pieces of other source code versions.
8       THE COURT:  Yes?
9       MR. DE LEEUW:  It wasn't their intent to rely on
10 them because, frankly, we'd need to go through an extensive
11 sort of analysis that we had just gone through, asking for
12 pieces that aren't there, getting, you know, the normal --
13 the normal back and forth.  And, frankly, your Honor, I just
14 don't -- we weren't planning on relying on it.  If there's
15 something in particular that Apple wants to rely on in that,
16 then, of course, we'll look at that.
17      THE COURT:  And that is what I am saying.  I am
18 not going to -- if you're going to limit yourself just to
19 that version and that's the only version, but Apple has got
20 information to say, hey, listen, the stuff that we just gave
21 to you we think goes to noninfringement, that gets included
22 in the stipulation.
23      MR. DE LEEUW:  Thank you very much, your Honor.
24      THE COURT:  All right.  Now, on the IPhone 4S.
25 You've got less than ten minutes to talk to me about this.

41

1       MR. DE LEEUW:  Your Honor, this is Marc De
2  Leeuw.  I will make this very, very short.
3       As opposed to the first issue where, you know,
4  we thought there is really, you know, a particular answer
5  that's right, I freely concede that this is entirely a
6  matter up to your Honor's discretion and a matter of case
7  management.
8       I think both sides, I hope, would concede that
9  this is a question that goes both ways in different cases
10 and to whether, as products get released, they should be
11 included in the case.
12      We think that the 4S for -- in very, very large
13 part infringes in very much the same way as the IPhone 4.
14 There are very small differences that we think that exist
15 with respect to infringement analysis.  We think that with
16 respect to it, the discovery could be very limited
17 schematics.  We think we wouldn't need much more than that
18 given our discussions.
19      And so we think given we're a year away from a
20 trial and the changes that are necessary, it's appropriate
21 to include it in the case.  Otherwise, given that the
22 damages trial may very well be two years from now or more,
23 we'd be in a situation where the bulk of the damages, the
24 bulk of the accused products, potentially accused products,
25 would be in some separate case that would be lagging behind

42

1  whereas we think, you know, it would be quite easy to
2  include this product in the case, and slapping a new letter
3  on a model number shouldn't allow a product to get out of
4  the case. And we think it's much more efficient to include
5  it in the case.
6         THE COURT: Well, let me just ask this question,
7  because I know I'm going to get gobbledygook from both of
8  you on it. Anyway, let me just ask. When are expert
9  depositions or expert discovery supposed to be completed?
10 When are you supposed to start briefing on claim
11 construction and summary judgment?
12        MR. DE LEEUW: The expert reports are due
13 January -- mid-January, mid-February, and then depositions
14 concluded in mid-March. And the summary judgment motions
15 are to be filed in mid-April, with a hearing on that, and
16 claim construction is at the same time, with an argument on
17 claim construction and summary judgment on July 27th.
18        THE COURT: All right. And when is trial?
19        MR. DE LEEUW: Trial is December 3rd.
20        THE COURT: Okay. And what is Apple's argument?
21 And I recognize it's after the time in which -- I understand
22 your argument, that this would be reopening discovery on
23 these products, albeit, though, I really do think this is a
24 feature/functionality case rather than a "product" case.
25 But I understand your concern that it's after the fact.

43

1  But let's face it, these two came out after, or this phone,
2  the iPhone 4S, came out after discovery had closed.
3  Right?
4         MS. SIMMONS: I think right at the, or right
5  near the end of discovery.
6         THE COURT: Yes. So it would have been a little
7  difficult to get everything done.
8         MS. SIMMONS: Agreed. And as MMI pointed out,
9  we are not arguing that they were dilatory in raising this
10 issue.
11        THE COURT: Yes.
12        MS. SIMMONS: Our argument is that the iPhone
13 4S -- and it's not just the iPhone 4S, it is also the new
14 operating system version, which is iOS5, function in some
15 pretty significantly different ways that are material to
16 this case, which would require more than just the limited
17 discovery MMI claims is needed, and would potentially
18 require differences in the way we analyzed our invalidity
19 and noninfringement case as well as the proposed claim
20 constructions that have already been exchanged by the
21 parties.
22        THE COURT: Well, this is my thought on that.
23 As much as I would like to necessarily include a new product
24 into this case, which is the reason why I asked for the time
25 frame, as much as you say trial is a year out,

44

1  unfortunately, Judge Robinson does not have that luxury,
2  because there's going to be a certain point in time where
3  she's going to have to start rendering decisions and putting
4  this together. And to the extent that taking discovery on
5  this point and taking discovery on this new product and new
6  software version would in any way impede or go into her
7  time, I'm concerned that's exactly what's going to happen.
8         I do believe this, though. I do believe,
9  though, that whatever happens at the trial that's now
10 presently scheduled in December 2012, and whatever happens
11 on claim construction that Judge Robinson does on the
12 present product/feature/functions that are being accused in
13 this case, is going to give you a lot of read as to whether
14 the iPhone 4S and the iOS5 operating system potentially
15 infringes the patents involved in this case.
16        And so I'm not going to include it in this.
17 It's going to require you that if you want to make the
18 application, to file a separate, to file another lawsuit.
19        MR. DE LEEUW: Your Honor, it's Marc De Leeuw.
20 Thank you for that.
21        The only one thing that I wanted to just mention
22 because I think there's a little lack of clarity, the iOS
23 5.0 -- and I'm not asking your Honor to reconsider, I think
24 your Honor's position makes a lot of sense. I just wanted
25 to make the clarification. The iOS 5.0 is in this case

45

1  because it is being used with the iPhone 4 product.
2         THE COURT: Okay.
3         MR. DE LEEUW: I don't think your Honor meant to
4  exclude it from --
5         THE COURT: No, no, no. I wasn't meaning to.
6         MR. DE LEEUW: Just not the iPhone 4S.
7         THE COURT: That's right. That's right. No, I
8  did not -- I am not excluding any operating system that has
9  already been accused and included in this case. That was
10 not my intention. But to the extent that that, how that
11 system necessarily works with that product and the features
12 associated with it, I am trying -- I'm going to try to keep
13 it cleaner, because I really do think you've got enough in
14 this case already.
15        How many days has she given you for trial?
16        MR. DE LEEUW: Ten days, your Honor.
17        THE COURT: Yes.
18        MR. DE LEEUW: And I understand, your Honor, and
19 that's the reason I just wanted to make sure I wasn't
20 confusing anyone. Thank you.
21        THE COURT: No, no. And I wasn't -- and my
22 comments were not intended to exclude any features,
23 functions, or operating systems that were already included
24 and accused and already a part of the case.
25        MS. SIMMONS: And, your Honor, we would

1  respectfully disagree that the iOS5 version has been
2  included in this case and it was expressly discussed
3  separate and apart from earlier versions.  We have never
4  been under the understanding that iOS5 was accused in this
5  case.
6          THE COURT:  Well, I'm just saying that to the
7  extent that you guys can't agree on that, that's fine, but
8  I'm not intending by my comment to exclude it.  That's all
9  I'm saying.
10         MS. SIMMONS:  Understood.
11         THE COURT:  But that doesn't necessarily mean
12 that it's included.  To the extent, as I said, that any
13 feature, function, and version is involved in this case,
14 that last comment I made was not intended to be a comment
15 that something was included or excluded.
16         MR. DE LEEUW:  Thank you, your Honor.
17         THE COURT:  Okay.  Thank you.
18         MR. DE LEEUW:  Thank you.  Have a wonderful
19 holiday and vacation.
20         THE COURT:  You, too.
21         MR. DE LEEUW:  Happy New Year to all of you.
22         THE COURT:  Happy New Year to all of you.  Thank
23 you.  Bye-bye.
24         (Counsel respond, "Thank you.")
25         (Telephone conference concluded at 11:05 a.m.)

