# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MOBILEMEDIA IDEAS LLC,

       Plaintiff,

   v.

APPLE INC.,

       Defendant.

Civil Action No. 10-258 SLR-MPT

`Public Redacted Version`

## LETTER TO MAGISTRATE JUDGE THYNGE FROM RICHARD K. HERRMANN

Richard K. Herrmann (# 405)
Mary B. Matterer (# 2696)
Kenneth L. Dorsney (# 3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com
kdorsney@morrisjames.com


OF COUNSEL:

George A. Riley
Luann L. Simmons
David S. Almeling
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
(415) 984-8700
griley@omm.com
lsimmons@omm.com
dalmeling@omm.com

*Attorneys for Defendant Apple Inc.*



Richard K. Herrmann
302.888.6816
rherrmann@morrisjames.com

July 25, 2012

**BY EFILING AND HAND DELIVERY**

The Honorable Mary Pat Thynge                    `Redacted Version`
United States District Court
844 N. King Street
Wilmington, Delaware 19801

**Re:  *MobileMedia Ideas LLC v. Apple, Inc.*, C.A. No. 10-258-SLR-MPT**

Dear Judge Thynge:

Defendant Apple seeks relief for Plaintiff MMI's violations of the Court's May 16, 2011 Protective Order (D.I. 221) in connection with MMI's experts' review of Apple's source code.

Apple's source code constitutes extraordinarily sensitive trade secrets, the unauthorized disclosure of which – whether intentional or not – would cause substantial and irreparable harm to Apple.  Even within Apple, physical access to Apple source code is limited to select groups of authorized employees, with access provided only as to portions of code and on a need-to-know basis.  Recognizing this, the parties carefully negotiated, and the Court approved, a detailed protective order balancing MMI's discovery needs against Apple's security concerns.  The Protective Order includes provisions controlling access to Apple's source code[1] and the amount of source code that may be printed and distributed.  When reviewing Apple's source code, MMI's experts violated these provisions.

Rule 37 provides that if a party "fails to obey an order to provide or permit discovery," the court may issue "further just orders," including ordering the disobeying party precluded from introducing designated matters into evidence and ordering the disobeying party to pay reasonable expenses.  Fed. R. Civ. P. 37(b)(2)(A), (C).  Sanctions for MMI's violations of the Protective Order are appropriate under Rule 37(b) of the Federal Rules of Civil Procedure and the Court's inherent authority to enforce its orders.  Thus, pursuant to this Court's order referring portions of this case to Your Honor, Apple requests approval to file a motion for sanctions pursuant to Rule 37 or such other relief as Your Honor finds appropriate.  D.I. 20 at 2.

I.      **Dr. Williams's Violations Of The Protective Order**

MMI's expert, Dr. Timothy Williams, violated two provisions of the Protective Order. First, the Protective Order permits printing "limited portions of the Source Code only when reasonably necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report or for use as deposition exhibits)," but provides that "the Receiving Party

---

[1] Apple is the only party in this litigation who has source code.

The Honorable Mary Pat Thynge
July 25, 2012, Page 2



shall not print Source Code to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer." Protective Order ¶ 11(c)(iv) (emphasis added).  This provision is critical for securing source code against unauthorized disclosure.  If a party is permitted to print and remove large swaths of source code for review elsewhere, the effort to establish and maintain a secure source code machine is rendered pointless.

On November 23, 2011, Apple objected to the amount of source code MMI's experts were printing (360 pages on that single day) as excessive[2] and requested a meet and confer. MMI responded by email on December 1, 2011, and assured Apple that it was only printing source code as "was 'reasonably necessary to prepare'" MMI's expert reports and, specifically, was not printing source code for review elsewhere in the first instance:  "given the extensive time the experts have spent at your offices [the print-outs] clearly were not printed 'to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer.'"  Ex. 1.  MMI further explained that to discuss Apple's concerns "in more detail (e.g., file-by-file or in some other fashion) would be an extraordinarily time-consuming activity that … we do not believe is reasonable in these circumstances."  *Id*.

Yet contrary to MMI's assurances, Apple's source code was in fact being printed for expert review elsewhere in the first instance.  During his deposition, Dr. Williams testified to reviewing "roughly" 50-75 pages of Apple source code in printed form without having first reviewed that source code on the Source Code Computer.  *See* Ex. 2 at 26:19-28:3.  Indeed, the evidence suggests that the number of pages is actually greater.  In his expert report, Dr. Williams states that he "considered and relied on" 380 pages of Apple source code.  But according to the source code review log that experts were required to sign any time they reviewed source code on the Source Code Computers, Dr. Williams spent only six hours on a single day reviewing source code on the Source Code Computer.[3]  Ex. 3.

Dr. Williams revealed at his deposition that a non-testifying consultant retained by MMI, Mr. Finch, printed Apple's source code and mailed it to MMI's counsel's New York offices for Dr. Williams's review.  *See* Ex. 2 at 26:19-28:3; see also 18:10-19:5; 19:10-16; 20:18-24; 21:12-23; 49-13-20.  Dr. Williams testified that Mr. Finch identified and printed source code based on high-level, general descriptions of functionality provided by Dr. Williams (e.g., "processes that involved synchronization on the various operating systems") and some follow up telephone discussions.  *See*, e.g., Ex. 2 at 18:10-19:5; 19:10-16; 20:18-24; 21:12-23; 26:19-28:3; 49:13-20. Dr. Williams did not review the source code on the computers himself because "it was more efficient for Mr. Finch to look in general and find pieces of code that he thought might represent what I was looking for than for me to review that and approve or disapprove."  *See* Ex. 2 at

---

[2] MMI's experts printed a total of over 7,000 pages of Apple's source code.  In their reports, however, MMI's experts collectively cited to only 888 of those printed pages.
[3] To the extent Dr. Williams did in fact review source code on the Source Code Computers on days other than the single date on which he signed the source code review log, Dr. Williams violated Paragraph 11(c)(v) of the Protective Order by failing to sign the log.



