## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOBILEMEDIA IDEAS LLC, | : | |
| Plaintiff, | : | |
| v. | : | C. A. No. 10-258-SLR/MPT |
| APPLE INC., | : | |
| Defendant. | : | |

## **MEMORANDUM ORDER**

### **Procedural Background**

Presently before the court are discovery issues arising not only between the parties, but also involving a third-party. Consistent with the court's standard order dealing with discovery matters, the parties and Nokia Corporation ("Nokia") contacted the court to schedule a telephonic conference. Thereafter, Apple, Inc. ("Apple"), the moving party, filed its speaking motion against MobileMedia Ideas LLC ("MMI") and Nokia. MMI and Nokia timely filed their respective responses. A telephonic hearing occurred on June 7, 2012 during which all parties to the disputes presented argument. Certain issues were decided during the teleconference. Regarding the remaining matters, the parties supplemented their previous submissions and provided documents and affidavits addressing the common interest privilege.[1]

---

[1] During the teleconference, the parties advised some of the documents under seal were exhibits to an unrelated motion before Judge Robinson. Other documents evidencing the common interest privilege had not been previously produced. Those documents were provided for *in camera* review. In any event, any documents filed

MMI and Nokia provided their supplemental submissions on June 15, 2012. Apple provided its response on June 22, 2012. This is the court's decision regarding privilege under the common interest privilege and related issues.

During discovery, Apple served subpoenas on three separate Nokia entities: Nokia Inc. on February 9, 2011, Nokia Capital, Inc. on June 1, 2011, and Nokia, the entity involved in the present discovery dispute, on June 29, 2011.[2] Each Nokia entity timely responded to the subpoena raising objections based on various privileges, including the common interest privilege. Specifically, Nokia initially objected in July 2011 and provided additional objections based on attorney-client privilege on August 23, 2011. Fact discovery closed on October 31, 2011.[3] Expert discovery was to be completed by March 23, 2012. At the time of the discovery teleconference, claim construction and dispositive motion briefing was near completion.

**Factual Background**

MMI, a Delaware limited liability company, was formed by Nokia, Sony Corporation ("Sony") and another company, MPEG-LA ("MPEG") in January 2010. Before MMI's formation, in the beginning of 2009, Sony and Nokia discussed the formation of, and the potential patents to be transferred to an entity that would license and enforce those patents, including through litigation if necessary.[4] After an

---

under seal remain under seal for the purpose of the discovery issues addressed herein.
  [2] Nokia represented each subpoena contained eighty-one document requests and approximately ten to fifteen deposition topics. See D.I. 338 at 1.
  [3] Fact discovery originally was to close by September 1, 2011. By stipulation between the parties, it was extended to October 31, 2011, allowing for certain depositions to occur after the close of fact discovery, but before the deadline to depose any trial witnesses. See D.I. 17 & 135.
  [4] See D.I. 353 at ¶ 4; D.I. 354 at ¶ 4.

exploratory phase, in April 2009, Nokia and Sony executed a non-disclosure agreement to enable the sharing of confidential and privileged information.[5] Subsequently, MPEG became an additional participant.[6] Previously, Sony and MPEG had entered into a non-disclosure agreement. MPEG also executed a non-disclosure agreement with Nokia.[7] Nokia, Sony and MPEG further determined and agreed in April 2009, they had a common legal interest in venture formation issues which they memorialized in an agreement in October 2009.[8]

Sony and Nokia, as the patent holders and licensors, each retained counsel who provided legal analyses concerning patent infringement and validity and license contract interpretation. Through their counsel and counsel for MPEG, the analyses were shared to assess the legal merits of the patents under consideration to be contributed to the proposed legal enforcement entity, MMI. The exchange of information was made among Nokia, Sony and MPEG-LA in reliance on the non-disclosure agreements and on the assumption they shared a common legal interest.[9] In their discussions, these parties shared information regarding legal aspects of litigation strategy, as well as other legal information relating to venture formation, tax issues, competition law and licensing opportunities. Because they planned to form an entity to acquire, develop, administer, manage and possibly assert intellectual property, these entities also shared legal advice and analysis in that regard.[10] Accordingly, such information was only shared with the

