# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

RODGER D. SMITH II
(302) 351-9205
(302) 498-6209 FAX
rsmith@mnat.com

September 20, 2012

**BY ELECTRONIC FILING**

The Honorable Mary Pat Thynge
United States District Court
844 N. King Street
Wilmington, DE 19801

Re: *MobileMedia Ideas LLC v. Apple Inc.,* C.A. No. 10-258 (SLR) (MPT)

Dear Judge Thynge:

We submit this letter on behalf of plaintiff MobileMedia Ideas LLC ("MobileMedia") in advance of the discovery conference set for September 24, 2012 (D.I. 448).

MobileMedia seeks an order requiring Apple to produce a narrow category of documents (those related to Apple's copying, reverse engineering and value analysis of *Sony's* and *Nokia's* products during the development of the iPhone). Although requested during discovery, no such documents were produced and their *existence* surfaced for the first time in a trial brief filed in the *Apple v. Samsung* litigation, C.A. No. 5:11-cv-01846-LHK (N.D. Cal.), on July 25, 2012. Unlike the parties' last discovery dispute before Your Honor – which involved an issue that "ha[d] been brewing as early as July 2011" (D.I. 447 at 17) – Apple did not disclose to MobileMedia even the possibility that these documents existed and MobileMedia requested them from Apple within a week after it first became aware of their existence and non-disclosure. *See* Ex. A, Daniels Letter to Simmons, July 31, 2012.

The trial brief that Samsung filed in the *Apple v. Samsung* case disclosed publicly what Apple had not told MobileMedia during discovery in this case – that Apple, during its research and development of the iPhone, engaged in systematic "tear downs" of competitor products and maintained "competitive tracker" information on those products (which "keeps close tabs on competing smartphones and tablets, compiling data on competitors processors, memory, display screen and camera specifications, wireless capabilities, and battery life"), presumably including leading competitors Sony's and Nokia's products which may include the features patented in this case. Samsung's brief disclosed many such examples. *See, e.g.*, Exs. B-F, *Apple v. Samsung*, Dkt. Nos. 1322, 1322-11, 1322-13, 1322-14 & 1322-15. Once MobileMedia learned of the existence of these documents, it immediately requested that Apple collect and produce them, to

The Honorable Mary Pat Thynge
September 20, 2012
Page 2

the extent they related to Sony or Nokia products. *See* Ex. G. Apple refused, not explaining the non-disclosure, but simply saying that the requests were "irrelevant" and "untimely."

       1.    <u>MobileMedia's Requests Are Timely</u>. As stated above, MobileMedia first learned of the existence of the documents on or about July 25, 2012, and then promptly requested them from Apple. These documents fall squarely within a number of MobileMedia document requests, including at least Request Nos. 2, 3, 5, 10, 34 and 36. *See* Ex. H, MobileMedia's First Set of Requests for the Production of Documents and Things, Oct. 25, 2010. For example, Request 34 sought:

> All documents concerning cellular telephone (or smartphone), audio management, audio play back, wireless image transfer, image display, text input or geo-location or mapping technology developed by Sony, Nokia or Audio Highway or used in any Sony, Nokia or Audio Highway product, including all documents relating to *<u>the use of such technology in any Apple product; copying, reverse engineering, testing or analysis of such technology or such products; or any internal or external communications relating to such technology or products</u>.*

*Id.* at pg. 13 (emphasis added). When Apple objected broadly to this request, MobileMedia reiterated the importance of such documents to its case, noting that the request would "capture relevant documents concerning Apple's awareness and/or use of technology developed by the original assignees of the patents in suit." *See* Ex. I, Brebner Letter to Simmons, Feb. 9, 2011. MobileMedia never withdrew these requests for documents.[1]

       Apple was obligated to supplement its discovery responses pursuant to Rule 26(e), and that obligation did not end with the close of fact discovery. *See* 1993 Advisory Comm. Notes ("The obligation to supplement disclosure and discovery responses applies whenever a party learns that its prior disclosure or responses are in some material respect incomplete or incorrect."). At the latest, once Samsung publicly disclosed the existence of these documents and MobileMedia asked for their production, Apple was obligated to produce them.

