IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOBILEMEDIA IDEAS, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>APPLE INC.,<br><br>   Defendant. | Civil Action No. 10-258-SLR-MPT<br><br><br>REDACTED VERSION |

**APPLE'S RESPONSE TO MOBILEMEDIA'S OBJECTIONS TO THE
OCTOBER 31, 2012 REPORT AND RECOMMENDATION
GRANTING ATTORNEYS' FEES TO APPLE**

Defendant Apple Inc. ("Apple"), by its attorneys and pursuant to Federal Rule of Civil Procedure 72, respectfully submits its Response to Plaintiff MobileMedia Ideas, LLC ("MobileMedia's") Objections to Magistrate Judge Mary Pat Thynge's April 11, 2012 Report and Recommendation granting attorneys' fees to Apple for MobileMedia's violation of the Protective Order in this case.

## INTRODUCTION

After multiple rounds of briefing, oral argument, a careful review of billing records, and a detailed Report and Recommendation, Magistrate Judge Thynge found that MobileMedia had violated the Protective Order in this action by printing out blocks of Apple's source code for off-site review. Magistrate Judge Thynge concluded that MobileMedia was not substantially justified in its breach of the Protective Order,[1] and she ordered MobileMedia to pay Apple a sanction of $13,862.08 in attorneys' fees. *See* D.I. 457 at 7.

---

[1] Magistrate Thynge described MobileMedia's reading of the Protective Order as "dizzying." D.I. 457 at 4.

1

In objecting to Magistrate Judge Thynge's conclusions, MobileMedia distorts both the law and the record. MobileMedia conflates Rule 37's standard for attorneys' fees with the standard for awarding attorneys' fees under the court's inherent power, wrongly suggesting that the requirements of *both* standards must be satisfied. MobileMedia argues that Magistrate Judge Thynge erred in finding MobileMedia's violation of the Protective Order was not "substantially justified," incorrectly asserting that the "sole basis" for the Magistrate Judge's order was MobileMedia's inconsistent interpretations of the Protective Order. The Magistrate Judge correctly found MobileMedia's violation was not substantially justified: not only did MobileMedia offer inconsistent interpretations, it also failed to proffer a reasonable interpretation wherein it did not violate the Protective Order. Further, because MobileMedia continued to violate the Protective Order for months after Apple brought the violation to its attention, the facts support a finding of bad faith or willfulness. Finally, MobileMedia also argues that its violation of the Protective Order does not justify the award because there was no "unauthorized disclosure," asserting that because Apple cannot prove its source code has fallen into the wrong hands, Apple should not receive an award of attorneys' fees. The Magistrate Judge correctly rejected this "no harm, no foul" argument. Further, Apple *has* been harmed— both through the printing and dissemination of its source code and through its fees and costs incurred in bringing this corrective motion. For these reasons, the Court should overrule MobileMedia's objections and adopt the Magistrate Judge's Report and Recommendation.

## FACTS

On May 16, 2011, the Court signed a Protective Order Regarding the Disclosure and Use of Discovery Materials ("Protective Order") negotiated by the parties. D.I. 53. In recognition of the extremely sensitive nature of Apple's source code, the Protective Order included several provisions restricting MobileMedia's review of and use of Apple's source code. *Id.* § 11(a)-(c).

It required Apple to make source code available to MobileMedia's outside counsel and experts designated under the Protective Order "in a secure room on a secured computer without Internet access or network access to other computers." *Id.* § 11(c)(i). It limited MobileMedia's ability to copy source code to only "when reasonably necessary to prepare court filings or pleadings or other papers," and it placed page limits on the amount of source code that could be copied. *Id.* § 11(c)(iv). And, key to this dispute, the Protective Order specifically provided: "The Receiving Party shall not print Source Code to review blocks of Source Code elsewhere in the first instance, *ie.*, as an alternative to reviewing that Source Code electronically on the Source Code Computer." *Id.* (the Protective Order's "Review" requirement).

Soon thereafter, MobileMedia and its designated experts began reviewing Apple's source code on Apple's secure source code computer. On November 23, 2011, after MobileMedia's experts printed 360 pages of source code on a single day, Apple objected to the amount of source code printed, citing the Review requirement of the Protective Order. D.I. 428, Ex. 1 at 2-3. MobileMedia responded a week later, stating that it was not violating the Review requirement: "[G]iven the extensive time the experts have spent at your offices [the print-outs] clearly were not printed 'to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code Computer.'" *Id.* On these assurances, Apple did not seek judicial intervention and permitted MobileMedia and its experts access to source code on more than *sixty occasions*. D.I. 432 at 2.

