IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOBILEMEDIA IDEAS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-258-SLR-MPT |
| | ) |
| APPLE INC., | ) |
| | ) |
| Defendant. | ) |

Jack B. Blumenfeld, Esquire, Rodger D. Smith II, Esquire, and Jeremy A. Tigan, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Steven M. Bauer, Esquire, Justin J. Daniels, Esquire, Safraz W. Ishmael, Esquire, Kenneth Rubenstein, Esquire, Anthony C. Coles, Esquire, and Alan Federbush, Esquire of Proskauer Rose LLP.

Richard K. Herrmann, Esquire, Mary B. Matterer, Esquire, and Kenneth L. Dorsney, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Ruffin B. Cordell, Esquire, and Frank E. Sherkenbach, Esquire of Fish & Richardson P.C., and George A. Riley, Esquire, and Luann L. Simmons, Esquire of O'Melveny & Myers LLP.

**MEMORANDUM OPINION**

Dated: September 5, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff MobileMedia Ideas, LLC ("MobileMedia") filed this patent infringement suit against Apple Inc. ("Apple") on March 31, 2010, alleging in its amended complaint infringement of sixteen patents, including U.S. Patent No. RE 39,231 ("the '231 patent").[1] (D.I. 1; D.I. 8) Apple raised affirmative defenses of, inter alia, non-infringement, invalidity, unenforceability, failure to state a claim, "waiver, laches and/or estoppel," prosecution history estoppel, and lack of standing. (D.I. 10 at ¶¶ 114-23) Apple also asserted counterclaims for declaratory judgment of non-infringement. (Id. at ¶¶ 124-208)

On November 8, 2012, the court issued a memorandum opinion and order construing several disputed claim limitations and resolving the parties' motions for summary judgment of infringement and invalidity of the remaining patents-at-issue.[2] (D.I. 461; D.I. 462) In relevant part, the court found non-infringement of the '231 patent. The court also found that a question of fact precluded any summary judgment finding regarding validity of claims 2, 3, 4, and 12 ("the asserted claims") of the '231 patent. Currently before the court is MobileMedia's motion for reargument regarding the '231 patent. (D.I. 469)

## II. BACKGROUND

---

[1] In April 2012, the parties stipulated to dismiss the claims and counterclaims related to two patents (D.I. 263), and MobileMedia deferred four other asserted patents for a later phase.

[2] The court also resolved several motions to strike and granted MobileMedia's motion for partial summary judgment on several of Apple's defenses. (D.I. 461; D.I. 462)

### A. The Parties

MobileMedia is a Delaware LLC with its principal place of business in Chevy Chase, Maryland. (D.I. 8 at ¶ 1) It obtained the patents-in-suit in January 2012 from Nokia Capital, Inc. and Sony Corporation of America pursuant to two Patent Purchase Agreements. (D.I. 228, ex. D; ex. G) Apple Inc. is a California corporation with its principal place of business in Cupertino, California. (D.I. 10 at ¶ 2) It designs, manufactures, markets, and sells the accused products. (*Id.*)

### B. The '231 Patent

The '231 patent, titled "Communication Terminal Equipment and Call Incoming Control Method," reissued on August 8, 2006. An ex parte reexamination resulted in a reexamination certificate that issued April 3, 2012. The reexamination certificate cancelled claims 1, 11, 13-16, and 18-23, determined claims 2-4, 8, 12, and 17 to be patentable as amended, and added new claims 24-29. MobileMedia has alleged that Apple's iPhone 3G, iPhone 3GS, iPhone 4 products infringe the asserted claims of the '231 patent. (D.I. 8)

The '231 patent aims "to provide a communication terminal equipment which is superior in selecting and handling properties for users . . . ." ('231 patent, col. 1:43-46) Conventionally, a "call incoming on a telephone is informed by means of an alert sound," but the alert sound "does not stop ringing before a user effects [a] next operation." (*Id.*, col. 1:17-20) A user who cannot respond to an incoming call has only the option to forcibly disconnect the incoming call, turn off the telephone, or allow the alert sound to continue ringing. (*Id.*, col. 1:20-25) The first two options, forcibly