**'**

**'430** [1] - 26:9

# 9

**95** [1] - 37:6

# 1

**10-258-SLR-MPT** [1] - 1:8
**10:00** [2] - 1:12, 3:4
**11:05** [1] - 46:25
**12** [1] - 29:19
**1318** [1] - 6:8
**1367** [1] - 6:8
**15** [2] - 11:18, 25:3
**15th** [1] - 13:9

# 2

**2** [1] - 20:20
**2.1** [2] - 33:16, 33:22
**2004** [2] - 27:2, 33:21
**2006** [1] - 33:21
**2011** [3] - 1:11, 7:22, 11:23
**2012** [1] - 44:10
**22** [1] - 1:11
**27th** [1] - 42:17
**29** [1] - 7:22

# 3

**3.1** [1] - 7:10
**3.2** [1] - 7:10
**3G** [2] - 33:1, 33:10
**3rd** [1] - 42:19

# 4

**4** [2] - 41:13, 45:1
**4.03** [1] - 10:13
**4.3** [10] - 31:5, 31:13, 31:15, 32:13, 32:17, 33:5, 38:9, 39:3, 39:15, 40:6
**4G** [2] - 33:1, 33:10
**4GS** [2] - 33:1, 33:10
**4S** [7] - 40:24, 41:12, 43:2, 43:13, 44:14, 45:6

# 5

**5.0** [2] - 44:23, 44:25

# A

**a.m** [3] - 1:12, 3:4, 46:25
**A1288** [1] - 6:8
**able** [4] - 21:14, 22:17, 32:21, 32:23
**absolutely** [2] - 20:6, 20:10
**access** [2] - 15:5, 17:5
**according** [1] - 26:25
**accurate** [1] - 25:17
**accusation** [1] - 15:4
**accuse** [4] - 14:25, 15:22, 17:5, 17:11
**accused** [43] - 5:24, 6:1, 8:3, 8:5, 11:25, 12:12, 12:23, 13:3, 13:6, 13:16, 14:3, 14:11, 15:1, 16:4, 16:7, 16:9, 17:8, 19:12, 20:4, 20:9, 20:19, 20:25, 22:18, 22:25, 23:24, 24:2, 24:4, 26:10, 30:4, 30:18, 30:19, 31:7, 35:25, 36:1, 36:3, 36:20, 41:24, 44:12, 45:9, 45:24, 46:4
**accusing** [11] - 6:19, 6:20, 14:17, 17:2, 21:16, 22:3, 22:4, 24:11, 34:6, 34:7, 34:10
**acknowledged** [1] - 15:12
**ACTION** [1] - 1:4
**Adam** [1] - 3:16
**ADAM** [1] - 1:18
**add** [2] - 17:24, 32:12
**additional** [1] - 32:17
**addressed** [1] - 29:2
**addressing** [3] - 4:3, 4:5, 38:25
**adequate** [2] - 24:23, 25:8
**admitted** [1] - 24:24
**advised** [1] - 14:10
**ago** [4] - 5:23, 27:23, 28:5, 37:17
**agree** [4] - 12:11, 25:8, 27:14, 46:7
**agreed** [1] - 43:8
**agreeing** [1] - 21:20,

38:20
**agreement** [1] - 34:12
**ahead** [1] - 17:22
**albeit** [1] - 42:23
**allegation** [1] - 30:1
**allow** [1] - 42:3
**allows** [1] - 20:16
**almost** [1] - 4:18
**amended** [1] - 19:3
**amount** [1] - 27:16
**analysis** [4] - 5:6, 37:13, 40:11, 41:15
**analyzed** [1] - 43:18
**analyzing** [2] - 17:3, 33:3
**AND** [1] - 1:2
**answer** [3] - 17:20, 32:19, 41:4
**anyway** [1] - 42:8
**apart** [1] - 46:3
**apologize** [4] - 18:2, 29:11, 39:11, 39:24
**APPEARANCES** [2] - 1:16, 2:1
**Apple** [53] - 3:21, 4:10, 4:12, 5:1, 5:7, 6:17, 7:14, 8:2, 8:6, 8:17, 8:24, 8:25, 9:11, 10:1, 11:23, 12:11, 13:2, 13:9, 14:14, 15:10, 16:15, 16:17, 16:18, 18:24, 19:4, 19:21, 19:23, 20:2, 20:14, 21:5, 21:9, 21:12, 21:16, 23:1, 25:10, 26:21, 27:5, 27:21, 28:7, 28:11, 28:12, 28:23, 30:11, 31:12, 33:19, 35:5, 35:14, 36:9, 36:12, 36:19, 37:16, 40:15, 40:19
**APPLE** [1] - 1:7
**Apple's** [8] - 6:24, 7:3, 9:13, 12:16, 21:15, 29:12, 29:13, 42:20
**applicable** [5] - 30:20, 31:7, 31:16, 34:20, 35:24
**application** [1] - 44:18
**applies** [1] - 13:18
**appropriate** [3] - 6:22, 35:10, 41:20
**approved** [1] - 36:24
**April** [1] - 42:15
**argued** [1] - 39:9
**arguing** [2] - 4:12, 43:9
**argument** [9] - 5:5, 5:20, 12:4, 19:6,

32:6, 42:16, 42:20, 42:22, 43:12
**arguments** [2] - 8:6, 21:18
**aspect** [1] - 15:23
**associated** [1] - 45:12
**assume** [1] - 15:1
**AT&T** [1] - 3:6
**attention** [1] - 4:20
**available** [5] - 6:24, 7:3, 15:11, 15:14, 16:13
**avoid** [1] - 5:12

# B

**base** [2] - 33:25, 34:19
**based** [2] - 14:19, 33:2
**basis** [1] - 6:23
**BEFORE** [1] - 1:14
**begin** [3] - 4:13, 8:1
**beginning** [1] - 3:4
**behalf** [3] - 3:15, 3:21, 4:10
**behind** [1] - 41:25
**believes** [1] - 35:14
**berth** [2] - 23:9, 23:12
**between** [3] - 13:22, 33:21, 39:14
**beyond** [2] - 18:23, 32:17
**big** [3] - 7:24, 28:4, 28:12
**bothering** [1] - 4:16
**box** [1] - 10:3
**briefing** [2] - 29:20, 42:10
**broad** [9] - 22:9, 22:20, 22:23, 23:1, 23:8, 23:16, 23:17
**broader** [2] - 16:6
**broadness** [1] - 29:7
**bulk** [2] - 41:23, 41:24
**burden** [13] - 13:1, 13:2, 14:14, 15:20, 17:5, 21:5, 24:13, 24:20, 28:4, 28:12, 36:8, 36:19
**button** [1] - 7:2
**BY** [5] - 1:18, 2:3, 2:6, 2:11, 2:14
**bye** [1] - 46:23
**bye-bye** [1] - 46:23

# C

**cable** [1] - 17:10
**California** [1] - 2:15

32:6, 42:16, 42:20, 42:22, 43:12
**case** [35] - 5:4, 6:3, 9:24, 10:8, 10:18, 10:20, 16:10, 18:5, 18:15, 18:16, 18:22, 19:2, 19:11, 21:17, 41:6, 41:11, 41:21, 41:25, 42:2, 42:4, 42:5, 42:24, 43:16, 43:19, 43:24, 44:13, 44:15, 44:25, 45:9, 45:14, 45:24, 46:2, 46:5, 46:13
**cases** [5] - 21:12, 26:6, 26:8, 36:6, 41:9
**certain** [5] - 5:25, 14:21, 25:20, 32:7, 44:2
**certainly** [6] - 10:7, 10:25, 18:6, 25:19, 35:7, 38:23
**chambers** [1] - 3:4
**change** [2] - 14:4, 16:12
**changed** [10] - 16:25, 19:24, 20:3, 20:4, 20:10, 21:1, 21:9, 27:12, 27:22, 28:22
**changes** [2] - 16:5, 41:20
**chore** [1] - 23:2
**Christmas** [1] - 4:19
**Circuit** [1] - 18:17
**circumstance** [1] - 22:20
**cite** [3] - 7:12, 9:3, 9:8
**cited** [2] - 7:11, 7:12
**cites** [2] - 24:17, 24:18
**citing** [1] - 6:23
**CIVIL** [1] - 1:4
**claim** [18] - 5:24, 14:20, 22:24, 23:8, 23:14, 23:15, 23:16, 24:6, 24:7, 26:5, 26:16, 42:10, 42:16, 42:17, 43:19, 44:11
**claims** [7] - 5:24, 6:15, 14:21, 16:1, 29:8, 33:23, 43:17
**clarification** [2] - 32:14, 44:25
**clarity** [1] - 44:22
**classic** [1] - 26:13
**cleaner** [1] - 45:13
**clear** [5] - 10:21, 27:2, 27:19, 28:16, 29:16
**clearly** [1] - 10:19
**clever** [2] - 5:5, 5:20
**clients** [1] - 37:5
**closed** [1] - 43:2