49:13-20.  Dr. Williams' deposition was the first time Apple learned that source code was being printed and distributed to others for review; his expert report does not mention Mr. Finch.

MMI's behavior violates both the letter and spirit of the Protective Order.  Moreover, MMI's subsequent assurances and refusal to discuss Apple's concerns in detail compounded the violations and permitted them to continue unchecked, ultimately requiring that Apple bring this motion.  MMI's violation of Paragraph 11(c)(iv) of the Protective Order and subsequent refusal to address Apple's concerns requires proportional remedial action in the form of the relief requested below.

## II.      Dr. Meldal's Violations Of The Protective Order

MMI's expert, Dr. Sigurd Meldal, made photocopies of printed Apple source code that were not "reasonably necessary for use in the prosecution or defense of this action," in violation of Paragraphs 11(c)(vi)-(viii) of the Protective Order.  Dr. Meldal testified that "the routine" was that he made and kept photocopies of printed Apple source code "for safekeeping" and then sent the originally-printed copies of the code by FedEx to MMI's counsel's New York offices.  *See, e.g.*, Ex. 4 at 63:16-64:4.  This violation, though less severe than needlessly printing and removing thousands of pages of irrelevant source code, evinces a lack of respect for and adherence to the Protective Order by MMI and its experts.  Apple must necessarily trust that the professionals subscribing to the Protective Orders in its many patent cases read, understand, and follow the carefully negotiated provisions.  The repeated disrespect shown by MMI for these provisions and for Apple's concerns about adherence to these provisions requires remedial action.

## III.     Requested Relief For MMI's Violations Of The Protective Order

Apple respectfully requests the following relief for MMI's violations of the Protective Order:

- The Court order MMI to return all source code that it printed (and copies thereof) but that is not specifically cited in its experts' reports.

- Dr. Williams be precluded from relying on or testifying about any information he obtained from Mr. Finch, including any information about Apple's source code or the operation of the accused products.

- MMI be ordered to pay a monetary sanction and Apple's legal fees in bringing this motion.

- Any other relief that the Court finds is justified.

The Honorable Mary Pat Thynge
July 25, 2012, Page 4

Morris James LLP

Respectfully,

Richard K. Herrmann (I.D. #405)
*rherrmann@morrisjames.com*

RKH/tah

cc: All counsel of record

# EXHIBIT 1

July 25, 2012 Apple's Letter to Judge Robinson
Regarding MMI's Violation of the Protective Order

MobileMedia Ideas LLC v. Apple Inc.,
Case No. 10-258-SLR

**From:**     De Leeuw, Marc
**To:**       Simmons, Luann; Federbush, Alan
**Cc:**       Jaang, Jane J.; Coles, Anthony; Rubenstein, Kenneth
**Subject:**  RE: Source code printouts
**Date:**     Thursday, December 01, 2011 12:00:40 PM

Luann:

I have communicated about this with Alan, who has spoken to MMI's experts.  Our experts have informed us that they requested printing of the source code because it was "reasonably necessary to prepare" an "expert report" as set forth in Section 11(c)(iv) of the Protective Order.  Furthermore, as required by that section, the print-outs were not "more than 10% of a specific software release," "no print-out . . . exceed[ed] 50 continuous pages" and, given the extensive time the experts have spent at your offices clearly were not printed "to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer."  Accordingly, we believe that the source code print-outs obtained by MMI's experts complied in all respects with the Protective Order.  To discuss this in more detail (e.g., file-by-file or in some other fashion) would be an extraordinarily time-consuming activity that, particularly given the substantial delays that we have already endured, our experts cannot spare and that we do not believe is reasonable in these circumstances.  Let us know if there is something further you would like to discuss.

Best regards.

                                                                                        M.D.

**From:** Simmons, Luann [mailto:LSimmons@OMM.com]
**Sent:** Wednesday, November 30, 2011 6:21 PM
**To:** Federbush, Alan
**Cc:** De Leeuw, Marc; Jaang, Jane J.; Coles, Anthony; Rubenstein, Kenneth
**Subject:** Re: Source code printouts

Alan,

We have not heard back from you yet regarding scheduling a meet and confer to discuss Apple's objection to the amount of source code printed by MMI.  Please let us know your availability for a call on Thursday or Friday.

Thanks,
Luann

On Nov 23, 2011, at 3:40 PM, Simmons, Luann wrote:

Alan,

We are preparing additional paper and will let the consultants print and take the code they are requesting.  We do, however, object to the printing as excessive.  The consultants have already

printed 160 pages and have indicated that they intend to print an additional 200 pages today - 360 pages of printed source code is not proper under 11(c)(iv).  As stated in that section of the Protective Order, "The Receiving Party may print limited portions of the Source Code only when reasonably necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report or for use as deposition exhibits)."

We request a meet and confer next week to address Apple's objection.

Thanks,
Luann

---

**From:** Federbush, Alan [mailto:AFederbush@proskauer.com]
**Sent:** Wednesday, November 23, 2011 2:45 PM
**To:** Simmons, Luann
**Cc:** De Leeuw, Marc; Jaang, Jane J.; Coles, Anthony C.; Rubenstein, Kenneth
**Subject:** Source code printouts


Luann,

My consultants have advised me that your assistant has refused to provide them a sufficient quantity of paper for their printing needs today, and further, that he will not allow them to take what they printed.  This is in violation of the Protective Order.