---

[5] *See* D.I. 353 at ¶ 5; D.I. 354 at ¶ 5.
[6] *See* D.I. 353 at ¶ 6; D.I. 354 at ¶ 6.
[7] *Id.*
[8] *See* D.I. 353 at ¶ 7; D.I. 354 at ¶ 7.
[9] D.I. 353 at ¶¶ 2, 8; D.I. 354 at ¶¶ 2,8.
[10] D.I. 353 at ¶¶ 9-11; D.I. 354 at ¶¶ 9-11.

expectation the material would remain privileged and confidential.[11]

In forming MMI, Nokia, Sony and MPEG entered into various agreements memorializing their respective rights and obligations. Those agreements included the Formation Agreement, the Operating Agreement and two Patent Purchase Agreements (between MMI and Nokia Capital and MMI and SCA IPLA).[12] Through these agreements Nokia Capital, Inc. (an indirect wholly owned subsidiary of Nokia) and SCA IPLA (an indirect wholly-owned subsidiary of Sony) contributed intellectual property[13] in exchange for each receiving a 24.9% equity interest in MMI. MPEG, through its wholly owned subsidiary, Tagivan, agreed to provide services to MMI pursuant to a service agreement, to enforce the patents. In return, Tagivan's interest in MMI is 50%. As a result, MMI owns a portfolio of patents from Nokia Capital, Inc. and SCA IPLA Holdings Inc. relating to mobile devices, such as cellular phones.[14]

According to the Formation Agreement and the Operating Agreement, the essential purpose of MMI is

> to acquire, develop, administer and manage Intellectual Property rights relating to inventions which reflect certain features of, and application used by, mobile and other devices and to collect income in respect to such inventions reflected in such Intellectual property rights and its use in end

---

[11] D.I. 353 at ¶ 12; D.I. 354 at ¶ 12.
[12] D.I. 358, Ex. A-D. The date of the Formation Agreement, the Operating Agreement and the two Patent Purchase Agreements is January 10, 2010. The privileged materials presently sought were in possession of Nokia and Sony, parent corporations of Nokia Capital and SCA IPLA, and were subsequently provided to Nokia Capital and SCA IPLA. Apple does not contend this original transfer operated as a waiver of privilege.
[13] Prior to any transfer of intellection property to MMI, SCA IPLA obtained the patents through assignments from Sony, while Nokia Capital acquired its patents from Nokia.
[14] *See* D.I. 358 at ¶ 2.

user devices.[15]

To enable the enforcement of the patent rights and for exploitation of the patents and consistent with the previously noted Agreements, Nokia Capital and SCA IPLA transferred the prosecution history files to MMI.[16] According to MMI, no privileged documents were exchanged or provided before the close of the transaction. Moreover, these documents were not provided for "commercial purposes such as to evaluate the value of the respective portfolios or induce a party to enter into the agreement."[17]

**Parties' Positions**

    **Apple**

Although Apple originally argued the common legal interest privilege did not apply, it now agrees "MMI and Nokia demonstrated that Sony and Nokia are not mere separate investors or shareholders . . . [but instead] acted together to develop the litigation strategy . . . implemented after MMI's formation, and have continued to cooperate after formation to further that legal strategy, and assert their patents through MMI."[18] In light of the declarations by Nokia and MMI, Apple confirmed it "no longer contests that Nokia shares a common legal interest with Sony before formation, or that MMI shares a common legal interest with Sony and Nokia after formation in at least some communications."[19] What Apple does dispute is whether Nokia and MMI have