       2.    <u>The Requested Documents Are Relevant</u>. The requested documents are obviously relevant. First, they go to secondary considerations of non-obviousness, including copying, praise by others, and commercial success of the claimed invention, which are central to questions of validity. *See Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1344 (Fed. Cir. 2011) ("[E]vidence of secondary considerations *may often be the most probative and cogent evidence* in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not.") (citations and internal quotations omitted) (emphasis added). Apple's tear-downs of such phones are clearly relevant to an understanding of how Apple may have utilized Sony and/or Nokia inventions to develop the product features accused in this litigation. Further, several lines of Sony and Nokia phones are among the phones that Apple likely would

---

[1]     The requested documents are also responsive to Request 36, which seeks all documents referenced in Apple's Initial Disclosures, including "documents related to the design, operation, and development of Apple's accused products." Ex. J, Apple Initial Disclosures, Oct. 8, 2012, at 8. Apple agreed to produce responsive documents subject only to its General Objections. *See* Ex. K, Apple's Responses and Objections to Plaintiff's First Request for the Production of Documents and Things, Dec. 15, 2010.

The Honorable Mary Pat Thynge
September 20, 2012
Page 3

have considered when making the "Sony" phone mock-ups that Samsung disclosed.

Second, beyond their relevance to Apple's invalidity allegations, the documents sought are relevant to rebutting the design and development story that Apple will likely present at trial. Apple should not be permitted to tell a misleading and incomplete story of its development of the accused products, having failed to produce documents that are clearly relevant and perhaps contradictory.

3.    Any Burden On Apple Is Minimal.  At no time has Apple claimed that the work needed to locate and produce the requested documents would be burdensome.  Indeed, far from reopening the door to voluminous fact discovery, MobileMedia requests only a closely-tailored search to identify and produce one category of documents – the same types of documents Apple already provided to Samsung.  MobileMedia has also offered to work with Apple to make this supplemental production more manageable, including crafting searches limited to a particular timeframe.  *See, e.g.*, Ex. G, Daniels email to Simmons, Aug. 7, 2012; Ex. G, Daniels email to Simmons, Aug. 10, 2012.  MobileMedia's proposals have repeatedly been rejected.  *See id.*

Instead, Apple argues that MobileMedia should be precluded from seeking the documents because the parties had "negotiated" search terms and custodians for Apple's original production. This argument is unpersuasive.  First, the search terms and custodians were never meant to be the exclusive and sole universe of documents to be produced in this case, nor was there any agreement or Court Order that this electronic search would preempt all of Apple's other discovery obligations in this case, including Apple's Rule 26(e) obligation to supplement its production should it learn that its production was incomplete.  Indeed, since the time of the search term agreement, Apple has produced many, many documents outside the scope of those searches, including after the close of fact discovery.  *See, e.g.*, 205APPLE5715359-369 (produced June 22, 2012); 205APPLE-PA-0030293-300 (produced May 7, 2012); 205APPLE-PA-0030282-292 (produced Feb. 3, 2012).

Second, although the search terms did not result in the production of the requested documents, it would be profoundly unfair to reward Apple for negotiating terms it knew could exclude relevant evidence.  If MobileMedia had known about these types of documents, as Apple surely did, MobileMedia would have pursued them.  This Court encourages the parties to reach electronic discovery protocols.  But it is improper, in order to reduce the cost of electronic discovery, for a party to "negotiate" terms that exclude highly relevant evidence, and then use those terms as a shield for refusing to identify relevant documents when they become known.

For all of these reasons, MobileMedia requests that Apple be ordered to produce on or before October 15, 2012:

(1)    any "tear downs" or similar analysis of Sony or Nokia products; and

(2)    any "competitive tracker" information regarding Sony or Nokia products.

If the Court decides that additional discovery is inappropriate, MobileMedia intends to seek to preclude Apple from presenting evidence at trial concerning its design and development processes.  *See, e.g.*, Fed. R. Civ. P. 37(c) ("If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … In addition to or instead of this sanction, the court, on motion … (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions.").

The Honorable Mary Pat Thynge
September 20, 2012
Page 4

Respectfully,

/s/ Rodger D. Smith II

Rodger D. Smith II (#3778)

Encls.

cc:     Clerk of Court (via e-filing)
        Counsel of Record (via e-mail)

6454929