At his deposition, one of MobileMedia's experts, Dr. Timothy Williams, admitted that a non-testifying consultant retained by MobileMedia, Patrick Finch, printed Apple's source code and mailed it to MobileMedia's counsel's New York offices for Dr. Williams' review. D.I. 428, Ex. 2 at 26:19-28:3; 18:10-19:5; 19:10-16; 20:18-24; 21:12-23; 49-13-20. Describing him as "a resource for me to use in terms of analyzing code," Dr. Williams testified that Mr. Finch

identified and printed source code based on high-level, general descriptions of functionality provided by Dr. Williams (*e.g.,* "processes that involved synchronization on the various operating systems"). *E.g., id.,* Ex. 2 at 18:8-19:16; 20:18-24; 21:12-23; 26:19-28:3; 49:13-20. Dr. Williams did not review the source code on the computers himself because "it was more efficient for Mr. Finch to look in general and find pieces of code that he thought might represent what I was looking for than for me to review that and approve or disapprove." *Id.* at 49:13-20.

On July 25, 2012, shortly after Dr. Williams's deposition, Apple brought its Rule 37 motion alleging multiple violations by MobileMedia of the Protective Order, including Dr. Williams' violation of the Review requirement. D.I. 428. Apple sought an order limiting Dr. Williams's testimony at trial and for attorneys' fees incurred in bringing the motion. MobileMedia responded that it had not violated the Protective Order, claiming that the Review requirement "does not require . . . that each individual expert must review the source code electronically in the first instance." D.I. 432 at 2.

On August 1, 2012, the Magistrate Judge held a thirty-eight-minute telephone hearing on Apple's motion. D.I. 434. She found the that MobileMedia violated the Review requirement because "it wasn't actually Dr. Williams going through the source code in the first instance . . . he was actually having somebody else do it for him and then reviewing it elsewhere." *Id.* at 26:19-24. She held: "the Court recognizes the value of source code and the importance of it for an entity such as Apple—that the intent was just to limit how many fingers got into this pie." *Id.* at 27:1-4. She noted: "[F]rankly, source code for Apple is the end all, be all. It's the crown jewel in many respects. It's how it survives based upon what its company is based on." *Id.* at 27:8-10.

Noting that she didn't "look at this as a no harm, no [foul] situation," Magistrate Judge Thynge discussed sanction options. *Id.* at 26:6-7. The Magistrate Judge declined Apple's

4

request to preclude Williams from testifying, finding this issue more appropriate to be raised with this Court on a motion in *limine*. *Id.* at 33:24-25. However, she ordered MobileMedia's experts to provide all copies of Apple's source code in their possession to MobileMedia's counsel to limit access to the source code and make MobileMedia's counsel responsible for future violations, and she allowed further briefing on the issue of attorneys' fees and the amount of fees to be awarded. *Id.* at 34:18-35:10.

Both parties submitted supplemental letter briefs with respect to sanctions. D.I. 336, 440. Apple reiterated its position that fees were justified under Rule 37 and the Court's inherent authority. D.I. 336 at 1. Apple argued that MobileMedia's conduct even rose to the level of willful violation of the Protective Order, because MobileMedia continued to use Mr. Finch to print blocks of source code for off-site review by Dr. Williams after assuring Apple that it was not doing so. *Id.* at 2. MobileMedia's argued that its actions did not merit sanctions under Rule 37. D.I. 440. More specifically, MobileMedia maintained that it was "substantially justified in believing that the term 'Receiving Party' referred to MobileMedia and not each individual expert" and asserted that "the Protective Order makes clear that outside experts are retained by a 'Receiving Party' and are not themselves 'Receiving Parties.'" *Id.* at 2.

On October 31, 2012, Magistrate Judge Thynge issued a detailed, seven-page Report and Recommendation on this issue, finding an award of attorneys' fees and costs to be warranted under Rule 37 based on MobileMedia's violation of the Protective Order. D.I. 457. She rejected MobileMedia's argument that it was "substantially justified" in its interpretation of the Protective Order, calling such a reading of the Protective Order "dizzying." Magistrate Judge Thynge noted that MobileMedia had proffered two self-contradictory interpretations of "Receiving Party" under the Protective Order—"one to argue no violation and another to argue why its violation was substantially justified to avoid the imposition of reasonable expenses"—which amounted to

an unacceptable "'heads I win, tails you lose'" approach." *Id.* at 4-5. She recommended a reduced attorneys' fees award of award of $13,682.08.