2

disconnecting the incoming call or turning off the telephone, may give the person on the call origination side an "unpleasant feeling because [he or she] can notice that the circuit was broken off intentionally" or may give the person the impression that the telephone network has failed. (*Id.*, col. 1:26-30, 39-42) Moreover, a user who turns off the power may forget to turn the power back on and miss subsequent incoming calls. (*Id.*, col. 1:37-39) On the other hand, the third option, allowing the alert sound to continue ringing, may disturb the user or other persons in the surrounding environment. (*Id.*, col. 1:3-33)

In light of these problems, the invention discloses a telephone in which an alert sound muting or volume reducing function is allotted to a key. (*Id.*, col. 2:2-5, 4:40-42, 5:12-17) When the telephone receives an incoming call, the user can use a predetermined operation, such as depressing a key for a short time, to prompt the "alert on/off controller" to stop generation of the alert sound. (*Id.* at col. 3:36-48) Alternatively, the volume of the alert sound may be reduced. (*Id.* at col. 4:40-42)

Claims 2, 3, 4, and 12 are at issue. Claim 12 was amended to be an independent claim during reexamination:

> 12. A communication terminal for informing a user of a received call from a remote caller by an alert sound, comprising:
>
> an alert sound generator for generating the alert sound when the call is received from the remote caller;
>
> control means for controlling said alert sound generator; and
>
> means for specifying a predetermined operation by the user,

> wherein when said alert sound generator is generating the alert sound and said means for specifying said predetermined operation is operated by the user, said control means controls said alert sound generator **to change a volume of the generated alert sound** only for the received call, without affecting the volume of the alert sound for future received calls, while leaving a call ringing state, as perceived by the remote caller, of the call to the terminal from the remote caller unchanged,
>
> further comprising:
>
> RF signal processing means for transmitting and/or receiving radio waves; and
>
> an antenna for transmitting and/or receiving said radio waves, wherein said communication status between said apparatus and said remote caller is established by said transmitted and/or received radio waves.

(emphasis added) Reexamined claims 2, 3, and 4 are all dependent from claim 12. Reexamined claim 2 adds the limitation that the control means controls the state of the alert sound generator to "**stop the sound**." (Emphasis added) Reexamined claim 3 adds the limitation that the control means controls the state of the alert sound generator "**to reduce the volume of the sound**." (Emphasis added) Finally, reexamined claim 4 adds the limitation "where said predetermined operation is an operation depressing a predetermined operation key."

During reexamination, independent claims 8, 12, 17, and 24-29 were amended or added to recite **changing** the volume of an alert sound. Claims 2, 9, 25, and 28 disclose **stopping** an alert sound, and claims 3, 10, 26, and 29 disclose **reducing** the volume of an alert sound. The court construed "to change a volume of the generated alert sound" to mean "to alter the degree of loudness of the alert sound that is being generated without cutting off the telephone circuit," and construed "stop the sound" to mean "stop the sound that is being generated without cutting off the telephone circuit."

4

(D.I. 461 at 42-43) MobileMedia asserts that, given the rules of claim construction, these constructions essentially read out the subject matter of asserted dependent claim 2.

## III. STANDARD OF REVIEW

A motion for reargument under Local Rule 7.1.5 is the "functional equivalent" of a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990). The standard for obtaining relief under Rule 59(e) is difficult to meet. The purpose of a motion for reargument or reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A court should exercise its discretion to alter or amend its judgment only if the movant demonstrates one of the following: (1) a change in the controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted. *See id.* A motion for reargument is not properly grounded on a request that a court rethink a decision already made and may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

## IV. DISCUSSION

MobileMedia seeks reargument solely on the basis that the court made an error not of reasoning but of apprehension; it asserts that such an error arose when the court construed claim 12 to exclude the subject matter of dependent claim 2. However, contrary to MobileMedia's assertion, the court considered the relationship between claims 12 and 2. (See D.I. 461 at 43-45) The grounds asserted for reargument merely constitute MobileMedia's disagreement with the court's conclusions and rehash MobileMedia's claim construction and summary judgment arguments. MobileMedia has not identified any change in law, new evidence, or error in apprehension that would warrant reargument. The court, therefore, does not change its claim construction or related summary judgment holdings for the '231 patent. However, the court recognizes that its intention may be subject to misinterpretation and, as such, will clarify its summary judgment memorandum opinion and order regarding the '231 patent. *See Cordis Corp. v. Boston Scientific Corp.*, 2010 WL 331792 (D. Del. Jan. 28, 2010) (denying motion for reconsideration but clarifying the court's order).