**code** [102] - 4:25, 5:1, 5:11, 6:17, 6:20, 7:7, 7:8, 7:17, 7:19, 7:24, 8:3, 8:8, 8:16, 8:18, 9:14, 10:12, 10:13, 10:17, 10:18, 11:24, 11:25, 12:9, 12:11, 13:10, 13:11, 13:18, 13:19, 13:21, 13:23, 14:1, 14:9, 15:5, 15:9, 18:13, 18:21, 19:8, 19:9, 19:12, 19:17, 20:21, 21:18, 22:13, 22:21, 22:23, 23:19, 23:22, 24:21, 25:3, 27:3, 27:9, 27:11, 27:15, 27:17, 27:18, 27:20, 28:3, 28:9, 28:10, 28:13, 28:24, 29:18, 29:22, 29:24, 30:20, 30:21, 30:24, 31:3, 31:6, 31:9, 31:13, 31:14, 31:15, 33:4, 33:5, 33:14, 33:16, 33:25, 34:19, 34:25, 35:6, 35:10, 35:15, 35:18, 35:23, 36:24, 37:12, 37:18, 38:6, 38:11, 38:12, 38:13, 38:15, 39:3, 39:4, 39:15, 39:16, 39:20, 40:1, 40:6, 40:7
**coincides** [1] - 23:5
**collect** [2] - 8:18, 28:2
**collecting** [3] - 8:2, 9:14, 36:23
**coming** [1] - 33:6, 39:9
**comment** [6] - 19:4, 25:16, 25:19, 46:8, 46:14
**comments** [1] - 45:22
**completed** [1] - 42:9
**computer** [1] - 10:3
**Conaway** [1] - 3:17
**CONAWAY** [1] - 1:18
**concede** [2] - 41:5, 41:8
**concern** [7] - 5:3, 7:19, 23:23, 29:12, 29:13, 29:25, 42:25
**concerned** [6] - 5:19, 21:3, 32:6, 32:7, 32:20, 44:7
**concerns** [1] - 4:5
**conclude** [2] - 11:19, 11:22
**concluded** [2] - 42:14, 46:25

**conclusion** [1] - 5:8
**conference** [8] - 1:12, 3:4, 3:8, 3:11, 10:24, 11:1, 35:7, 46:25
**confirm** [1] - 13:8
**confirmed** [3] - 24:25, 25:3, 25:7
**confused** [1] - 32:8
**confusing** [1] - 45:20
**confusion** [1] - 13:22
**connect** [1] - 3:7
**connecting** [1] - 3:10
**construction** [4] - 42:11, 42:16, 42:17, 44:11
**constructions** [1] - 43:20
**contend** [1] - 27:24
**contention** [10] - 5:22, 6:16, 7:9, 8:4, 10:6, 26:21, 28:22, 29:5, 31:8
**contentions** [33] - 6:2, 6:7, 6:22, 6:23, 7:23, 8:12, 8:20, 8:22, 9:12, 10:1, 12:1, 12:6, 13:9, 14:8, 15:13, 19:1, 19:10, 19:13, 19:16, 24:17, 25:2, 25:7, 25:21, 25:24, 26:14, 26:22, 31:19, 32:16, 34:8, 36:25, 38:11, 39:6
**continue** [3] - 11:4, 17:19
**Continued** [1] - 2:1
**copy** [1] - 11:5
**correct** [4] - 15:7, 34:17, 39:16, 39:17
**correlation** [1] - 5:21
**corresponding** [1] - 13:11
**corresponds** [1] - 13:23
**counsel** [5] - 2:9, 3:14, 15:12, 21:13, 46:24
**Counsel** [1] - 2:16
**couple** [4] - 4:17, 4:19, 33:6, 39:20
**course** [4] - 27:5, 31:21, 35:22, 40:16
**court** [1] - 35:21
**COURT** [76] - 1:1, 3:5, 3:9, 3:14, 3:20, 3:25, 4:9, 4:13, 11:4, 11:10, 11:13, 11:16, 11:21, 12:16, 12:21, 13:12, 14:10, 14:15, 15:3, 15:20, 17:14,

17:17, 17:19, 17:22, 18:1, 20:1, 20:18, 21:20, 22:8, 22:11, 22:19, 23:7, 23:12, 24:1, 24:22, 25:13, 25:22, 26:2, 28:18, 28:25, 29:5, 30:6, 30:16, 31:23, 32:4, 32:18, 34:4, 34:11, 34:14, 37:23, 38:10, 38:17, 39:8, 39:12, 39:18, 39:22, 39:25, 40:8, 40:17, 40:24, 42:6, 42:18, 42:20, 43:6, 43:11, 43:22, 45:2, 45:5, 45:7, 45:17, 45:21, 46:6, 46:11, 46:17, 46:20, 46:22
**Court** [5] - 1:25, 4:2, 13:4, 18:17, 31:5
**Court's** [1] - 12:20
**covers** [1] - 23:18
**crazy** [1] - 25:15
**CROMWELL** [1] - 2:6
**Cromwell** [3] - 3:18, 4:8
**current** [3] - 17:4, 20:17, 21:15
**cute** [1] - 12:4

# D

**damages** [6] - 28:19, 32:22, 34:3, 41:22, 41:23
**date** [5] - 4:18, 10:4, 18:15, 18:18, 18:21
**days** [5] - 4:17, 33:6, 39:20, 45:15, 45:16
**DE** [47] - 2:6, 3:19, 4:7, 4:15, 11:7, 11:12, 11:14, 11:19, 11:22, 17:13, 17:16, 17:18, 18:2, 22:7, 22:10, 25:18, 25:23, 26:3, 28:19, 29:3, 31:4, 32:9, 32:11, 32:19, 34:6, 34:12, 34:17, 36:17, 36:21, 38:24, 39:11, 39:19, 39:23, 40:4, 40:9, 40:23, 41:1, 42:12, 42:19, 44:19, 45:3, 45:6, 45:16, 45:18, 46:16, 46:18, 46:21
**De** [6] - 3:18, 4:7, 11:17, 17:13, 41:1, 44:19
**deal** [1] - 19:8

**deals** [1] - 22:22
**December** [4] - 1:11, 13:9, 42:19, 44:10
**decide** [3] - 14:22, 14:24, 21:10
**decisions** [1] - 44:3
**decline** [1] - 22:17
**declining** [1] - 22:16
**defendant** [3] - 9:17, 18:8, 27:8
**Defendant** [2] - 1:8, 2:16
**defined** [1] - 8:7
**DELAWARE** [1] - 1:2
**Delaware** [1] - 1:11
**deposition** [1] - 33:13
**depositions** [2] - 42:9, 42:13
**describe** [1] - 31:1
**described** [6] - 6:24, 21:22, 22:15, 29:2, 30:8, 32:1
**describes** [1] - 22:16
**describing** [1] - 30:23
**description** [2] - 23:18, 30:13
**despite** [1] - 9:5
**detail** [2] - 6:18, 26:3
**determination** [4] - 16:15, 16:19, 30:12, 36:13
**determine** [3] - 18:20, 23:4, 27:22
**determining** [1] - 21:5
**dialing** [1] - 16:17
**dialogue** [1] - 10:3
**Dibbs** [2] - 11:12, 11:13
**difference** [4] - 35:14, 35:17, 37:7, 38:20
**differences** [5] - 12:13, 12:14, 31:13, 41:14, 43:18
**different** [13] - 16:11, 16:12, 16:25, 18:13, 20:4, 21:12, 24:15, 24:19, 35:1, 36:4, 36:10, 41:9, 43:15
**differently** [2] - 24:15, 37:11
**difficult** [1] - 43:7
**dilatory** [1] - 43:9
**directions** [1] - 20:17
**disagree** [2] - 20:25, 46:1
**discovery** [11] - 7:17, 15:16, 21:18, 41:16, 42:9, 42:22, 43:2, 43:5, 43:17, 44:4, 44:5

**discretion** [2] - 4:23, 41:6
**discussed** [5] - 8:16, 29:20, 31:25, 38:2, 46:2
**discussion** [1] - 31:2
**discussions** [1] - 41:18
**dispute** [1] - 29:7
**distinct** [1] - 35:4
**DISTRICT** [2] - 1:1, 1:2
**divorced** [2] - 12:24, 24:13
**document** [1] - 7:12
**documents** [1] - 19:18
**done** [6] - 14:9, 24:22, 24:24, 29:23, 33:3, 43:7
**down** [2] - 5:8, 30:1
**dozen** [1] - 9:6
**dramatically** [2] - 16:5, 16:25
**driving** [1] - 25:14
**due** [2] - 37:22, 42:12
**during** [9] - 9:7, 9:11, 10:15, 19:6, 28:15, 28:16, 34:9, 34:10, 34:24

# E

**e-mail** [1] - 11:14
**earliest** [2] - 25:10, 32:2
**easier** [1] - 36:6
**easy** [3] - 28:15, 34:1, 42:1
**efficient** [2] - 19:22, 42:4
**either** [9] - 12:10, 19:20, 21:17, 28:23, 29:2, 31:4, 33:2, 40:2
**element** [2] - 6:14
**elements** [2] - 26:5, 26:16
**emphasis** [1] - 8:9
**end** [4] - 5:2, 5:14, 25:12, 43:5
**endeavor** [1] - 7:24
**engineers** [1] - 8:17
**entire** [3] - 9:12, 27:11, 35:25
**entirely** [1] - 41:5
**entirety** [1] - 8:16
**entitled** [2] - 26:25, 27:3
**ESQ** [6] - 1:18, 2:3, 2:6, 2:7, 2:11, 2:14