Paragraph 11(c)(iv) states:
    "The Producing Party shall make available a laser printer … for on-site printing during inspection of the Source Code…At the time the Receiving party prints any portion of Source Code, the Receiving Party shall provide to the Producing Party a copy of the printed pages.  The Receiving party may maintain one copy of the printed pages pending receipt of numbered pages from the Producing Party …"

The fact that your pages are pre-numbered does not prohibit them from retaining a copy.

Every day until now, the procedure has been that MMI's consultants presented what they printed to your assistant who made a copy for Apple and returned the originals to them.

If Apple has any objection to what MMI has printed, the Protective Order provides that Apple has four days to make any objections, but it does not permit Apple to prohibit MMI from printing and retaining what it chooses to print in the first instance.  Please instruct your assistant to follow the set procedure and return the printouts to MMI's consultants.

Thank you.

Regards,
Alan

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to

be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any
transaction or matter addressed herein.

*****************************************************
This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

================================================================================
==============================

Luann L. Simmons
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Tel: 415/984-8896
Fax: 415/984-8701
Email: lsimmons@omm.com

This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential
and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received
this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient,
please delete the e-mail and notify us immediately.

# EXHIBIT 2

July 25, 2012 Apple's Letter to Judge Robinson
Regarding MMI's Violation of the Protective Order

MobileMedia Ideas LLC v. Apple Inc.,
Case No. 10-258-SLR

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
----------------------------------------X
MOBILEMEDIA IDEAS, LLC,


                    Plaintiff,


                              Civil Action No:
VS.                           10-258-SLR-MPT


APPLE, INC.,
                    Defendant.
----------------------------------------X


                VOLUME I
    HIGHLY CONFIDENTIAL DEPOSITION OF
        DR. TIM A. WILLIAMS
      Monday, April 16, 2012
        New York, New York




        *** HIGHLY CONFIDENTIAL ***
        *** OUTSIDE COUNSEL ONLY ***




Reported By:
LINDA J. GREENSTEIN
JOB NO. 326941



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Dr. Tim A. Williams - Volume I                    April 16, 2012
                CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

                                                           17

 1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY

 2          Q.    More than ten?

 3          A.    Probably.

 4          Q.    More than twenty?

 5          A.    Probably not twenty.

 6          Q.    Somewhere between ten and twenty

 7    would be fair?

 8          A.    Probably.

 9          Q.    Were all of these conversations

10    either face to face or over the telephone?

11          A.    Yes.

12          Q.    Did you exchange any e-mail

13    communications with Mr. Finch about this

14    case?

15          A.    Only in terms of setting up

16    meetings and that sort of thing.  Nothing

17    of substance.

18          Q.    Did you rely on your

19    conversations with Mr. Finch in forming

20    your opinions in this case?

21          A.    No.  I relied on my own

22    opinions.

23          Q.    What did you and Mr. Finch

24    discuss regarding Apple source code?

25          A.    Detailed discussions about the



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Dr. Tim A. Williams - Volume I                April 16, 2012
CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

18

1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY
2         structure of the code.  Detailed
3         discussions about the code.  Detailed
4         discussions about what I was looking for in
5         the code to find or disprove infringement.
6              Q.    And why did you have these
7         discussions with Mr. Finch?
8              A.    Mr. Finch was a resource for me
9         to use in terms of analyzing code.
10             Q.    How did you use Mr. Finch as a
11        resource to analyze the code?
12             A.    I gave Mr. Finch particular
13        instructions and directions as to what I
14        was looking for in the code, and he spent
15        time looking at the code to determine areas
16        where infringement could be proven or
17        disproven.
18             Q.    Your expert report regarding
19        infringement does not mention your
20        conversations with Mr. Finch; is that
21        correct?
22             A.    I don't believe it does, no.
23             Q.    Why not?
24             A.    Didn't feel it was important.
25             Q.    Mr. Finch helped you to find the



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Dr. Tim A. Williams - Volume I                    April 16, 2012
CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

19

1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY

2        code that you believe is relevant to your

3        infringement analysis, though; is that

4        right?

5            A.    Yes.

6            Q.    The conversations you had with

7        Mr. Finch, were they over the telephone or

8        were they face to face?

9            A.    Both.

10           Q.    Were you asking Mr. Finch to

11       locate code for you and print it out?

12           A.    I was asking him to locate code

13       for me, and when we agreed that the code

14       that he had found was important to the

15       case, then he -- I believe he went through

16       a process to cause it to be printed out.

17           Q.    How did you decide what code was

18       important to the case?

19           A.    We discussed it.

20           Q.    Did Mr. Finch offer his opinions

21       about what code was important to the case?

22           A.    Not that I relied on.

23           Q.    So I'm trying to understand how

24       the conversations went.

25                 Did he tell you what files he



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Dr. Tim A. Williams - Volume I                April 16, 2012
CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

20

1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY

2        had found and then described what they did,

3        or -- what did you guys talk about with

4        respect to the code specifically?

5                MR. SCHILOWITZ:  Object to the

6        form.

7            A.    Well, we talked about what the

8        code was doing, what code files he had

9        found, and how the flow of the code

10       executed various functions that were found.

11           Q.    When you say you were talking

12       about what the code was doing, did you know

13       what the code was doing or was he telling

14       you what it was doing?