---

[15] D.I. 358, Ex. A at first Whereas clause; Ex. B. at first Whereas clause.
[16] D.I. 356 at ¶ 6; D.I. 357 at ¶¶ 5, 7. *See also* D.I. 358, Exs. C & D at ¶ 4.1 (this paragraph of each of the Patent Purchase Agreements provides for Nokia Capital and SCA IPLA respectively to deliver to MMI the prosecution history files).
[17] D.I. 355 at 1.
[18] D.I. 370 at 1.
[19] *Id.*

shown that the common interest privilege applied to each of the communications at issue, that is, whether the purpose for sharing the documents was for furthering a joint legal strategy. Relying on *King Drug Co of Florence, Inc. v. Cephalon, Inc.*,[20] it reasons that court's analysis applies "where there is a joint legal strategy, but the communications at issue were not 'designed to further that effort.'"[21]

Therefore, Apple demands production of certain documents exchanged before MMI's formation, specifically materials that discuss Sony's and Nokia's patent coverage to develop a "valuable cluster" of patents or confirming value to licensees which purportedly have been improperly withheld.[22] Apple does not seek those communications created for the purpose of developing a joint legal strategy.

As to the documents sought, Apple maintains Nokia failed to demonstrate the documents were exchanged to further a joint legal strategy. Specifically, Apple argues Nokia has not established a document-by-document analysis that an underlying

---

[20] 2011 WL 2623306, at *4 (E.D. Pa. July 5, 2011).
[21] *Id.*
[22] Apple's motion included a production request of Sony documents through MMI under an *Afros v. Krauss-Maffei*, 113 F.R.D. 127 (D. Del. 1986) argument. Because Apple advised during the teleconference that Sony and Apple were still conferring on document production; Sony was absent from that discovery conference; and insufficient evidence of control by MMI over the Sony documents, the court denied Apple's request during the hearing. That decision does not address whether Apple may obtain such documents directly from Sony, by agreement or through court order.
    The documents sought by Apple regarding patents selected to become part of this patent cluster concerned descriptions by Nokia and Sony to each other regarding patent coverage for their respective patents. *See* Trans. dated June 7, 2012 (erroneously dated May 12, 2012) ("Trans.") at 11:4-13:3. *See also* D.I. 337, Ex. 4; D.I. 370.
    Originally, Apple also sought drafts of the purchase agreements and formation agreements which were denied based on relevance. *See* Trans. at 41:18-42:20.

privilege exists.[23] It further argues Nokia failed to demonstrate the disclosures were made only for "'securing, advancing, or supplying legal representation.'"[24] Apple emphasizes the present record shows the communications were made for evaluating the business value of the portfolio, "regardless of any legal strategy."[25]

Apple maintains there was no delay on its part to obtain the documents sought because until the privilege logs were produced in December,[26] it was unaware of the purportedly broad categories of documents for which Nokia was claiming privilege. Thereafter, Apple began meeting and conferring with MMI, Nokia and Sony to understand the bases for their claims of privilege.[27]

Apple requests Nokia produce all documents as previously noted herein. It also seeks an order requiring Nokia to produce a log of all communications that include non-attorneys.

Regarding MMI, Apple disputes whether MMI has established the transfer of the patent prosecution files and invention disclosure forms ("IDFs") occurred to further a joint legal strategy. It criticizes MMI's evidence as only vaguely suggesting these documents were provided to assist in its exploitation of the patents. Apple maintains

---

[23] In this regard, Apple asserts additional concerns because the affidavits mention "other employees," assumed to be non-attorneys sharing in the communications.
[24] D.I. 370 at 3.
[25] *Id.*
[26] As noted previously, MMI maintains its privilege log was produced in November 2011.
[27] *See* D.I. 337 n.4 listing the dates when correspondence or conferences occurred to address the present issues. The footnote indicates such discussions began with MMI on December 15, 2011, while discussions with Nokia began on January 17, 2012.

these documents were delivered merely as part of the purported transfer of patents by referencing sections in the patent purchase agreements which allow for disclosure of other documents to assist in MMI's enforcement of the transferred patents. Therefore, Apple demands all patent prosecution files and IDFs be produced.