## ARGUMENT

In its review of a magistrate judge's report and recommendation under 28 U.S.C. § 636(b)(1)(B), the district court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(1). In such a review, the court is entitled to exercise its "sound judicial discretion" in determining how much to rely on a magistrate judge's proposed recommendations. *United States v. Raddatz,* 447 U.S. 667, 674 (1980). MobileMedia conspicuously does not object to Magistrate Judge Thynge's finding that MobileMedia violated the Review requirement; nor does it dispute any of the specific facts above regarding Dr. Williams's and Mr. Finch's conduct. Thus, this Court only needs to determine, in light of the above facts, whether MobileMedia's violation justifies the recommended award of fees. As explained below, Magistrate Judge Thynge's conclusions are well-reasoned and fully justified; as such, the Court should adopt the Report and Recommendation.

### A. MobileMedia Misstates the Standard For Attorneys' Fees

There are two separate and distinct bases on which this Court may impose sanctions against MobileMedia. First, Rule 37 authorizes courts to impose sanctions against parties, "including attorney's fees, caused by the failure to comply with discovery orders." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763 (1980) (internal quotations omitted). Second, courts may impose sanctions under their inherent authority. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991).

MobileMedia improperly combines these two independent bases of judicial power in an effort to avoid clearly appropriate sanctions in this instance. MobileMedia contends that this

Court may *only* assess attorneys' fees "if it finds there has been 'willful disobedience of a court order' or the party has acted in 'bad faith, vexatiously, wantonly, or for oppressive reasons." D.I. 472 at 5. In fact, this heightened standard applies only where a court imposes sanctions under its inherent authority, *not* under Rule 37. Not surprisingly, the cases cited in MobileMedia's Objections purportedly in support of this more rigorous requirement for sanctions were decided under the inherent powers *not* Rule 37. D.I. 472 at 5.

Indeed, MobileMedia ultimately concedes, as it must, on the fifth page of its Objection, that under Rule 37, "the Court may assess sanctions only if there is no 'substantial justification' for the party's actions." *Id.* This is an entirely separate, independent basis for this Court to award sanctions in this case, and a court need not find bad faith to assess attorneys' fees under Rule 37: it merely must determine if the discovery violation was "substantially justified." *See In re Intel Corp. Microprocessor Antitrust Litigation*, 562 F. Supp. 2d 606, 616 (D. Del. 2008); *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 141 (3rd Cir. 2009).[2]

### B. The Magistrate Judge Correctly Concluded That An Attorneys' Fees Award Was Appropriate

Magistrate Judge Thynge properly applied the Rule 37 standard, finding that MobileMedia's violation of the Protective Order was not substantially justified. MobileMedia used a non-testifying expert, Mr. Finch, to perform a high-level review of Apple's source code on Apple's secured source code review terminal. With instructions from its disclosed testifying witness, Dr. Williams, Mr. Finch identified portions of source code he believed Mr. Williams

---

[2] MobileMedia's failure to distinguish these two tests for sanctions is troubling given that it properly identified the two separate powers and their requirements in its August 13, 2012 letter brief. D.I. 440 at 1-2 ("Under its inherent power, the Court may assess attorneys' fees only if the Court finds there has been 'willful disobedience of a court order' or the party has acted in 'bad faith, vexatiously, wantonly, or for oppressive reasons. Under Fed. R. Civ. P. 37, the Court may assess such sanctions only if there is no 'substantial justification' for the party's actions, or 'other circumstances make an award of expenses unjust.'" (citations omitted)).

7

might be interested in. He then printed out these portions of the source code and sent them to Dr. Williams so Dr. Williams could review them. In so doing, MobileMedia, through its disclosed experts Mr. Finch and Dr. Williams, unambiguously violated the Protective Order's Review requirement.

MobileMedia somehow contends that it reasonably believed its conduct was permitted under the Protective Order, claiming that it believed the term "Receiving Party" in the Protective Order referred to *MobileMedia* rather than its experts. D.I. 440 at. 3. Magistrate Judge Thynge correctly rejected this argument, calling MobileMedia's position "dizzying" and noting the inherent contradiction in its position. D.I. 457 at 4-5. But even putting aside these contradictory positions, MobileMedia fails to offer any interpretation of the Protective Order in which it does not violate the Review requirement. If the Protective Order is read to bar *each* of MobileMedia's inspecting experts from printing blocks of source code for review off-site in the first instance, then MobileMedia violated this requirement when Mr. Williams reviewed source code off-site in the first instance. If the Protective Order considers *MobileMedia* to be the "Receiving Party," and its experts to be agents of the Receiving Party, then MobileMedia violated this requirement when MobileMedia, through its agent Mr. Finch, printed out blocks of source code for off-site review in the first instance by MobileMedia, through its agent Dr. Williams.