"Claim terms are properly construed to include limitations not otherwise inherent in the term only when a patentee sets out a definition and acts as his own lexicographer or when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Woods v. Deangelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1283 (Fed. Cir. 2012). Here, "to change a volume of the generated alert sound" was construed using the plain and ordinary meaning of the term, in the context of the claim language. The ordinary meaning of "change" is "to cause to be different" or "to exchange for or replace with another, usually of the same kind or category." *American*

*Heritage Dictionary of the English Language* (4th ed. 2000). Because "change" refers to "volume," the ordinary meaning of the term is that the volume becomes different or is replaced by another volume level.

The Federal Circuit recently addressed a similar situation and came to the same conclusion. *Zircon Corp. v. Stanley Black & Decker, Inc.*, 452 Fed. App'x 966, 969-76 (Fed. Cir. 2011) In *Zircon*, the patent-at-issue was a device, known as a "stud finder," for locating objects behind a wall. The specification of the patent-at-issue disclosed embodiments using two capacitive sensors that employed either division (via a ratio) or subtraction to compare capacitances. Independent claim 10 recited "computing a ratio" of the capacitances, whereas dependent claim 19 recited "comparing" the capacitances. The Court found that the "comparing" methodology in dependent claim 19 was in addition to (not a narrower form of) the "computing a ratio" methodology of independent claim 10 because "the specification [did] not interchangeably use the term 'ratio' to describe the results of both division and subtraction operations." *Id.* at 976.

Here, the limitation "to change a volume of the generated alert sound" is not interchangeable with, or encompassing of, "to stop the sound." The specification of the '231 patent does not disclose a device with the option of either stopping an alert sound or changing its volume. As the court noted in its November 8, 2012 memorandum opinion, the specification only discusses alternative embodiments that have the functionality of reducing an alert sound's volume or stopping the generation of an alert sound, but not both. (D.I. 461 at 42-43; *see* '231 patent, col. 4:37-47, 4:66-5:12) Figures 3 and 5 of the written description show schematic diagrams for devices that

control an alert sound generator by stopping the alert sound, whereas figure 4 shows a diagram for a device that controls an alert sound generator by changing the volume of the alert sound.[3]

The doctrine of claim differentiation creates a presumption that each claim in a patent has a different scope. "However, that presumption is not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history." *SeaChange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005). Consistent with the specification, "to change a volume," which appears in the independent claims, is substantially the same as "to reduce the volume"[4] but does not encompass "to stop the volume." The fact that, on reexamination, the patentee did not follow normal drafting protocol to make the new independent claims inclusive of some of the dependent claims – as opposed to those dependent claims being narrower and in alternative form – is not a problem the court can remedy. *See Zircon*, 452 F. App'x at 976 ("The fact that the claims do not appear in the patent as, perhaps, they were originally intended is not a problem this court has the authority to remedy."). The court will not essentially redraft the claim language when the patentee had two opportunities to do so. The Federal Circuit has "repeatedly and consistently recognized

---

[3]Figure 4 of the '231 patent does have a state 13.1 "stop alert sound," but that state is in response to the user answering an incoming call because it leads to state 14 "conversation." It does not show stopping the sound while leaving a call ringing state, as perceived by the remote caller, unchanged.

[4]"'[C]laims that are written in different words may ultimately cover substantially the same subject matter.'" *SeaChange Int'l*, 413 F.3d at 1369 (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998)).

that courts may not redraft claims, whether to make them operable or to sustain their validity." *Chef Am. Inc. v. Lamb-Weston Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004).

## V. CONCLUSION

For the foregoing reasons, the court denies MobileMedia's motion for reargument regarding the '231 patent. An appropriate order shall issue.