**essentially** [9] - 5:19, 6:10, 9:24, 11:22, 16:22, 21:11, 37:21, 38:2, 40:5
**establishing** [1] - 36:19
**evidence** [2] - 33:20, 34:23
**evidenced** [1] - 15:12
**exactly** [3] - 22:7, 25:18, 44:7
**examined** [2] - 33:12, 33:14
**example** [6] - 16:12, 16:22, 20:13, 20:18, 26:8, 31:25
**exchanged** [1] - 43:20
**exclude** [3] - 45:4, 45:22, 46:8
**excluded** [2] - 35:21, 46:15
**excluding** [1] - 45:8
**exclusively** [1] - 15:13
**exist** [8] - 20:20, 28:16, 32:2, 32:5, 34:1, 34:3, 34:14, 41:14
**existed** [3] - 20:22, 33:21, 37:10
**existence** [1] - 18:10
**existent** [1] - 28:15
**exists** [1] - 24:6
**expected** [1] - 37:2
**expecting** [2] - 10:10, 37:1
**experience** [4] - 9:17, 9:23, 16:24, 21:12
**expert** [8] - 33:9, 33:16, 35:20, 37:13, 37:22, 42:8, 42:9, 42:12
**experts** [7] - 5:6, 31:12, 33:3, 34:22, 35:12, 35:16, 40:5
**explain** [3] - 6:14, 25:25, 26:4
**explained** [2] - 6:23, 6:25
**expressed** [2] - 4:5, 5:3
**expressly** [1] - 46:2
**extensive** [2] - 16:24, 40:10
**extent** [8] - 23:18, 24:4, 37:16, 40:1, 44:4, 45:10, 46:7, 46:12

**F**

**face** [1] - 43:1
**fact** [11] - 5:18, 6:6, 8:25, 9:5, 9:15, 10:16, 15:14, 17:7, 24:16, 36:3, 42:25
**factually** [4] - 31:21, 31:24, 38:8, 39:1
**fair** [1] - 15:3
**fall** [1] - 16:19
**falls** [2] - 22:5, 24:3
**far** [2] - 22:23, 38:22
**fashion** [1] - 21:2, 28:22
**feature** [44] - 9:22, 14:23, 15:25, 16:17, 16:20, 17:2, 17:3, 18:7, 18:9, 18:11, 18:19, 20:15, 20:19, 21:7, 21:14, 21:16, 21:23, 22:2, 22:3, 22:9, 22:11, 22:12, 22:15, 22:17, 22:22, 23:4, 23:5, 24:2, 24:6, 24:17, 25:25, 26:1, 27:7, 28:14, 28:16, 28:18, 28:21, 29:1, 34:1, 34:3, 36:14, 46:13
**feature/functionality** [2] - 22:25, 42:24
**features** [51] - 5:16, 6:1, 6:11, 6:13, 6:15, 8:4, 8:5, 8:11, 8:14, 8:19, 10:17, 11:25, 12:23, 12:24, 12:25, 13:15, 13:17, 13:18, 13:20, 14:4, 14:11, 14:16, 14:20, 15:24, 16:5, 16:8, 16:9, 16:10, 16:13, 17:1, 18:22, 19:12, 19:15, 20:2, 20:3, 21:21, 24:13, 27:8, 27:24, 28:4, 31:7, 31:11, 32:1, 36:25, 37:19, 45:11, 45:22
**February** [1] - 42:13
**Federal** [1] - 18:17
**few** [3] - 10:2, 37:21
**fight** [1] - 7:25
**figure** [7] - 13:17, 15:6, 15:21, 16:3, 20:16, 30:17, 30:20
**file** [3] - 17:2, 44:18
**filed** [2] - 15:4, 42:15
**finally** [1] - 13:9
**fine** [3] - 17:18, 35:19,

46:7
**finish** [1] - 39:22
**finished** [1] - 39:25
**first** [10] - 4:21, 4:24, 5:17, 10:12, 12:17, 16:21, 18:9, 19:7, 35:6, 41:3
**fits** [1] - 21:10
**follow** [1] - 4:24
**follow-up** [1] - 4:24
**following** [1] - 3:3
**FOR** [1] - 1:2
**form** [1] - 36:10
**forth** [4] - 19:13, 29:23, 34:8, 40:13
**fortunate** [1] - 28:7
**four** [2] - 18:11, 18:13
**four-year** [1] - 18:13
**frame** [1] - 43:25
**framework** [1] - 20:8
**Francisco** [1] - 2:15
**frankly** [7] - 8:23, 10:12, 29:9, 35:2, 37:20, 40:10, 40:13
**freely** [1] - 41:5
**function** [5] - 22:4, 30:19, 31:10, 43:14, 46:13
**functional** [1] - 28:21
**functionality** [60] - 8:3, 8:5, 8:11, 8:14, 8:19, 11:25, 12:12, 14:4, 19:12, 19:14, 19:24, 20:2, 20:4, 20:10, 20:22, 20:25, 21:1, 21:22, 21:23, 21:24, 22:8, 22:12, 22:13, 24:5, 24:8, 26:1, 27:7, 27:24, 28:3, 29:1, 29:2, 30:7, 30:8, 30:9, 30:10, 30:13, 30:18, 30:22, 31:18, 32:1, 32:24, 32:25, 33:1, 34:5, 34:7, 34:9, 34:14, 34:16, 34:18, 35:25, 36:7, 36:10, 36:24, 37:8, 37:10, 37:19, 38:19, 39:6
**functions** [4] - 27:7, 31:11, 31:17, 45:23
**fundamental** [1] - 12:22
**future** [1] - 32:23

**G**

**given** [6] - 28:9, 33:17, 41:18, 41:19, 41:21,

45:15
**gobbledygook** [2] - 13:14, 42:7
**gotcha** [1] - 14:2
**grant** [1] - 37:23
**guess** [2] - 16:6, 21:25
**Gunning** [2] - 1:24, 4:1
**guys** [2] - 37:24, 46:7

**H**

**hand** [1] - 7:23
**happy** [3] - 11:14, 46:21, 46:22
**hard** [2] - 29:10, 29:11
**hardware** [3] - 14:5, 17:10, 17:12
**hate** [1] - 4:18
**heard** [1] - 38:22
**hearing** [6] - 13:5, 13:13, 29:17, 29:20, 29:21, 42:15
**held** [1] - 3:4
**Herrmann** [1] - 3:23
**high** [1] - 22:15
**hold** [1] - 35:19
**holiday** [1] - 46:19
**Honor** [51] - 3:16, 3:19, 3:22, 4:7, 4:11, 4:15, 4:16, 5:3, 9:16, 10:24, 11:7, 11:19, 12:10, 12:15, 12:18, 16:23, 17:13, 18:3, 18:4, 18:6, 19:20, 20:6, 25:23, 27:6, 28:14, 29:3, 29:15, 29:21, 31:4, 32:19, 33:19, 34:1, 35:2, 35:8, 36:17, 36:21, 37:20, 38:24, 39:19, 39:23, 40:5, 40:13, 40:23, 41:1, 44:19, 44:23, 45:3, 45:16, 45:18, 45:25, 46:16
**Honor's** [4] - 4:23, 17:20, 41:6, 44:24
**hope** [1] - 41:8
**hopefully** [2] - 4:17, 38:12
**hoping** [1] - 5:13
**horribly** [1] - 15:21
**hundreds** [1] - 9:25

**I**

**idea** [1] - 39:13
**IDEAS** [1] - 1:4
**identification** [1] -

24:23
**identified** [29] - 8:4, 8:11, 8:19, 9:21, 10:9, 12:1, 13:8, 14:7, 14:16, 14:18, 16:6, 18:19, 18:22, 19:10, 19:15, 20:11, 25:2, 25:6, 27:23, 29:18, 30:3, 31:8, 31:18, 32:15, 32:25, 34:19, 36:25, 38:16, 39:6
**identify** [12] - 6:12, 8:13, 10:8, 11:23, 12:12, 13:5, 13:19, 18:7, 24:13, 25:20, 29:21, 38:21
**identifying** [2] - 6:11, 19:5
**impede** [1] - 44:6
**implement** [1] - 12:25
**implementation** [7] - 16:16, 16:19, 21:7, 21:8, 30:2, 30:12, 36:13
**implemented** [9] - 21:15, 23:4, 24:15, 24:18, 24:19, 30:14, 36:11, 37:8, 37:11
**implying** [1] - 13:25
**importantly** [1] - 18:23
**imposing** [1] - 12:20
**impression** [2] - 35:4, 35:7
**improperly** [4] - 14:13, 14:15, 21:5, 36:8
**IN** [2] - 1:1, 1:2
**inaccurate** [1] - 39:2
**inappropriate** [1] - 31:22
**INC** [1] - 1:7
**include** [7] - 7:7, 38:6, 41:21, 42:2, 42:4, 43:23, 44:16
**included** [6] - 40:3, 40:21, 41:11, 45:9, 45:23, 46:2, 46:12, 46:15
**including** [2] - 6:7, 26:11
**incoming** [2] - 22:16, 22:17
**incorrect** [3] - 31:21, 31:24, 38:8
**indicate** [1] - 38:25
**indicates** [1] - 27:6
**information** [6] - 4:1, 15:8, 15:10, 15:14, 15:15, 40:20
**infringe** [4] - 14:20,