15               MR. SCHILOWITZ:  Object to the

16       form.

17           A.    I don't understand the question.

18           Q.    Had you already reviewed the

19       code yourself?

20           A.    I looked at the code and we

21       discussed what the code was doing.

22           Q.    How did you look at the code?

23           A.    Either on the screen or in --

24       through a printout.

25           Q.    When did you review source code,



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Dr. Tim A. Williams - Volume I                    April 16, 2012
               CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

                                                              21

1   WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY

2       Apple source code on the screen?

3           A.    At the -- the days that I went

4       to the office of O'Melveny in San

5       Francisco.

6           Q.    And what days were those?

7           A.    I don't recall.

8           Q.    Do you recall how many days you

9       reviewed source code at O'Melveny's offices

10      in San Francisco?

11          A.    Three or four days.

12          Q.    And all of the code that you and

13      Mr. Finch discussed was code that you had

14      reviewed while you were at O'Melveny's

15      offices in San Francisco?

16              MR. SCHILOWITZ:  Object to the

17      form.

18          A.    We discussed the code at

19      O'Melveny's office.  We also discussed the

20      code when I was here in New York and he was

21      in San Francisco, after the files had been

22      printed out, and the files -- the printed

23      files were here, in this office.

24              MS. SIMMONS:  I'll go ahead and

25      mark as Williams Exhibit 1 the expert



Dr. Tim A. Williams - Volume I                     April 16, 2012
          CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

22

1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY

2       report of Tim A. Williams on infringement

3       issues.

4                      (Williams Exhibit 1 for

5       identification, Multi-page document

6       entitled, "Expert Report of Tim A. Williams

7       on Infringement Issues.")

8                      MR. SCHILOWITZ:  I'll just note

9       for the record that there's a cover page on

10      it that looks like it was printed by

11      O'Melveny.

12                     MS. SIMMONS:  That is correct.

13      BY MS. SIMMONS:

14          Q.    Dr. Williams, do you recognize

15      the document we've marked as Exhibit 1?

16          A.    I do.

17          Q.    Is this your expert report on

18      infringement issues in this case?

19          A.    It is.

20          Q.    Did you prepare this report?

21          A.    Yes.

22          Q.    Does this report accurately and

23      completely reflect your opinions regarding

24      the infringement of the five patents that

25      are listed on the cover sheet?



Dr. Tim A. Williams - Volume I                April 16, 2012
            CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

25

1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY

2         A.    6 to 8 --

3         Q.    I'm sorry, page 6 to 8 of

4    Exhibit 1 to your infringement report.

5         A.    Oh.

6         Q.    It's a little confusing because

7    we have Depo Exhibit 1 and Exhibit 1 to

8    your report.

9         A.    I see.

10               Yes, I believe that's correct.

11        Q.    So just to make the record

12   clear, pages 6 through 8 of Exhibit 1 to

13   your initial infringement expert report

14   lists the Apple source code that you relied

15   on in forming your infringement opinions;

16   is that correct?

17        A.    As far as I know, yes.

18        Q.    Do you have any reason to

19   believe that this list is not accurate?

20        A.    No.

21        Q.    You considered and relied on all

22   of the source code listed on pages 6

23   through 8 of Exhibit 1 to your report?

24               MR. SCHILOWITZ:  Object to the

25   form.



Dr. Tim A. Williams - Volume I                    April 16, 2012
                CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

                                                              26

 1   WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY
 2        Q.    Correct?
 3        A.    All this source code was
 4   available to me.
 5        Q.    What do you mean by "available"
 6   to you?
 7        A.    It was all part of information
 8   that I used to -- to create my report.
 9        Q.    Did you review all of the source
10   code listed on pages 6 through 8 on the
11   source code computers at O'Melveny's San
12   Francisco offices?
13        A.    I don't recall.
14        Q.    Did you review any source code
15   other than the source code listed on pages
16   6 through 8?
17        A.    As far as I know, this is a
18   comprehensive list.
19        Q.    Did you review any Apple source
20   code in printed format that you had not
21   first reviewed on the machines at
22   O'Melveny's offices in San Francisco?
23        A.    Yes.
24        Q.    How much Apple source code did
25   you review in printed format without having



Dr. Tim A. Williams - Volume I                April 16, 2012
                CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

                                                                  27

 1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY
 2       first reviewed the code on the machines at
 3       O'Melveny's offices in San Francisco?
 4               MR. SCHILOWITZ:   Object to the
 5       form.
 6       A.     In terms of lines of code or
 7       pages --
 8       Q.     Let's start with lines of code.
 9       A.     I don't recall.
10       Q.     Do you recall the number of
11       pages you reviewed first in printed form as
12       opposed to on the machines at O'Melveny's
13       offices in San Francisco?
14       A.     Roughly 50, 75 pages.
15       Q.     How did you get the printed form
16       of Apple source code that you reviewed?
17       A.     It was made available to me here
18       in this office in New York.
19       Q.     In Proskauer's New York offices?
20       A.     Yes.
21       Q.     Do you know how Proskauer's New
22       York offices ended up with the printed
23       source code?
24       A.     No.
25       Q.     Do you know who printed the



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Dr. Tim A. Williams - Volume I                    April 16, 2012
                CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

                                                                    28

1     WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY
2         source code that you reviewed?
3              A.     I believe it was Patrick.
4              Q.     Why do you believe it was
5         Patrick -- by "Patrick," I'm sorry, you
6         mean Mr. Finch; is that correct?
7              A.     Yes.
8              Q.     How do you know it was Mr. Finch
9         that printed the source code you reviewed?
10             A.     Because these were functions and
11        functionality that he and I discussed that
12        I was looking for.
13                    And once he had printed them
14        out, he and I had discussions on the phone
15        about them.
16             Q.     You mentioned that you had
17        multiple conversations -- I think we said
18        between ten and twenty -- with Mr. Finch.
19                    Can you give me an estimate of
20        how much time in terms of hours these
21        conversations took?
22             A.     I didn't record the times.
23             Q.     Do you prepare invoices for your
24        work on behalf of MMI?
25             A.     Yes.