**MMI/Nokia**

Although MMI and Nokia provided separate submissions, their interests in the present discovery matter are related.

Contrary to Apple's arguments, Nokia contends Apple was aware of its position as early as July 2011, when Nokia formally responded to the subpoena, specifically objecting to the requested documents based on attorney-client privilege and the common interest privilege.[28] Nokia maintains it collected and produced relevant documents, such as, agreements regarding any patent-in-suit invented by a Nokia inventor and offered the inventors for deposition. Despite that five of the deposition topics in Apple's subpoena related to the formation of MMI and Nokia's involvement with MMI and its knowledge of Nokia's objections, Apple never pursued any depositions of Nokia personnel, nor moved to compel production of the documents until six months after the cut-off date for fact discovery.[29] Nokia further points out that after the discovery cutoff date, it cooperated with Apple by providing additional information,

---

[28] During the June 5 teleconference, Nokia cited its response to request 19 which asked for all documents and things relating to its involvement in the formation of MMI. Nokia's objection claimed such documents were protected by attorney-client privilege, work-product doctrine and the common interest privilege.

[29] Nokia also contends that despite the deficiencies in Apple's subpoena (attempting to serve a Finnish company in Finland through a subpoena issued from this court), it cooperated and produced numerous documents.

including communications between investors prior to when the common interest arose and non-confidential communications after the common interest existed that were not subject to privilege. It maintains, as a non-party, it should not be subject to further discovery for Apple's failure to raise its present arguments while discovery was opened.

Nokia also disputes whether the documents requested are relevant. It argues Nokia's patent coverage, which would include patents not at issue, is obviously irrelevant.

MMI owns a portfolio of patents from Nokia and SCA IPLA as a result of several agreements memorializing these entities respective rights and obligations. MMI represents no privileged documents were exchanged before the transfer of ownership of the patent portfolio. It further contends no documents were provided as part of this process for commercial purposes, such as to evaluate the respective portfolios or induce a party to enter into any agreement.[30] As a result, only the post-closing transferred files for use by MMI for enforcement of the patents are at issue. MMI claims these documents are "'files, documents and other materials that are in the possession of the Prosecution Counsel, and relating to the prosecution, maintenance, filing, issuance and/or [sic] of the Assigned Patents,'"[31] and therefore, are inherently legal. At the time of the agreements and the transfer of such information, both Nokia and SCA IPLA anticipated litigation, and each obtained the legal right to distributions based on royalties and damages through MMI's successful enforcement of the patents.[32] MMI

---

[30] D.I. 356 at ¶ 6; D.I. 358 at ¶ 11.
[31] D.I. 358, Exs. C & D.
[32] D.I. 356 at ¶ 6; D.I. 357 at ¶ 5; D.I. 358, Ex. B § 8.2.

claims both Nokia and SCA IPLA made disclosures as part of their ongoing legal obligations, and maintained reversionary ownership rights under certain circumstances, evidencing their continued legal interest in the validity and enforceability of the patents.[33] As a result, MMI argues the documents at issue clearly are protected under the common interest doctrine.

MMI further asserts what Apple demands, without reference to its privilege log or any specific document, is an open ended request for production of all the patent prosecution files and IDFs in contradiction of the facts supporting that the transfer and disclosure to MMI of such information was consistent with the common interest doctrine.