The only possible interpretation of the Protective Order where MobileMedia did not violate the Protective Order is one in which MobileMedia alone, *and not its experts*, is bound by the Review requirement. But this is contrary to the express terms of the Protective Order. The Review requirement applies to the "Receiving Party." D.I. 221 ¶ 11(c)(iv). The Protective Order defines "Party" as MobileMedia and Apple *and* their retained experts and "Receiving Party" as "any Party who receives Discovery Material from a Producing Party." D.I. 221 ¶¶ 2(b), 2(e). Thus, under the unambiguous language of the Protective Order, MobileMedia *and* its

8

retained experts are subject to the Review requirement. Indeed, MobileMedia's reading of the Protective Order is patently unreasonable, as it would permit MobileMedia, through use of its experts, to completely evade the Protective Order's Review requirement.

Furthermore, the uncontested facts even would support a finding that MobileMedia willfully violated the Protective Order. When Apple brought the issue to MobileMedia's attention in November 2011, MobileMedia assured Apple it was not printing source code to be reviewed in the first instance elsewhere. In fact, it continued to do so for months and months.

### C. The Magistrate Judge Correctly Rejected MobileMedia's "No Harm, No Foul" Argument

MobileMedia argues that sanctions were inappropriate because "Apple has not shown that there was any unauthorized disclosure." In so doing, MobileMedia essentially argues for a "no harm, no foul" rule, suggesting that its violation was merely "technical." The Magistrate Judge properly rejected this argument. Many other courts have imposed sanctions for similar Rule 37 violations.[3] And many courts have specifically found a sanction of attorneys' fees to be warranted by inadvertent violation of a protective order.[4]

Furthermore, Apple has suffered two distinct harms. First, by printing blocks of source code for off-site review in the first instance, MobileMedia printed more source code than

---

[3] *E.g., Tarlton v. Cumberland County Correctional Facility*, 192 F.R.D. 165, 170 (D. N.J. 2000) (rejecting "no harm, no foul" defense to discovery violations); *So. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) ("[W]e, along with the Supreme Court, have consistently rejected the "no harm, no foul" standard for evaluating discovery sanctions"); *Eniva Corp. v. Global Water Sol., Inc.*, 440 F. Supp. 2d 1042, 1053 (D. Minn. 2006) (lack of harm "does not negate the fact that the integrity of the discovery process has been compromised").

[4] *E.g., Buzzanga v. Life Ins. Co. N.A.*, No. 4:09–CV–1353 CEJ, 2012 WL 425002, at *2 (E.D. Mo. Feb. 9, 2012) (finding sanction of attorneys' fees warranted by inadvertent violation of protective order); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) ("[B]y prescribing the method and terms of the discovery of confidential material, the Protective Order was granted "to provide or permit discovery" of confidential documents within the meaning of Rule 37(b).").

necessary, exposing Apple to more disclosure risk than it had bargained for in the Protective Order. As Magistrate Judge Thynge prudently noted, Apple's source code is Apple's "end all, be all" and its "crown jewel in many respects." D.I. 434 at 27:8-10. She held that the purpose of the Review requirement and other requirements of the Protective Order was "to limit how many fingers got into this pie," stating: "It's this type of domino effect that is having more hands in the pot for certain portions of the source code and the distribution process that I think causes Apple some angina, understandably so, because of the value that they place on their source code and that I recognize." *Id.* at 27:1-4, 33:17-21. Second, Apple has suffered harm in the form of time and costs in identifying and correcting this violation. *See Tarlton*, 192 F.R.D. at 170 (noting that the moving party's time and effort in identifying and correcting the violation constituted harm). Magistrate Judge Thynge's Report and Recommendation specifically redresses this harm by allowing Apple to recover a portion of its attorneys' fees and costs in bringing its motion.

## CONCLUSION

For these reasons, Apple respectfully requests the Court adopt Magistrate Judge Thynge's Report and Recommendation.

Dated: December 6, 2012
Redacted: December 13, 2012

                                                   */s/ Richard K. Herrmann*
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

OF COUNSEL:

FISH & RICHARDSON P.C.
Ruffin B. Cordell
1425 K Street, NW, 11th Floor
Washington, DC 20005

FISH & RICHARDSON P.C.
Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210

O'MELVENY & MYERS LLP
George A. Riley
Luann L. Simmons
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823

*Attorneys for Defendant Apple Inc.*