27:25, 33:2, 34:15
**infringed** [1] - 6:15
**infringement** [79] -
5:8, 5:25, 6:1, 6:2,
6:6, 6:16, 6:19, 6:20,
6:21, 7:9, 7:23, 8:4,
8:11, 8:12, 8:20,
8:22, 9:12, 10:1,
10:6, 10:21, 12:1,
12:6, 12:24, 13:1,
13:3, 13:6, 13:8,
13:16, 14:4, 14:8,
14:14, 14:17, 14:20,
14:24, 14:25, 15:1,
15:13, 16:4, 16:20,
17:6, 19:1, 19:10,
19:13, 19:16, 21:6,
22:18, 23:9, 23:13,
23:24, 24:2, 24:11,
24:17, 25:2, 25:7,
25:21, 25:24, 26:10,
26:14, 26:21, 26:22,
27:19, 28:23, 31:8,
31:16, 31:18, 32:15,
33:20, 34:5, 34:7,
34:8, 34:10, 35:24,
36:15, 36:19, 36:25,
38:11, 39:5, 39:6,
41:15
**infringes** [12] - 15:25,
16:1, 16:21, 21:2,
21:8, 21:24, 23:6,
25:25, 33:2, 33:10,
41:13, 44:15
**infringing** [1] - 16:7
**initial** [1] - 20:13
**insinuation** [2] -
10:14, 10:25
**inspection** [2] - 8:2,
31:6
**instance** [7] - 6:7, 6:8,
6:25, 9:3, 17:11,
18:15, 18:16
**insufficient** [1] - 26:23
**intended** [2] - 45:22,
46:14
**intending** [1] - 46:8
**intent** [1] - 40:9
**intention** [1] - 45:10
**interests** [1] - 12:20
**interrogatories** [3] -
5:23, 28:22, 29:6
**interrupted** [1] - 17:23
**interrupting** [1] - 18:2
**invalid** [2] - 23:14,
23:15
**invalidity** [1] - 43:18
**involved** [6] - 6:3,
18:7, 30:22, 44:15,
46:13

**iOS** [5] - 31:5, 36:14,
39:15, 44:22, 44:25
**iOS5** [4] - 43:14,
44:14, 46:1, 46:4
**IPad** [1] - 26:13
**IPhone** [16] - 6:12,
17:8, 20:14, 20:20,
26:11, 32:25, 33:10,
40:24, 41:13, 43:2,
43:12, 43:13, 44:14,
45:1, 45:6
**IPod** [2] - 9:3, 9:5
**iPod** [4] - 6:9, 26:11,
26:12, 26:13
**issue** [21] - 4:24, 5:12,
5:16, 6:14, 10:17,
10:23, 12:17, 17:24,
18:24, 19:16, 19:20,
20:12, 23:21, 27:2,
28:19, 29:8, 31:2,
34:17, 35:21, 41:3,
43:10
**issues** [3] - 4:4, 4:19,
10:20
**itemized** [1] - 6:16
**itself** [2] - 23:16, 24:7

### J

**JAANG** [1] - 2:7
**Jaang** [1] - 3:18
**JAMES** [1] - 2:11
**James** [1] - 3:23
**JANE** [1] - 2:7
**Jane** [1] - 3:18
**January** [2] - 42:13
**JOHN** [1] - 2:3
**John** [1] - 3:17
**JUDGE** [1] - 1:14
**Judge** [6] - 3:5, 3:10,
3:15, 33:19, 44:1,
44:11
**judgment** [3] - 42:11,
42:14, 42:17
**July** [1] - 42:17
**June** [1] - 19:3

### K

**keep** [4] - 12:19,
38:17, 38:18, 45:12
**KELLER** [1] - 2:2
**Keller** [1] - 3:17
**Kimberly** [1] - 3:6
**kind** [1] - 23:19
**known** [3] - 15:15,
15:17, 15:18

### L

**lack** [1] - 44:22
**lagging** [1] - 41:25
**language** [1] - 39:7
**large** [2] - 37:14,
41:12
**last** [13] - 4:25, 5:2,
8:17, 10:15, 10:24,
13:5, 18:11, 25:16,
25:19, 33:6, 35:7,
39:20, 46:14
**late** [1] - 4:18
**lawsuit** [2] - 15:5,
44:18
**lawyer** [1] - 9:13
**lawyer's** [2] - 5:5, 5:20
**lawyers** [1] - 7:1
**least** [5] - 6:7, 6:8,
14:7, 26:11, 26:24
**leaves** [1] - 36:12
**Leeuw** [6] - 3:18, 4:7,
11:17, 17:13, 41:2,
44:19
**LEEUW** [47] - 2:6,
3:19, 4:7, 4:15, 11:7,
11:12, 11:14, 11:19,
11:22, 17:13, 17:16,
17:18, 18:2, 22:7,
22:10, 25:18, 25:23,
26:3, 28:19, 29:3,
31:4, 32:9, 32:11,
32:19, 34:6, 34:12,
34:17, 36:17, 36:21,
38:24, 39:11, 39:19,
39:23, 40:4, 40:9,
40:23, 41:1, 42:12,
42:19, 44:19, 45:3,
45:6, 45:16, 45:18,
46:16, 46:18, 46:21
**left** [5] - 16:15, 21:9,
23:2, 30:11, 36:5
**legal** [1] - 10:6
**Len** [1] - 11:13
**Leonard** [1] - 11:12
**less** [1] - 40:25
**letter** [5] - 7:21, 8:7,
10:11, 28:2, 42:2
**level** [1] - 22:15
**liability** [1] - 32:22
**life** [1] - 9:7
**light** [1] - 24:2
**likely** [1] - 11:1
**limit** [1] - 40:18
**limited** [6] - 9:22,
12:6, 16:14, 16:16,
41:16, 43:16
**limiting** [2] - 9:15,
38:18

**line** [2] - 3:15, 3:21
**listed** [3] - 6:2, 6:5,
6:10
**listen** [1] - 40:20
**literally** [4] - 9:25,
33:6, 39:19, 40:6
**live** [2] - 27:20, 28:13
**LLC** [1] - 1:4
**LLP** [5] - 1:18, 2:2,
2:6, 2:11, 2:14
**location** [2] - 20:15,
20:17
**look** [3] - 20:24, 37:6,
40:16
**looked** [2] - 33:11,
33:16, 34:24
**looking** [3] - 26:10,
31:1, 31:2
**LUANN** [1] - 2:14
**Luann** [3] - 3:24, 4:12,
12:19
**luxury** [1] - 44:1

### M

**MAGISTRATE** [1] -
1:14
**mail** [1] - 11:14
**majority** [1] - 37:14
**management** [2] -
4:22, 41:7
**manifested** [1] - 16:10
**manual** [5] - 8:24,
8:25, 9:3, 9:7, 9:8
**manuals** [10] - 7:4,
7:5, 7:6, 9:1, 12:5,
18:13, 25:20, 26:6,
26:17, 33:13
**MARC** [1] - 2:6
**Marc** [14] - 3:18, 4:7,
11:17, 17:13, 17:14,
18:1, 22:6, 25:16,
31:1, 32:7, 38:2,
39:22, 41:1, 44:19
**March** [2] - 19:2, 42:14
**marketing** [2] - 7:3,
7:13
**MARY** [2] - 1:14, 2:11
**Mary** [1] - 3:23
**matches** [2] - 14:23,
26:5
**material** [3] - 7:13,
27:12, 43:15
**materials** [3] - 5:7,
6:24, 7:4
**matter** [3] - 13:16,
41:6
**MATTERER** [2] - 2:11,
3:22

**Matterer** [1] - 3:23
**mean** [14] - 10:2,
16:22, 18:15, 18:18,
18:23, 21:11, 21:13,
22:23, 26:8, 29:13,
33:5, 36:5, 37:1,
46:11
**meaning** [1] - 45:5
**meant** [1] - 45:3
**meet** [1] - 36:14
**mention** [3] - 9:2,
12:5, 44:21
**mentioned** [5] - 7:9,
26:15, 26:18, 29:19,
32:13
**method** [1] - 22:1
**Microsoft** [4] - 17:2,
18:15, 18:18, 18:20
**mid** [4] - 42:13, 42:14,
42:15
**mid-April** [1] - 42:15
**mid-February** [1] -
42:13
**mid-January** [1] -
42:13
**mid-March** [1] - 42:14
**middle** [1] - 19:2
**mine** [1] - 4:17
**minutes** [2] - 11:18,
40:25
**misunderstanding** [2]
- 12:23, 17:7
**MMI** [23] - 3:15, 4:6,
5:4, 13:1, 13:3, 13:7,
14:18, 15:15, 18:25,
20:11, 24:17, 26:9,
27:15, 28:8, 29:14,
32:14, 33:20, 34:6,
34:7, 34:23, 38:16,
43:8, 43:17
**MMI's** [10] - 5:22, 8:4,
8:21, 10:5, 12:5,
15:12, 16:20, 21:13,
23:5, 36:25
**MobileMedia** [1] -
4:14
**MOBILEMEDIA** [1] -
1:4
**model** [2] - 14:5, 42:3
**models** [6] - 6:5, 6:10,
6:18, 26:11, 26:12
**Models** [2] - 6:7, 6:8
**module** [1] - 5:11
**moment** [1] - 3:7
**month** [1] - 35:11
**months** [6] - 5:23,
10:2, 26:20, 27:23,
37:2
**moreover** [1] - 15:16
**morning** [6] - 3:5,