Dr. Tim A. Williams - Volume I                April 16, 2012
CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

                                                            29

 1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY
 2          Q.    Would your invoices reflect how
 3    much time you spent in conversation with
 4    Mr. Finch?
 5          A.    No.
 6          Q.    If you had to give me an
 7    estimate of how much time you talked with
 8    Mr. Finch, would it be more than
 9    twenty hours?
10          A.    In total?
11          Q.    In total, correct.
12          A.    Probably.
13          Q.    Would you say more than
14    thirty hours?
15          A.    Probably.
16          Q.    More than fifty hours?
17          A.    I don't know exactly how many.
18    Probably more than thirty.
19          Q.    Okay.
20                Did you ever review any source
21    code other than either in printed format at
22    Proskauer's New York offices or on the
23    source code machines in San Francisco at
24    O'Melveny?
25                MR. SCHILOWITZ:  Object to the



Dr. Tim A. Williams - Volume I                    April 16, 2012
CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

48

1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY
2        operating systems?
3            Q.      Great question.
4                    Let's start with which versions
5        of IOS did you ask Mr. Finch to look for?
6            A.      Whatever versions he had
7        available to him.
8            Q.      Did you narrow it down or give
9        him a specific version number you wanted
10       him to look in?
11           A.      No.  The latest versions that he
12       had.
13           Q.      Do you recall what version that
14       was?
15           A.      I believe he had -- the latest
16       one he had was 43 of IOS -- 42 or 43.
17           Q.      Did you ask him to look at
18       source code from any earlier versions of
19       IOS or just IOS version 4.3?
20           A.      No.  I asked him to look at the
21       entire production.
22           Q.      Your question, that was a great
23       question about what operating systems.
24                   What operating systems other
25       than IOS did you ask him to review?



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Dr. Tim A. Williams - Volume I                    April 16, 2012
                CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

                                                            49

1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY

2              MR. SCHILOWITZ:  Object to the

3       form.

4        A.     The operating system that's used

5    on the iPods, as well as the IOS, which is

6    used on the iPads and the iPhone.

7        Q.     Did you ask him to focus on any

8    specific version of the iPod operating

9    system?

10       A.     No.  I asked him to use the

11   entire production that was available to

12   him.

13       Q.     Why didn't you review all of the

14   source code on the machines yourself?

15       A.     It was more efficient for

16   Mr. Finch to look in general and find

17   pieces of code that he thought might

18   represent what I was looking for than for

19   me to review that and approve or

20   disapprove.

21       Q.     Is Mr. Finch being paid by you

22   for his work or is he paid directly by MMI?

23       A.     No.  He's my consultant.

24       Q.     You mentioned that your company

25   hires him on other matters also; is that



Dr. Tim A. Williams - Volume I                    April 16, 2012
            CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

                                                              50

 1    WILLIAMS-HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL ONLY

 2       right?

 3            A.    Yes.

 4            Q.    Did you recommend that MMI hire

 5       him to assist you in forming your opinions

 6       in this case?

 7            A.    Yes.

 8            Q.    Do you know a Mr. John Jarosz,

 9       J-A-R-O-S-Z?

10            A.    No.

11            Q.    You haven't spoken with

12       Mr. Jarosz in connection with your work on

13       this case?

14            A.    No.

15            Q.    Do you know Dr. John Strawn,

16       S-T-R-A-W-N?

17            A.    No.

18            Q.    You haven't spoken with a

19       Dr. Strawn in connection with your work on

20       this case?

21            A.    No.

22            Q.    Do you know Mr. Philip Johnson?

23            A.    No.

24            Q.    Have you spoken with Mr. Johnson

25       regarding your work on this case?



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Dr. Tim A. Williams - Volume I                    April 16, 2012
          CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY

265

1                    DEPOSITION ERRATA SHEET

2

3

4       Our Assignment No.:  326941

5       Case Caption:  Mobilemedia Ideas v. Apple

6

7         DECLARATION UNDER PENALTY OF PERJURY

8

9             I declare under penalty of

10      perjury that I have read the entire

11      transcript of my Deposition taken in the

12      captioned matter or the same has been read

13      to me, and the same is true and accurate,

14      save and except for changes and/or

15      corrections, if any, as indicated by me on

16      the DEPOSITION ERRATA SHEET hereof, with

17      the understanding that I offer these

18      changes as if still under oath.

19                          _____

20                          DR. TIM A. WILLIAMS

21      Subscribed and sworn to on the _____ day of

22      _____, 20 _____ before me.