MMI also claims Apple's letter motion in June 2012 for such discovery, after fact discovery closed on October 31, 2011, after the production of its privilege log in November 2011, after completion of expert discovery, and while claim construction and summary judgment briefing was ongoing, is untimely and too late.[34]

**Standard and Applicable Law**

### Community of Interest or Common Interest Privilege

The community of interest privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others."[35] The purpose is to protect communications between different individuals and

---

[33] D.I. 356 at ¶¶ 8-10; D.I. 357 at ¶¶ 7-9; D.I. 358, Ex. A § 4.03.
[34] Since this discovery matter was initially raised and briefed, claim construction and summary judgment briefing has been completed and the *Markman* hearing and oral argument occurred in late July 2012.
[35] *In re Teleglobe Communications Corp.*, 493 F.3d 345, 364 (3d Cir. 2007).

entities and their respective counsel when the communications are "'part of an on-going and joint effort to set up a common defense strategy.'"[36] Thus, the members of the community of interest "must share at least a substantially similar legal interest."[37] The burden rests on the party asserting the privilege to establish its existence by showing "'(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived.'"[38] Moreover, to qualify for and to maintain the privilege, the communications must be shared between counsel, and not just between the clients.[39] Unlike the joint client privilege where the same counsel represents more than one client, the legal interests between or among the clients need not be identical, and the degree to which the commonality of interests converge is relaxed.[40] Further, the fact "there may be an overlap of commercial and legal interests . . . does not negate the effect of the legal interests in establishing a community of interest."[41] The standard is substantially similar legal interest, that is not solely commercial.[42] Thus, the privilege may apply although the communications include discussions of various business matters as long as they are "infused with legal concerns."[43] Actual litigation or a ongoing lawsuit is not required, as

---

[36] *In the Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986), *quoting Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1985).
[37] *Teleglobe Communications*, 493 F.3d at 365.
[38] *In the Matter of Bevill*, 805 F.2d at 126, citing *In re Grand Jury Subpoena Duces Tecum dated November 16, 1974*, 406 F. Supp. 381 (S.D.N.Y. 1975); *see also Grand Jury Empanelled February 14, 1978*, 608 F.2d 469, 474 (3d. Cir. 1979).
[39] *Teleglobe Communications*, 493 F.3d at 365.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *SE. Pa. Transp. Auth. v. Caremarkpcs Health, L.P.,* 254 F.R.D. 253, 258 (E.D. Pa. 2008).

long as it is anticipated.[44]

**Discussion**

Apple does not dispute the common interest doctrine applies. It, however, maintains for the documents sought, neither MMI or Nokia have provide sufficient evidence that they fall within the privilege. In sum, it seeks from Nokia "documents that discuss Sony's or Nokia's patent coverage or the patents in depth for the purpose of creating a 'valuable cluster' of patents or confirming 'value' to licensees" relying on paragraphs 1 through 3 of exhibit 4 to its original submission, an email which discusses a possible agenda for a meeting between Nokia and Sony during the initial stages to determine the patents to transfer to MMI.[45] It seeks from MMI, all patent prosecution files and IDFs transferred based on the purported absence of proof that this exchange was for the purpose of a joint legal strategy.

**Transfer of Patent Prosecution Documents and IDFs to MMI**

Apple's argument that the transfer of the patent prosecution files and IDFs to MMI were not to further a joint legal strategy is refuted by the Formation and Operating Agreements which provide the central purpose of MMI was "to acquire, develop, administer and manage [i]ntellectual [p]roperty rights" related to the inventions obtained from the Nokia and Sony entities. For contributing certain intellectual property, those entities received equity interests MMI and will receive distributions of any future royalties and damages collected by MMI. As shareholders, they continue to have a direct interest in MMI's business. Pursuant to the Operating Agreement, the governing

---

[44] *Teleglobe Communications*, 493 F.3d at 365.
[45] *See* D.I. 337, Ex. 4.