3:14, 3:19, 3:20, 3:22, 4:11
**MORRIS** [1] - 2:11
**Morris** [1] - 3:23
**most** [6] - 4:21, 5:15, 10:4, 19:22, 22:14, 35:10
**motions** [1] - 42:14
**mouth** [1] - 25:14
**move** [1] - 11:17
**MR** [46] - 3:16, 4:7, 4:15, 11:7, 11:12, 11:14, 11:19, 11:22, 17:13, 17:16, 17:18, 18:2, 22:7, 22:10, 25:18, 25:23, 26:3, 28:19, 29:3, 31:14, 32:9, 32:11, 32:19, 34:6, 34:12, 34:17, 36:17, 36:21, 38:24, 39:11, 39:19, 39:23, 40:4, 40:9, 40:23, 41:1, 42:12, 42:19, 44:19, 45:3, 45:6, 45:16, 45:18, 46:16, 46:18, 46:21
**MS** [35] - 3:22, 4:11, 12:18, 12:22, 13:21, 14:13, 14:18, 15:7, 16:8, 17:20, 17:25, 20:6, 21:4, 22:14, 22:25, 23:11, 23:21, 24:12, 24:25, 29:15, 30:11, 31:20, 31:25, 32:10, 32:12, 36:2, 36:18, 38:4, 38:14, 39:17, 43:4, 43:8, 43:12, 45:25, 46:10
**multiple** [3] - 15:11, 30:23, 38:5
**must** [1] - 13:3
**Myers** [1] - 3:24
**MYERS** [1] - 2:14

**N**

**nano** [4] - 6:13, 9:3, 9:5, 26:12
**nature** [1] - 10:5
**near** [1] - 43:5
**necessarily** [5] - 21:20, 38:22, 43:23, 45:11, 46:11
**necessary** [2] - 27:10, 41:20
**need** [10] - 6:18, 7:14, 7:15, 14:2, 14:21, 23:23, 26:4, 26:17, 40:10, 41:17

**needed** [4] - 4:20, 5:10, 7:20, 43:17
**needing** [1] - 21:9
**needs** [1] - 18:20
**never** [15] - 6:16, 6:17, 7:14, 7:17, 8:21, 9:11, 9:17, 9:23, 26:20, 33:15, 33:17, 35:2, 46:3
**nevertheless** [1] - 7:25
**New** [4] - 2:7, 46:21, 46:22
**new** [5] - 42:2, 43:13, 43:23, 44:5
**next** [1] - 28:20
**nine** [2] - 26:20, 27:23
**NO** [1] - 1:8
**noninfringement** [6] - 8:6, 12:2, 21:17, 31:12, 40:21, 43:19
**nonsensical** [1] - 8:23
**normal** [6] - 18:14, 19:2, 19:11, 27:5, 40:12, 40:13
**NOTE** [1] - 3:3
**nothing** [1] - 10:7
**notice** [8] - 13:2, 17:1, 25:8, 26:23, 30:3, 30:6, 30:7, 30:10
**November** [1] - 29:17
**nowhere** [1] - 26:14
**number** [2] - 10:14, 42:3

**O**

**o'clock** [1] - 1:12
**O'MELVENY** [1] - 2:14
**O'Melveny** [1] - 3:24
**obviously** [4] - 4:23, 10:18, 10:23, 32:5
**occurs** [1] - 22:4
**OF** [1] - 1:2
**offer** [1] - 20:15
**offered** [1] - 25:11
**Official** [1] - 1:25
**once** [2] - 14:6, 32:14
**one** [21] - 4:21, 4:22, 8:3, 9:8, 9:18, 14:25, 18:4, 20:20, 22:16, 24:18, 26:8, 26:10, 27:1, 30:21, 32:12, 33:24, 34:2, 34:19, 35:20, 40:2, 44:21
**onerous** [1] - 15:21
**ones** [1] - 24:22
**opening** [1] - 17:2
**operates** [1] - 17:4

**operating** [33] - 12:24, 13:6, 13:22, 13:24, 14:3, 14:5, 14:22, 15:8, 15:10, 16:4, 16:11, 17:9, 20:12, 20:14, 21:8, 21:15, 23:3, 23:25, 24:10, 24:14, 24:16, 25:10, 27:1, 32:2, 36:4, 36:11, 38:15, 38:18, 38:21, 43:14, 44:14, 45:8, 45:23
**Operating** [1] - 16:23
**OPERATOR** [3] - 3:6, 3:10, 3:13
**opinion** [1] - 36:18
**opposed** [1] - 41:3
**order** [4] - 10:8, 31:5, 35:22, 38:1
**otherwise** [2] - 35:22, 41:21
**ought** [1] - 27:13
**outlined** [1] - 38:2
**Outlook** [1] - 18:19
**overall** [1] - 35:21

**P**

**page** [2] - 11:10, 11:11
**pages** [1] - 9:25
**part** [3] - 16:6, 41:13, 45:24
**particular** [22] - 5:11, 7:10, 8:18, 8:22, 14:20, 16:16, 17:9, 17:24, 21:6, 21:7, 21:23, 24:6, 27:8, 30:2, 33:11, 34:5, 35:17, 35:18, 37:4, 37:7, 40:15, 41:4
**particularized** [1] - 24:5
**parties** [1] - 43:21
**PAT** [1] - 1:14
**patent** [20] - 5:23, 5:24, 7:10, 9:25, 17:10, 20:24, 21:24, 22:5, 22:20, 22:23, 23:13, 24:3, 26:1, 26:9, 26:18, 26:22, 26:24, 29:8, 33:11
**patents** [10] - 17:10, 21:25, 22:1, 22:15, 22:16, 23:1, 26:9, 29:19, 44:15
**patents-in-suit** [1] - 26:9
**percent** [1] - 37:6
**perhaps** [1] - 27:18

**period** [13] - 7:20, 9:10, 27:4, 27:11, 28:15, 28:17, 31:9, 33:25, 34:9, 34:10, 34:15, 34:24, 35:25
**periods** [1] - 18:13
**perspective** [1] - 24:20
**phase** [2] - 28:20, 32:22
**phone** [2] - 22:3, 43:1
**picker** [3] - 18:15, 18:18, 18:21
**piece** [2] - 5:10, 17:11
**pieces** [3] - 39:20, 40:7, 40:12
**place** [2] - 16:21, 33:22
**Plaintiff** [2] - 1:5, 2:9
**plaintiff** [3] - 9:17, 14:11, 21:14, 37:24
**planning** [1] - 40:14
**Poff** [1] - 3:16
**POFF** [2] - 1:18, 3:16
**point** [9] - 11:2, 18:25, 23:23, 29:15, 29:25, 32:21, 35:9, 44:2, 44:5
**pointed** [2] - 28:14, 43:8
**portions** [1] - 12:8
**position** [1] - 44:24
**potentially** [3] - 41:24, 43:17, 44:14
**practicing** [1] - 9:16
**precise** [1] - 7:14
**preparing** [1] - 8:2
**present** [2] - 21:17, 44:12
**presently** [1] - 44:10
**pressed** [1] - 7:2
**presumably** [2] - 23:11, 35:15
**pretty** [2] - 39:13, 43:15
**previously** [1] - 20:11
**problem** [6] - 35:3, 36:2, 36:7, 37:2, 37:9, 39:1
**problematic** [1] - 4:21
**problems** [1] - 10:2
**process** [2] - 7:16, 18:14
**produce** [16] - 11:24, 12:8, 12:13, 14:8, 18:12, 19:11, 19:21, 27:13, 28:2, 28:24, 29:18, 29:22, 37:12, 37:17, 37:18, 38:10
**produced** [25] - 4:25,