23      _____

        Notary Public,

24      in and for the State of

        _____.

25



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

# EXHIBIT 3

July 25, 2012 Apple's Letter to Judge Robinson
Regarding MMI's Violation of the Protective Order

MobileMedia Ideas LLC v. Apple Inc.,
Case No. 10-258-SLR

**MoblieMedia Ideas, LLC v Apple Inc.**

**Case No. District of Delaware 10-258-SLR**

**Source Code Review Log**

| Date | Reviewer Name | Time In | Time Out | Beginning Bates | Ending Bates |
|------|---------------|---------|----------|-----------------|--------------|
| 10/31/11 | Alan Federbush | 9⁰⁰ | 6:00 MB | | |
| 10/31/11 | Patrick Finch | 9⁰⁰ | 6:00 PAT | | |
| | | | | | |
| 11/1/11 | Alan Federbush | 9⁰⁰ | 5:45 | | |
| 11/1/11 | Patrick Finch | 9⁰⁰ | 6:45 | | |
| 11/1/11 | Gareth Loy | 10⁰⁰ | 6:45 | | |
| | | | | | |
| 11/2/11 | Patrick Finch | 9:00 | 7:00 | | |
| 11/2/11 | Alan Federbush | 9⁰⁰ | 7:00 | | |
| 11 | Gareth Loy | 10 am | 7:0 | | |
| | | | | | |
| 11/3/11 | Patrick Finch | 09:00 | 7:0 | | |
| 11/3/11 | Alan Federbush | 9⁰⁰ | 7:00 | | |
| 11/3/11 | J. Williams | 12:00 | 6:00 | | |
| 11/31/11 | Gareth Loy | 1:30 | 7:00 | | |
| | | | | | |
| 11/4/11 | Patrick Finch | 9:00 | 5:00 | | |
| 11/4/11 | Alan Federbush | 9⁴⁰ | 4³⁰ | | |
| | | | | | |
| 11/9/11 | Patrick Finch | 9:00 | 6:00 | | |
| 11/9/11 | Alan Federbush | 9⁰⁰ | 1900 | | |
| 9/8/11 | J. MELDA | 9⁰⁰ | 1900 | | |
| | | | | | |
| 11/10/11 | Patrick Finch | 841 | 1900 | | |
| 11/10 | | | | | |
| 11/11/11 | Sigurd MELDA | 8⁵⁵ | 16⁴⁵ | | |
| 11/11/11 | Alan Federbush | 9¹⁵ | 16⁴⁵ | | |
| 11/11/11 | Patrick Finch | 9⁰⁰ | 16⁴⁵ | | |
| | | | | | |
| 11/14/ | S. Melda | 14⁰⁰ | 1900 | | |
| 11/14/2011 | G. Loy | 1:30 | 1900 out → (:45) | | |
| 11/14/2011 | Pat Finch | 9:00 | 1900 | 175 | 213 |
| 11/15/2011 | Gareth Loy | noon | 6:40 | | |
| 11/16/2011 | Gareth Loy | noon | 6:45 | | |
| 11/17/2011 | Gareth Loy | noon | 6:45 | | |
| 11/19/2011 | Pat Finch | 9⁰⁰ | 6:00 | | |
| 11/19/11 | S. Melda | 9⁴⁵ | 6:00 | 814 | 331 |

EXHIBIT
WILLIAMS 4
4·16·12 CG
PENGAD 800-631-6989

| MoblieMedia Ideas, LLC v Apple Inc. | | | | | |
|---|---|---|---|---|---|
| Case No. District of Delaware 10-258-SLR | | | | | |
| Source Code Review Log | | | | | |
| Date | Reviewer Name | Time In | Time Out | Beginning Bates | Ending Bates |
| 11/20/11 | S. Melzer | 9¹¹ | 6⁰⁵ | 332 | 536 |
| 11/20/11 | Pat Finch | 9 | 6 | | |
| 11/21/11 | S. Melzer | 8⁰⁵ | 1215 | | |
| 11/21/11 | Pat Finch | 9:00 | 1900 | | |
| 11/22/11 | Pat Finch | 9:30 | 1900 | | |
| 11/22/11 | S. Melzer | 9:30 | 16⁰⁰ | | |
| 11/23/11 | Pat Finch | 10:00 | 16⁰⁰ | | |
| 11/23/11 | S. Melzer | 10:00 | 16⁰⁰ | | |
| 11/28/11 | Pat Finch | 10⁰⁰ | 1900 | 1206 | 1224 |
| | Gareth Loy | noon | 7p | | |
| 11/29/11 | Gareth Loy | 11a | 7p | | |
| x/30/11 | " | " | " | | |
| 12/1/11 | " | " | " | | |
| 12/3/11 | Pat Finch | 9:20 | 1645 | 1230 | 1278 |
| 12/7/2011 | Gareth Loy | 10am | 2:40 | | |
| 12/3/2011 | Pat Finch | 1130 | 1330 | | |
| 12/5/2011 | Gareth Loy | 1115 | 6:57 | | |
| 12/6/2011 | Gareth Loy | 1115 | 8:20 | | |
| 12/7/11 | S. Melzer | 13:30 | 19:20 | | |
| " | G. Loy | 11:20 | -6:10 | | |
| 12/8/11 | S. Melzer | 9:30 | 19⁰⁰ | | |
| 12/8/11 | P Finch | 10⁰⁰ | 19⁰⁰ | | |
| " | G. Loy | 1:30p | 1900 | | |
| 12/9/11 | P Finch | 1130 | 1900 | 1813 | 2083 |
| 12/9/11 | S. Melzer | 9³⁰ | 19³⁰ | | |
| 12/10/11 | S. Melzer | 9³⁰ | | | |
| 12/10/11 | P Finch | 930 | 1900 | 2054 | 2186 |
| " | G. Loy | 11:30 | 2:30 | | |
| 12/11/11 | Pat Finch | 9⁰⁰ | 1905 | 2315 | 2351 |
| 12/11/11 | S. Melzer | 9³⁰ | 1900 | | 2367 |
| 12/12/11 | S. Melzer | 9³⁰ | 1900 | | |
| 12/12/11 | Pat Finch | 930 | 1900 | 2388 | 2401 |
| 12/12/11 | G. Loy | 10:30 | 7p | | |