Board of Representatives of MMI are comprised of seven individuals from the Sony, Nokia and MPEG entities, and have all powers necessary to carry out the purposes and business of MMI, that is, the enforcement of the patents. MMI cannot re-assign the patents-in-suit without full Board approval, that is, the consent of the Nokia, Sony and MPEG entities. In light of their Board seats, these corporations have essentially veto power over such sales. Further, since the formation of MMI, Nokia, Sony and their respective wholly owned subsidiaries have provided assistance and cooperation to MMI's outside attorneys, including details related to the prosecution history of the patents-in-suit. Their obligation in this regard is evidenced in the Patent Purchase Agreements under §§ 4.5-4.6 requiring them in any action involving infringement or invalidity of the assigned patents to provide "reasonable access to [their inventor] employees" for "[a] litigated patent" as well as relevant documents, including those related to the "conception and reduction to practice." They are further obligated to "provide reasonable assistance by [their] personnel in connection with patent prosecution or other necessary activities of [MMI]." Such language strongly indicates a future cooperation with MMI in its core purpose, the successful enforcement of the transferred patents. Such future cooperation, which may involve providing additional materials, does not imply that the original transfer of the patent prosecution files and the IDFs was merely to effectuate transfer of the patents.

     Further, at the time the documents in question were provided to MMI, the Nokia and Sony entities had reversionary rights allowing ownership of the patents to revert

back under certain conditions.[46] Therefore, at the time of the transfer, the Nokia and Sony entities had a direct continued legal interest in the validity and enforceability of the patents.

The language, provisions and tenor of the Formation and Operating Agreements and the two Purchase Agreements clearly indicate at the time of their execution, the Nokia and Sony entities anticipated litigation for enforcement of the transferred patents.

As evidenced by the various agreements, the purpose of the transfer of the patent prosecution files and the IDFs were part of the joint legal strategy involving the Nokia and Sony entities that began before MMI's formation and continued thereafter. MMI and the Nokia and Sony entities have operated with the expectation that any shared privilege communications would be confidential and protected from disclosure. The Nokia and Sony entities, as licensees, clearly share a common legal interest in MMI prevailing in this action. That as a result of the Formation Agreement, MMI is now the owner of the patents does not eviscerate or prevent the sharing of a common legal interest with Nokia and Sony.[47] Therefore, Apple's request for the patent prosecution files and IDFs is denied.

**Documents Sought from Nokia**

In support of its demand, Apple primarily relies on exhibit 4 attached to its original

---

[46] The reversionary interest under § 4.03 of the Formation Agreement was eliminated in early 2012. See D.I. 240 at 3 n.3.

[47] Apple acknowledges the development of a litigation strategy between Sony and Nokia predated MMI's formation, and was implemented after MMI's formation, and specifically notes such cooperation continued thereafter with each other and MMI "to further that legal strategy" for enforcement of the patents. See D.I. 370 at 1.

submission.[48]  In fact, its very general, non-specific and broad description of the communications sought is a paraphrase of items 1 through 3 of that email.  Its paraphrase, however, is not an accurate description of the content of the email.  Absent the fact that the email merely contains suggestions of an agenda for a future meeting, the topics proposed were an in depth legal analysis and presentation of that analysis by Sony and Nokia regarding coverage under the patents being considered, including mapping the extent of each patent's coverage to help determine its value.  Other suggested topics in the email include the type of joint venture formation and the key terms of a joint venture agreement.  Nothing in the email suggests the proposed topics were solely related to commercial purposes.  As evidenced from the affidavits submitted, any analysis shared allowed each party through their attorneys to assess the legal merits, including validity, of the patents to be contributed to the enforcement entity, MMI.  Although part of that analysis may have considered the value of those patents in relation to the extent of their coverage, as noted in *Teleglobe Communications,* the mere overlap of commercial and legal interests "does not negate the effect of the legal interests in establishing a community of interest."[49]  Substantial, not sole, legal interest is required.  As evidenced by the declarations submitted and discussed previously herein, the transferred information was not solely or primarily for commercial purposes.  The exchanges by Sony, Nokia and MPEG were made under non-disclosure agreements with the understanding the parties shared a common legal interest.  Those non-disclosure agreements required the parties to keep all information received strictly