8:25, 13:10, 23:4, 24:21, 25:3, 27:17, 29:23, 31:6, 31:14, 31:15, 32:13, 32:16, 32:17, 33:4, 35:11, 35:23, 38:5, 38:7, 38:12, 38:14, 39:4, 39:16, 40:2
**producing** [5] - 8:16, 23:19, 23:22, 36:23
**product** [24] - 7:1, 9:10, 9:19, 9:21, 13:16, 15:1, 15:22, 15:23, 15:24, 17:8, 18:9, 27:4, 33:21, 34:18, 34:23, 34:25, 37:7, 42:2, 42:3, 42:24, 43:23, 44:5, 45:1, 45:11
**product/feature/ functions** [1] - 44:12
**production** [1] - 10:23
**products** [24] - 5:15, 5:25, 6:1, 6:5, 6:12, 6:25, 7:6, 8:5, 8:13, 9:2, 12:7, 27:2, 31:7, 33:4, 33:12, 34:20, 36:1, 36:3, 36:20, 41:10, 41:24, 42:23
**promised** [1] - 11:23
**proof** [3] - 13:1, 14:14, 28:12
**proposed** [1] - 43:19
**provide** [1] - 24:8
**provided** [1] - 5:7
**publicly** [4] - 6:24, 15:11, 15:14, 15:17
**pumps** [1] - 10:1
**purposes** [2] - 31:11, 31:16, 35:24, 39:5
**put** [6] - 6:25, 8:9, 13:2, 19:1, 26:23, 34:11
**putting** [1] - 44:3

**Q**

**questions** [1] - 33:7
**quick** [1] - 32:12
**quite** [2] - 29:8, 42:1
**quoting** [1] - 8:1

**R**

**raise** [1] - 18:24
**raised** [2] - 10:23, 28:5
**raising** [1] - 43:9
**ran** [1] - 20:14

**rather** [3] - 7:25, 8:15, 42:24
**reach** [1] - 11:2
**reaching** [1] - 5:7
**reaction** [1] - 34:2
**read** [5] - 10:25, 16:1, 33:13, 44:13
**reads** [1] - 24:3
**reality** [1] - 5:21
**really** [12] - 4:19, 5:20, 19:20, 27:5, 28:1, 33:8, 35:9, 37:20, 39:12, 41:4, 42:23, 45:13
**reason** [4] - 7:8, 7:18, 43:24, 45:19
**received** [1] - 32:14
**recognize** [1] - 42:21
**reconsider** [1] - 44:23
**referred** [1] - 8:10
**reflect** [1] - 8:10
**refused** [1] - 13:7
**regard** [1] - 29:12
**regarding** [2] - 29:13, 32:15
**reintroduce** [1] - 4:2
**relate** [2] - 8:18, 38:15
**related** [1] - 38:13
**relates** [6] - 8:3, 11:25, 19:12, 22:13, 36:24, 37:18
**released** [4] - 5:17, 8:24, 9:1, 41:10
**relevant** [16] - 7:20, 8:7, 9:10, 9:14, 10:11, 11:24, 18:11, 18:19, 27:9, 27:11, 27:13, 28:3, 28:23, 31:8, 33:25, 39:5
**relied** [1] - 40:2
**relies** [1] - 8:6
**rely** [6] - 12:2, 14:1, 15:13, 27:16, 31:12, 35:14, 40:9, 40:15
**relying** [2] - 24:7, 40:14
**rendering** [1] - 44:3
**reopening** [1] - 42:22
**Reporter** [2] - 1:25, 4:2
**REPORTER'S** [1] - 3:3
**reports** [2] - 37:22, 42:12
**request** [2] - 29:13, 29:16
**requesting** [1] - 37:24
**require** [4] - 9:24, 43:16, 43:18, 44:17
**requirement** [1] - 10:6
**resolved** [1] - 5:13

**respect** [18] - 5:16, 10:17, 10:20, 10:22, 12:11, 19:24, 28:14, 29:19, 31:10, 32:24, 34:18, 35:24, 35:25, 37:6, 37:9, 39:5, 41:15, 41:16
**respectfully** [5] - 7:18, 19:14, 19:19, 20:7, 46:1
**respects** [1] - 10:19
**respond** [1] - 44:24
**response** [4] - 12:16, 31:20, 38:11, 38:12
**rest** [1] - 16:24
**restricted** [1] - 8:21
**review** [2] - 5:10, 35:6
**reviewing** [3] - 10:13, 35:12, 40:6
**Richard** [1] - 3:23
**rights** [1] - 27:16
**ring** [1] - 22:4
**rings** [1] - 22:3
**road** [2] - 5:9, 30:1
**Robinson** [3] - 33:20, 44:1, 44:11
**rounding** [1] - 7:24
**running** [1] - 17:9

## S

**san** [1] - 2:15
**satisfied** [1] - 17:5
**satisfy** [1] - 13:2
**satisfying** [1] - 24:19
**scheduled** [2] - 32:23, 44:10
**schematics** [1] - 41:17
**second** [2] - 4:22, 11:10
**secret** [2] - 14:1, 15:9
**see** [2] - 37:7, 37:8
**selected** [1] - 28:10
**sense** [1] - 44:24
**separate** [3] - 41:25, 44:18, 46:3
**separately** [1] - 17:17
**September** [6] - 7:22, 10:11, 11:23, 19:7, 28:2, 36:22
**served** [3] - 5:23, 9:12, 26:21
**Services** [1] - 3:7
**services** [1] - 20:15
**serving** [1] - 4:1
**set** [2] - 19:13, 34:7
**several** [4] - 9:6, 19:23, 26:11, 26:12
**Shaw** [2] - 3:17

**SHAW** [2] - 2:2, 2:3
**shift** [4] - 14:14, 14:15, 15:20, 21:5
**shifted** [2] - 16:18, 36:9
**shifts** [1] - 36:18
**short** [3] - 12:19, 31:15, 41:2
**shuffle** [1] - 26:12
**sides** [2] - 25:14, 41:8
**sign** [1] - 37:25
**signal** [1] - 10:21
**significantly** [1] - 43:15
**SIMMONS** [35] - 2:14, 4:11, 12:18, 12:22, 13:21, 14:13, 14:18, 15:7, 16:8, 17:20, 17:25, 20:6, 21:4, 22:14, 22:25, 23:11, 23:21, 24:12, 24:25, 29:15, 30:11, 31:20, 31:25, 32:10, 32:12, 36:2, 36:18, 38:4, 38:14, 39:17, 43:4, 43:8, 43:12, 45:25, 46:10
**Simmons** [11] - 3:24, 4:12, 5:14, 7:22, 11:15, 12:19, 19:8, 25:19, 28:1, 36:22, 37:5
**Simmons'** [3] - 10:11, 26:25, 39:1
**simply** [2] - 14:2, 17:3
**single** [6] - 9:25, 21:19, 26:25, 27:1, 27:3, 27:4
**sit** [2] - 20:19, 30:16
**situation** [3] - 18:8, 28:8, 41:23
**six** [1] - 40:5
**slapping** [1] - 42:2
**small** [1] - 41:14
**software** [21] - 8:22, 9:2, 9:4, 9:6, 9:9, 9:15, 9:21, 9:22, 10:1, 10:4, 10:8, 10:16, 12:5, 12:7, 15:23, 19:5, 26:7, 26:15, 26:18, 33:22, 44:6
**solely** [1] - 21:21
**sometime** [1] - 5:8
**sometimes** [1] - 18:8
**somewhat** [1] - 37:11
**sorry** [6] - 4:16, 11:8, 30:7, 32:11, 36:17, 39:23
**sort** [6] - 5:5, 5:19,

8:23, 12:4, 19:11, 40:11
**source** [97] - 4:25, 5:1, 5:11, 6:17, 6:20, 7:7, 7:8, 7:17, 7:19, 7:24, 8:2, 8:8, 8:16, 8:18, 9:14, 10:11, 10:13, 10:16, 10:18, 11:24, 12:8, 12:11, 13:10, 13:11, 13:18, 13:19, 13:21, 13:23, 14:1, 15:5, 15:9, 18:12, 18:21, 19:8, 19:11, 19:17, 20:21, 21:18, 22:13, 22:21, 23:19, 23:22, 24:21, 27:3, 27:9, 27:11, 27:14, 27:17, 27:18, 27:20, 28:3, 28:9, 28:10, 28:13, 28:24, 29:18, 30:20, 30:21, 30:24, 31:3, 31:6, 31:9, 31:13, 31:14, 31:15, 33:4, 33:5, 33:14, 33:16, 33:25, 34:19, 34:25, 35:6, 35:10, 35:15, 35:18, 35:23, 36:24, 37:12, 37:18, 38:6, 38:10, 38:12, 38:13, 38:15, 39:3, 39:4, 39:15, 39:20, 40:1, 40:6, 40:7
**sources** [1] - 15:11
**specific** [12] - 6:23, 9:19, 9:20, 9:21, 12:6, 13:5, 13:19, 26:7, 26:17, 27:23, 35:13
**specifically** [2] - 12:13, 38:4
**specification** [1] - 7:13
**specifications** [1] - 7:3
**specifics** [1] - 16:9
**specified** [3] - 5:25, 9:18, 28:21
**specify** [3] - 6:18, 26:7, 27:6
**specifying** [1] - 26:3
**spending** [1] - 40:5
**STARGATT** [1] - 1:18
**start** [7] - 4:14, 10:12, 17:14, 17:15, 35:12, 42:10, 44:3
**started** [3] - 7:21, 20:22, 35:6
**statement** [1] - 22:9
**STATES** [1] - 1:1
**stipulate** [9] - 10:16,