**MobileMedia Ideas, LLC v Apple Inc.**
**Case No. District of Delaware 10-258-SLR**
**Source Code Review Log**

| Date | Reviewer Name | Time In | Time Out | Beginning Bates | Ending Bates |
|------|---------------|---------|----------|-----------------|--------------|
| 12/13/11 | G. Loy | 11:30 | 7p | | |
| 12/14/11 | G. Loy | 1:30 | | | |
| 12/15/11 | Pat Finel | 9ᵃᵉ | 7ᵖᵉ | | |
| 12/15/11 | G. Loy | 1:30 | 7p | | |
| 12/15/11 | S. Melski | 9:30 | 19⁰⁰ | 2554 | 2659 |
| 12/16/11 | Pat Finel | 930 | | | |
| 11 | G. Loy | 10:30 | 12n | | |
| " | S. Melski | 15:30 | | 2661 | 2697 |
| 12/17/11 | S. Melski | 16:00 | 17:00 | 2698 | 2699 |
| " | G. Loy | " | 7p | | |
| 12/19/11 | P. Finel | 930 | 19⁰⁰ | 2700 | 2741 |
| " | G. Loy | 11:00 | 7p | | |
| 12/20/11 | P. Finel | 10³⁰ | 19⁰⁰ | 2743 | 2862 |
| " | G. Loy | 11:a | 1900 | | |
| 12/21/2011 | G. Loy | 11a | 7p | | |
| 12/26/11 | S. Melski | 3:40 pm | 6⁵⁰ pm | — | — |
| 12/21/11 | S. Melski | 9:30 | 18⁴⁵ | 3169 | 3405 |
| 12/22/11 | S. Melski | 13⁴⁵ | 19⁰⁵ | 3406 | 3601 |
| 12/27/11 | G. Loy | 4p | 7p | 3602 | 3700 |
| 12/28/11 | S. Melski | 9⁰⁰ | 19⁰⁰ | 3786 | 3899 |
| 12/28/11 | G. Loy | 11a | 7p | 3701 | 3785 |
| 12/29/11 | S. Melski | 9⁰⁰ | 19⁰⁰ | 3909 | 4003 |
| 12/29/11 | G. Loy | 3:05p | 7p | 3888 3900 | 3888 3908 |
| 12/30/11 | S. Melski | 9⁰⁰ | 18⁴⁵ | 4004 | 4110 |
| 12/30/11 | G. Loy | 10a | 12:30 | | |
| 1/3/12 | S. Melski | 9:40 | 7p | 4473 | 4609 |
| 1/3/12 | G. Loy | 11a | 7p | | |
| 1/4/12 | G. Loy | 11a | 7p | | |
| 1/5/12 | P. Finel | 10⁰⁰ | 18⁰⁰ | | |
| 1/4/12 | S. Melski | 9⁰⁰ | 18³⁰ | 4682- | 4960 |
| 1/6/12 | G. Loy | 2p | 7p | | |
| 1/6/12 | P. Finel | 9⁰⁰ | | 4970 | 5971 |
| 1/6/12 | S. Mason | 9⁰⁰ | 18⁴⁵ | 5323 | 5532 ] scrap |
| " | 1/6/~ | 12 | 5p | | |

60  58

1/7/12    SMELDA    9¹⁵    17⁴⁵    5533    ~~5536~~
1/7/12    PFinch    10⁴⁵
1/20/12   PFinch    930        6116    6349
1/6/12    C.Lon     11a        6358-6409  6420  6411
                                          6421  6416
1/9/12    PFinch    930    1900

Sign In Sheet

| Date | Individual | Time In | Time Out | Bates # |
|------|-----------|---------|----------|---------|
| 1/10/12 | G.Ly | 11a | 7p | |
| 1/11/12 | PFinch | 9³⁰ | | 6567-6590<br>6590-6772 |
| 1/11/12 | G.Ly | 1:30 p | | 6790-95 Scrap |
| 1/12/12 | S Melch | 11:30 – 19¹⁰ | | -7075 |
| 1/12/12 | PFinch | 11:30 | | 6799 6864 |
| 1/12/12 | G.Ly | noonish – 1pm | | |

# EXHIBIT 4

July 25, 2012 Apple's Letter to Judge Robinson
Regarding MMI's Violation of the Protective Order

MobileMedia Ideas LLC v. Apple Inc.,
Case No. 10-258-SLR

1

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

No. 10-258-SLR

- - - - - - - - - - - - - - - - - - - - - - - - -

MOBILEMEDIA IDEAS LLC,

Plaintiffs

vs.

APPLE INCORPORATED,

Defendants

- - - - - - - - - - - - - - - - - - - - - - - - -

VIDEOTAPED DEPOSITION OF SIGURD MELDAL

Monday, April 23, 2011 9:34 a.m.

Proskauer Rose LLP

One International Place, Boston, MA 02110

Reporter:  Janet M. McHugh, RMR, CRR, CLR

ESQUIRE DEPOSITION SOLUTIONS



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Sigurd Meldal                                        April 23, 2012

CONFIDENTIAL - ATTORNEYS' EYES ONLY

62

1    Finch's observations, but rather, my own.  If you

2    feel that it is proper to list him as something being

3    reviewed, I -- I think I'll leave that up to -- to

4    the two of you, because, after all, I told you what I

5    did and what he did.  And whether that is properly

6    listed here or not, I don't mind either way.