---

[48] D.I. 337.
[49] 493 F.3d at 365.

confidential and not be disclosed to third parties. A common legal interest agreement, having an effective date of April 1, 2009, was also executed. It "ensure[d] . . . such sharing, exchanges and disclosures of Privileged Information among the parties . . . do not (i) impair or in any way diminish the confidentiality of such information, and (ii) do not constitute a waiver of any privilege . . . ."[50] The agreement acknowledged litigation was contemplated.[51] Information shared involved various legal aspects of legal strategy, venture formation, tax matters, competition law, licensing opportunities and other similar issues. Thus, all shared privilege material occurred with the expectation the communications would be kept confidential and protected from disclosure.[52]

Unlike in *Leader Technologies v. Facebook*, Apple does not dispute that a common legal interest exists.[53] Further, when comparing the affidavits relied upon by Judge Stark in the *Xerox* matter with the declarations submitted in the instant matter, they are similar in content for establishing a common interest privilege and similarly demonstrate that the relationship of Sony, Nokia and MPEG was "sufficiently imbued with common legal interests" plainly related to future litigation.[54] Like IPValue in *Xerox*, the Sony, Nokia and MPEG entities receive a percentage of the recovery from any successful enforcement by MMI of the transferred patents confirming their common interest in MMI prevailing in the present litigation.[55]

Apple's argument that Sony and Nokia waited six months to execute a common

---

[50] D.I. 352, Ex. 1 at 2.
[51] *Id.* at 1.
[52] *Xerox Corp. v. Google, Inc.*, 801 F. Supp. 2d 293, 304 (D. Del. 2011).
[53] 719 F. Supp. 2d 373, 376 (D. Del. 2010).
[54] 801 F. Supp. 2d at 303.
[55] *Id.* at 304.

interest agreement also fails and ignores when the exchanges occurred, non-disclosure agreements had been executed. As noted in *Rembrandt Technolgies v. Harris Corp.*, "[a] confidentiality agreement underlying a common interest claim need not be in writing; an 'oral agreement . . . later memorialized in writing' . . . can provide the platform upon which the common interest can rest."[56] Further, in *Xerox*, no written common interest agreement was executed between the parties:[57] rather because the communications involved parties and their attorneys allied in a common legal cause, the protection existed because the exchange of privileged information would not have occurred except to accomplish that objective.[58]

Finally, despite Apple's protestations to the contrary, the request for further discovery comes too late. Although Apple detailed the various "meet and confers" since December 2011, that process began very late in the litigation, after the close of discovery. The issue of Nokia's production has been brewing as early as July 2011, when objections to Apple's discovery were lodged.[59] As noted by Judge Robinson in *Stambler v. RSA Security*, "[i]n every trial there comes a time when discovery must be closed for the issues to be resolved through summary judgment or trial. In the case at bar, that time has long since passed."[60]

Therefore, Apple's motion for further discovery from Nokia is denied.

---

[56] C.A. No. 07C-09-059-JRS, 2009 WL 402332, at *7 (Del. Super. Feb. 12, 2009), quoting *American Legacy Found. v. Lorrilard Tobacco Co.*, C.A. No. 19406-VC Lamb, 2004 WL 2521289, at *3 (Del. Chan. Nov. 3, 2004).
[57] *Xerox Corp. v. Google, Inc.*, C.A. No. 10-136-LPS, D.I. 216 n.1.
[58] *Xerox*, 801 F. Supp. 2d at 304.
[59] Apple does not refute the objections were filed; it argues it did not fully understand the reasoning for them.
[60] 212 F.R.D. 470, 472 (D. Del. 2003).

Consistent with the reasoning herein, IT IS ORDERED that Apple's motion for discovery (D.I. 310) from MMI and Nokia is DENIED.


Date: September 10, 2012              /s/ Mary Pat Thynge
                                      UNITED STATES MAGISTRATE JUDGE