10:21, 19:22, 27:14, 28:6, 28:8, 28:24, 37:3, 38:8
**stipulation** [10] - 5:13, 11:2, 31:5, 35:5, 35:19, 35:21, 37:25, 38:6, 40:3, 40:22
**strange** [1] - 19:6
**stuck** [2] - 22:21, 23:19
**stuff** [1] - 40:20
**subject** [1] - 37:13
**submit** [3] - 7:18, 19:14, 19:19
**substantial** [1] - 27:15
**sufficient** [1] - 17:1
**suggested** [2] - 19:23, 39:14
**suggesting** [3] - 5:14, 11:15, 27:5
**suit** [1] - 26:9
**SULLIVAN** [1] - 2:6
**Sullivan** [2] - 3:17, 4:8
**summary** [3] - 42:11, 42:14, 42:17
**suppose** [1] - 29:25
**supposed** [4] - 8:13, 38:10, 42:9, 42:10
**Supreme** [1] - 18:17
**surprised** [1] - 30:1
**sweet** [1] - 12:19
**System** [1] - 16:23
**system** [30] - 12:25, 13:6, 13:23, 13:24, 14:3, 14:5, 14:22, 15:8, 15:11, 16:11, 20:12, 20:14, 21:8, 21:16, 22:1, 23:3, 23:25, 24:10, 24:14, 24:16, 25:10, 27:1, 32:3, 36:5, 36:11, 38:15, 43:14, 44:14, 45:8, 45:11
**systems** [2] - 16:4, 45:23

## T

**TAYLOR** [1] - 1:18
**technical** [2] - 7:2, 7:13
**telephone** [2] - 3:3, 46:25
**Telephone** [1] - 1:12
**ten** [2] - 40:25, 45:16
**term** [3] - 23:14, 23:15, 23:16
**terms** [4] - 22:24, 23:8, 24:6, 33:3

**testing** [1] - 7:1
**THE** [80] - 1:1, 1:2, 3:5, 3:6, 3:9, 3:10, 3:13, 3:14, 3:20, 3:25, 4:9, 4:13, 11:4, 11:10, 11:13, 11:16, 11:21, 12:16, 12:21, 13:12, 14:10, 14:15, 15:3, 15:20, 17:14, 17:17, 17:19, 17:22, 18:1, 20:1, 20:18, 21:20, 22:8, 22:11, 22:19, 23:7, 23:12, 24:1, 24:22, 25:13, 25:22, 26:2, 28:18, 28:25, 29:5, 30:6, 30:16, 31:23, 32:4, 32:18, 34:4, 34:11, 34:14, 37:23, 38:10, 38:17, 39:8, 39:12, 39:18, 39:22, 39:25, 40:8, 40:17, 40:24, 42:6, 42:18, 42:20, 43:6, 43:11, 43:22, 45:2, 45:5, 45:7, 45:17, 45:21, 46:6, 46:11, 46:17, 46:20, 46:22
**theory** [8] - 14:19, 14:24, 16:20, 21:6, 21:10, 23:5, 26:25, 36:15
**thereby** [2] - 17:4, 24:19
**therefore** [2] - 20:21, 33:22
**they've** [4] - 14:16, 20:25, 24:9, 25:2
**thinking** [1] - 18:6
**three** [4] - 18:10, 26:12, 33:12
**throughout** [1] - 9:10
**Thursday** [1] - 1:11
**Thynge** [3] - 3:5, 3:11, 3:15
**THYNGE** [1] - 1:14
**title** [4] - 7:7, 7:12, 9:4, 26:7
**titles** [2] - 12:4, 19:18
**today** [3] - 4:2, 31:2, 38:2
**together** [1] - 44:4
**totally** [1] - 25:8
**touch** [3] - 6:9, 6:12, 26:11
**toward** [2] - 5:2, 5:14
**transcript** [5] - 8:10, 10:25, 11:6, 11:9
**trial** [10] - 28:20, 32:22, 33:9, 41:20,

41:22, 42:18, 42:19, 43:25, 44:9, 45:15
**truly** [1] - 39:12
**try** [7] - 6:22, 12:19, 16:18, 30:17, 32:10, 36:12, 45:12
**trying** [5] - 15:21, 16:3, 35:13, 38:1, 45:12
**Tuesday** [1] - 25:4
**two** [6] - 8:5, 18:4, 24:20, 39:14, 41:22, 43:1
**type** [5] - 7:6, 9:20, 22:13, 23:18, 30:18

## U

**U.S** [1] - 1:14
**under** [4] - 16:20, 21:24, 22:20, 46:4
**understood** [1] - 46:10
**unfair** [1] - 37:21
**unfortunately** [2] - 5:17, 44:1
**UNITED** [1] - 1:1
**unless** [2] - 9:18, 20:23
**up** [16] - 4:24, 5:18, 7:24, 10:3, 10:4, 14:24, 18:16, 19:17, 25:12, 26:5, 27:2, 27:15, 28:1, 28:16, 39:9, 41:6
**up-to-date** [1] - 10:4
**updated** [1] - 9:6
**user** [15] - 7:4, 7:5, 7:6, 8:24, 8:25, 9:1, 9:3, 9:7, 9:8, 12:5, 18:13, 25:20, 26:6, 26:17, 33:13

## V

**vacation** [2] - 4:17, 46:19
**Val** [1] - 4:1
**Valerie** [1] - 1:24
**various** [4] - 6:11, 6:24, 33:13, 36:20
**Version** [3] - 7:10, 33:16, 38:9
**version** [45] - 6:17, 6:19, 7:7, 7:15, 7:19, 9:4, 9:22, 10:4, 13:19, 13:24, 14:1, 14:23, 16:3, 17:4, 17:9, 19:24, 19:25,

21:2, 21:7, 21:15, 21:19, 24:10, 24:14, 24:18, 24:19, 25:10, 26:7, 27:1, 28:10, 30:2, 30:8, 30:9, 31:13, 33:22, 35:18, 36:7, 36:11, 36:14, 38:5, 40:19, 43:14, 44:6, 46:1, 46:13
**versions** [72] - 5:1, 7:8, 8:22, 9:1, 9:2, 9:9, 9:15, 10:2, 10:9, 12:5, 12:7, 13:5, 13:8, 13:10, 13:22, 14:3, 14:5, 14:6, 14:7, 14:22, 15:6, 15:8, 15:9, 15:11, 16:11, 16:12, 16:14, 17:6, 18:12, 18:20, 19:5, 19:9, 19:17, 19:21, 20:5, 20:11, 20:13, 21:9, 23:3, 23:25, 24:15, 24:20, 25:1, 25:6, 25:9, 26:15, 26:18, 27:18, 29:18, 29:22, 30:14, 30:23, 31:3, 31:9, 31:17, 32:2, 32:16, 32:17, 36:4, 36:9, 37:17, 38:5, 38:7, 38:13, 38:14, 38:15, 38:18, 38:21, 40:7, 46:3
**view** [1] - 21:4
**virtually** [2] - 6:3, 18:5
**VOICE** [1] - 3:12
**voice** [1] - 16:17
**vs** [1] - 1:6

## W

**wake** [1] - 10:2
**walked** [1] - 10:12
**wants** [2] - 35:18, 40:15
**ways** [2] - 41:9, 43:15
**website** [1] - 7:3
**weeds** [1] - 24:5
**weeks** [2] - 37:21, 40:6
**welcome** [1] - 3:13
**whereas** [1] - 42:1
**whipsawed** [6] - 5:5, 18:25, 20:7, 25:12, 34:21, 39:9
**wider** [2] - 23:9, 23:12
**willing** [6] - 27:15, 27:16, 27:19, 28:8, 28:13, 28:24

**Wilmington** [1] - 1:11
**Windows** [4] - 16:23, 17:4, 17:6
**wonderful** [1] - 46:18
**word** [1] - 34:21
**wording** [1] - 38:25
**words** [3] - 9:14, 11:24, 31:14
**works** [4] - 14:23, 26:4, 38:9, 45:11
**wrote** [1] - 7:22

## Y

**year** [7] - 15:16, 18:13, 19:3, 33:9, 41:19, 43:25
**Year** [2] - 46:21, 46:22
**years** [4] - 9:16, 18:10, 18:11, 33:21, 41:22
**York** [2] - 2:7
**YOUNG** [1] - 1:18
**Young** [1] - 3:16
**yourself** [2] - 4:2, 40:18