7         Q.   Did Mr. Finch print out any Apple source

8    code for you to review?

9         A.   Yes, he did.  Well, let me -- he -- the

10   review, itself, was mostly on the computer.  So if I

11   told him to look for something, he said he had found

12   it, then he would tell me where he found it.  Then I

13   would look it up on the computer and evaluate it,

14   whether it was relevant or not, what relevance it

15   might have, and so on.  If it were relevant and

16   needed to be printed out, we tried to keep it from --

17   to one computer, to keep things straight.  After all,

18   we had to report to you what we had printed out, the

19   Bates numbers and so on.  And things could get

20   awfully confusing if we did that on all three

21   computers in the coding room.  So most of it was

22   printed out from Mr. Finch's computer and by

23   Mr. Finch, and -- at my direction, of course.

24        Q.   Did Mr. Finch print any source code for you

25   to review that you had not already reviewed on the



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Sigurd Meldal                                         April 23, 2012

CONFIDENTIAL - ATTORNEYS' EYES ONLY

63

1    source code machines?

2         A.   I don't think so.  I mean, again, we're

3    talking about a review that went across, as you know,

4    weeks.  So the routine was that I would look at what

5    was necessary, relevant, what have you, and then ask

6    him to print it out, if it were -- if it should be

7    printed out.  He may have preemptively thought that

8    something was so obviously relevant he printed it

9    out, or he may have understood my directions to be

10   such that -- that if I said find A, he found A and

11   printed it out.  All of those are possibles.  I

12   certainly did look at the printouts.  After all,

13   that's why we print them out, besides giving them

14   back to you.  But the principal review mechanism for

15   me was at the computer.

16        Q.   Do you currently have, in your possession,

17   any hard copies of Apple's source code?

18        A.   The routine was that when we printed it

19   out, we would report to your associates what was

20   printed out, and what Bates number were printed.

21   Then I would bring it home.  It was usually late at

22   night.  And then I would FedEx it to -- to New York.

23   As -- for safekeeping, I was instructed to -- to keep

24   a copy in case something went wrong with the FedEx.

25   So I have copies of some, I don't think all, of the



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Sigurd Meldal                                                April 23, 2012
CONFIDENTIAL – ATTORNEYS' EYES ONLY

                                                                        64
1    paper printouts in my possession in a safekeeping.

2         Q.   So you made photocopies of the printouts of

3    Apple's source code?

4         A.   Yes.

5         Q.   And you have those in your possession right

6    now?

7         A.   Well, I am here.

8         Q.   They're in your possession, other than in

9    this room?  But they are currently in your

10   possession?

11        A.   They are at my home office in Menlo Park.

12        Q.   And you said that they are maintained

13   safely.  How are they maintained?

14        A.   They are in a box in a locked room.

15        Q.   Do you have any electronic copies of

16   Apple's source code?

17        A.   I do not.

18        Q.   Have you ever received any electronic

19   copies of Apple's source code?

20        A.   I have not.

21        Q.   Dr. Meldal, can we go back to Exhibit 1A to

22   your deposition today, which is your initial

23   infringement report?

24        A.   I believe there's still a pending question.

25        Q.   From me?



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Sigurd Meldal                                        April 23, 2012
CONFIDENTIAL - ATTORNEYS' EYES ONLY

65

1       A.   Yup.

2       Q.   I don't believe so.

3       A.   The question of what in my background

4    enables me to have an opinion about --

5       Q.   Oh, I -- I appreciated your answer and then

6    wanted to focus on some specific questions.

7       A.   All right.

8       Q.   Thank you.  Could you please turn in your

9    initial infringement report, which we've marked as

10   Meldal Exhibit 1A, to Paragraph 30, 3-0.

11            (Witness complies.)

12      Q.   Are you there?

13      A.   In a moment.

14      Q.   Sure.

15      A.   The rings have been slightly mangled by the

16   transport.  Okay.  I'm there.

17      Q.   In Paragraph 3 --

18      A.   Thirty?

19      Q.   I'm sorry.  Yes.  Thirty.  You list several

20   Apple products.  These are the products that you

21   understand are accused of infringing one or more of

22   the six patents that you addressed in your report.

23   Is that right?

24            MR. SCHILOWITZ:  Object to the form.

25      A.   So in Paragraph 30, I list the Apple iPhone



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

Sigurd Meldal                                        April 23, 2012
CONFIDENTIAL - ATTORNEYS' EYES ONLY

242

1              C E R T I F I C A T E

2    COMMONWEALTH OF MASSACHUSETTS

3    SUFFOLK, SS.

4         I, Janet M. McHugh, a Registered Merit

5    Reporter and a Notary Public within and for the

6    Commonwealth of Massachusetts do hereby certify:

7         THAT SIGURD MELDAL, the witness whose

8    testimony is hereinbefore set forth, was duly sworn

9    by me and that such testimony is a true and accurate

10   record of my stenotype notes taken in the foregoing

11   matter, to the best of my knowledge, skill and

12   ability.

13        I further certify that I am not related to any

14   parties to this action by blood or marriage; and

15   that I am in no way interested in the outcome of

16   this matter.

17        IN WITNESS WHEREOF, I have hereunto set my

18   hand this 29th day of April, 2012.

19

20                    _____

                      JANET M. MCHUGH

21                    Notary Public

22

23   My Commission Expires:

24   July 11, 2014

25



Toll Free: 888.486.4044

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com