IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOBILEMEDIA IDEAS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-258-SLR |
| | ) |
| APPLE INC., | ) |
| | ) |
| Defendant. | ) |

Jack B. Blumenfeld, Esquire, Rodger D. Smith II, Esquire, and Jeremy A. Tigan, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Steven M. Bauer, Esquire, Safraz W. Ishmael, Esquire, Kenneth Rubenstein, Esquire, Kimberly A. Mottley, Esquire, Laura E. Stafford, Esquire, William D. Dalsen, Esquire, and Anthony C. Coles, Esquire of Proskauer Rose LLP.

Richard K. Herrmann, Esquire, and Mary B. Matterer, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: George A. Riley, Esquire, Luann L. Simmons, Esquire, Melody N. Drummond Hansen, Esquire, Xin-Yi Zhou, Esquire, and David S. Almeling, Esquire of O'Melveny & Myers LLP.

**MEMORANDUM OPINION**

Dated: April 11, 2016
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff MobileMedia Ideas, LLC ("MobileMedia") filed a patent infringement complaint against Apple Inc. ("Apple") on March 31, 2010, alleging in its amended complaint infringement of sixteen patents, including U.S. Patent No. RE 39,231 ("the '231 patent"). (D.I. 1; D.I. 8) Apple answered and counterclaimed on August 9, 2010. (D.I. 10) The court resolved the parties' claim construction issues and summary judgment motions for infringement and invalidity, finding in relevant part that Apple did not infringe the '231 patent. (D.I. 461; D.I. 462); *MobileMedia Ideas, LLC v. Apple Inc.*, 907 F. Supp. 2d 570, 596-99 (D. Del. 2012). The case proceeded to a six day jury trial beginning on December 3, 2012 on three of the asserted patents. The court then resolved the parties' post-trial motions and a motion for reargument regarding the '231 patent. (D.I. 539; D.I. 540; D.I. 541; D.I. 542); *MobileMedia Ideas, LLC v. Apple Inc.*, 966 F. Supp. 2d 433 (D. Del. 2012); *MobileMedia Ideas, LLC v. Apple Inc.*, 966 F. Supp. 2d 439 (D. Del. 2012). The Federal Circuit issued its mandate on June 5, 2015, affirming in part, reversing in part, vacating and remanding. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159 (Fed. Cir. 2015). Presently before the court is Apple's motion for summary judgment of invalidity and non-infringement of the '231 patent. (D.I. 577) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND

### A. The Parties

MobileMedia is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Chevy Chase, Maryland. (D.I. 8 at ¶

1) It obtained the patents-in-suit in January 2012 from Nokia Capital, Inc. and Sony Corporation of America pursuant to two Patent Purchase Agreements. (D.I. 228, ex. D; ex. G) Apple is a corporation organized under the laws of the State of California with its principal place of business in Cupertino, California. (D.I. 10 at ¶ 2) It designs, manufactures, markets, and sells the accused products. (Id.)

### B. The '231 Patent

The '231 patent, titled "Communication Terminal Equipment and Call Incoming Control Method," reissued on August 8, 2006. An ex parte reexamination resulted in a reexamination certificate that issued April 3, 2012. The reexamination certificate cancelled claims 1, 11, 13-16, and 18-23, determined claims 2-4, 8, 12, and 17 to be patentable as amended, and added new claims 24-29. The patent claims a foreign application priority date of December 19, 1994.

According to the abstract, the patent teaches communication terminal equipment and a method for stopping the alert sound or reducing the volume of the alert sound for an incoming call on a telephone. (Abstract) Conventionally, a "call incoming on a telephone is informed by means of an alert sound," but the alert sound "does not stop ringing before a user effects [a] next operation." (1:17-20) A user who cannot respond to a call incoming has only the option to forcibly disconnect the incoming call, turn off the telephone, or allow the alert sound to continue ringing. (1:20-25) The first two options, forcibly disconnecting the incoming call or turning off the telephone, may give the person on the call origination side an "unpleasant feeling because [he or she] can notice that the circuit was broken off intentionally" or may give the person the impression that the telephone network has failed. (1:26-30, 39-42) Moreover, a user

2

who turns off the power may forget to turn the power back on and miss the next incoming call. (1:37-39) On the other hand, the third option, allowing the alert sound to continue ringing, may disturb the user or other persons in the surroundings. (1:30-33)

In light of these problems, the invention aims "to provide a communication terminal equipment which is superior in selecting and handling properties for users . . . ." (1:43-46) It teaches a telephone in which an alert sound stopping function or volume reducing function is allotted to a key. (2:2-5, 4:40-42, 5:12-17) When the telephone receives an incoming call, the user can use a predetermined operation, such as depressing a key for a short time, to prompt the "alert on/off controller" to stop generation of the alert sound. (3:36-48) Alternatively, the alert sound may be reduced. (4:40-42)

Claims 2, 3, 4, and 12 are at issue. Claim 12 was amended to be an independent claim during reexamination and reads:

> 12. A communication terminal for informing a user of a received call from a remote caller by an alert sound, comprising:
>
> an alert sound generator for generating the alert sound when the call is received from the remote caller;
>
> control means for controlling said alert sound generator; and
>
> means for specifying a predetermined operation by the user,
>
> wherein when said alert sound generator is generating the alert sound and said means for specifying said predetermined operation is operated by the user, said control means controls said alert sound generator to change a volume of the generated alert sound only for the received call, without affecting the volume of the alert sound for future received calls, while leaving a call ringing state, as perceived by the remote caller, of the call to the terminal from the remote caller unchanged,
> further comprising:

3

> RF signal processing means for transmitting and/or receiving radio waves; and
>
> an antenna for transmitting and/or receiving said radio waves, wherein said communication status between said apparatus and said remote caller is established by said transmitted and/or received radio waves.

Reexamined claims 2, 3, and 4 each depend from claim 12. Reexamined claim 2 adds the limitation that the "control means controls the state of said alert sound generator to stop the sound." Reexamined claim 3 adds the limitation that the "control means controls the state of said alert sound generator to reduce the volume of the sound." Finally, reexamined claim 4 adds the limitation "wherein said predetermined operation is an operation depressing a predetermined operation key."

MobileMedia contends that the iPhone 3G, iPhone 3GS, and iPhone 4 ("the accused iPhones") infringe claims 2-4 and 12 of the '231 patent. (D.I. 461 at 4) The court granted Apple's motion for summary judgment of non-infringement, finding that under its construction of "to change a volume of the generated alert sound," the accused iPhones did not practice the limitation of "said control means controls said alert sound generator to change a volume of the generated sound." *MobileMedia*, 907 F. Supp. 2d at 598-99. In relevant part, the Federal Circuit held erroneous the court's construction of "to change a volume" and vacated the judgment of non-infringement. *MobileMedia*, 780 F.3d at 1181. The Federal Circuit stated that "[c]onsistent with the specification, 'controlling the alert sound generator to change a volume of the generated alert sound' by the 'control means' encompasses both stopping and reducing the volume of the alert sound as recited in dependent claims 2 and 3, respectively." *Id.*

### III. STANDARD OF REVIEW

4

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## IV. DISCUSSION

### A. Claim Construction and Indefiniteness

#### 1. Standards

Claim construction is a matter of law. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1330 (Fed. Cir. 2005) (en banc). Claim construction focuses on intrinsic evidence - the claims, specification and prosecution history - because intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). Claims must be interpreted from the perspective of one of ordinary skill in the relevant art at the time of the invention. *Phillips*, 415 F.3d at 1313.

Claim construction starts with the claims, *id.* at 1312, and remains centered on the words of the claims throughout. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). In the absence of an express intent to impart

6

different meaning to claim terms, the terms are presumed to have their ordinary meaning. *Id.* Claims, however, must be read in view of the specification and prosecution history. Indeed, the specification is often "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315.

"In construing a means-plus-function claim, [pursuant to 35 U.S.C. § 112, ¶ 6,] the district court must first determine the claimed function and then identify the corresponding structure in the written description of the patent that performs that function." *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) (citing *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006)). Ultimately, if no corresponding structure is disclosed in the specification, the claim term must be construed as indefinite, pursuant to 35 U.S.C. § 112, ¶ 2. *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012).

Where the claim language does not recite the term "means," there is a presumption that the limitation does not invoke 35 U.S.C. § 112, ¶ 6. *Personalized Media Commc'ns, LLC v. ITC*, 161 F.3d 696, 703 (Fed. Cir. 1998).

> The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure. When a claim term lacks the word "means," the presumption can be overcome and § 112, [¶] 6 will apply if the challenger demonstrates that the claim term fails to "recite sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function."

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (citing *Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996); *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). "Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than

verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure . . . .'" *Id.* at 1350 (citing *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006)). To determine whether a claim term that lacks the word "means" is subject to § 112, ¶ 6, the court must consider the words of the claims themselves, the written description, the prosecution history, and any relevant intrinsic evidence. *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, 1356 (Fed. Cir. 2011) (citing *Personalized Media*, 161 F.3d at 704 (The presumption that a claim lacking the term "means" recites sufficiently definite structure can be rebutted "if the evidence intrinsic to the patent and any relevant extrinsic evidence so warrant[s].")).

"[I]n the § 112, ¶ 6 context, a court's determination of the structure that corresponds to a particular means-plus-function limitation is indeed a matter of claim construction." *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999) (citation omitted). The court must "construe the disputed claim term by identifying the 'corresponding structure, material, or acts described in the specification' to which the claim term will be limited." *Media Rights Technologies, Inc. v. Capital One Financial Corp.*, 800 F.3d 1366, 1350 (Fed. Cir. 2015) (citing *Robert Bosch, LLC v. Snap–On Inc.*, 769 F.3d 1094, 1097 (Fed. Cir. 2014)). "Where there are multiple claimed functions, . . . the patentee must disclose adequate corresponding structure to perform **all** of the claimed functions." *Id.* (citing *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318-19 (Fed. Cir. 2012). Without such "corresponding structure," the claim term is indefinite. *Id.* (citing *Robert Bosch*, 769 F.3d at 1097). More specifically,

> [s]tructure disclosed in the specification qualifies as "corresponding structure" if the intrinsic evidence clearly links or associates that structure to the function recited in the claim. Even if the specification discloses corresponding structure, the disclosure must be of "adequate" corresponding structure to achieve the claimed function. Under 35 U.S.C. § 112, [¶¶] 2 and 6, therefore, if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim, a means-plus-function clause is indefinite.

*Williamson*, 792 F.3d at 1352 (citations omitted).

Generally, "in a means-plus-function claim 'in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.'" *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) (quoting *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999)). The specification can express the algorithm "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (internal citation omitted).

The description of the algorithm must do more than describe the function to be performed; it must describe how the function is to be performed. *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382-83 (Fed. Cir. 2009) (finding "[t]he specification contains no description of the structure or the process that the access control manager uses to perform the 'assigning' function."). It is insufficient to aver that a disclosure has enough structure for a person of ordinary skill to devise some method or write some

software to perform the desired function. *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1319 (Fed. Cir. 2013) (citing *Blackboard*, 574 F.3d at 1385).

### 2. Analysis

#### a. "An alert sound generator for generating an alert sound when the call is received from the remote caller"[1]

The specification describes figure 2 as "a block diagram showing an example of the inner circuit of the communication terminal equipment according to the present invention." (1:58-60) Figure 2 discloses a box labeled "Alert Sound Generator 13" and the specification explains that,

> when a call is given to this portable telephone 1 from another party, the CPU 7 detects this call and performs control to turn on an alert on/off controller 12 to thereby make an alert sound generator 13 generate an alert sound. Thus, the user is able to notice the call incoming. In this state, if the user depresses the send key 3C, the CPU 7 detects this depression, so that it enables conversation and stops the generation of the alert sound at the same time. This is a case where the user can respond to a call incoming. However, there is a case where the user cannot respond to a call incoming in accordance with the surroundings at the time of the call incoming. To cope with such a case, therefore, there is provided a function to eliminate an alert sound without forcibly cutting-off a circuit under a predetermined operation.

(2:48-62) The term "generator" is not otherwise found in the specification. The specification explains that "[i]If the power key 3A is depressed for a time shorter than a predetermined time (for example, shorter than one second) when an alert sound is being generated, the CPU 7 detects this depression and controls the alert on/off controller 12 to make it stop the generation of the alert sound." (3:1-6; *see also* 3:45) In describing "the operation and the state transition" of the call, the specification explains

---

[1] Found in claim 12.

that "an alert sound" is "generated." (3:27-32) Accordingly, the limitation is defined by its function, i.e., a generator used to generate an alert sound. The court concludes that the limitation is subject to § 112, ¶ 6, with a function "generating the alert sound when the call is received from the remote caller" and a structure "alert sound generator."

The parties dispute, by reference to **extrinsic evidence**, whether such structure is sufficient. In discussing the lack of written description, Apple's expert, Dr. Balakrishnan, opined that he "could find nothing [in the claims, specification, and prosecution history] that discloses this limitation. There is no support in the '231 [p]atent specification or figures for this limitation." Dr. Balakrishnan concluded that "[a] person of ordinary skill in the art would not understand what 'an alert sound generator' is . . . ."[2] (D.I. 579, ex. D at ¶¶ 122-23; ex. E at ¶ 83) Dr. Balakrishnan testified that an "alert sound generator" is

> something that is able to generate the sound and generation of the sound involves a mechanism for creating the sound itself from a transducer perspective, in other words, the speaker and the signal that needs to be generated in order to provide that transducer with the ability to create that particular sound.

(D.I. 583, ex. A at 117:13-118:12) Dr. Meldal states that "in the context of a cellular phone, [the alert sound generator] was understood by persons of ordinary skill in the art to refer to an electronic circuit, including a speaker or a vibrator, that was capable of generating sounds, as well as stopping the generation of such sounds."[3] (D.I. 584 at ¶¶ 19-21) He opines that "the disclosure of 'alert sound generator 13' in Figure 2 [and the

---

[2] Relying in part on the testimony of the inventor, Mr. Hayashi, that he did not invent the alert sound generator and he did not "think this patent touches on the content of the alert sound generator," but it is included in the claim. (D.I. 588, ex. L at 107:23-108:2)
[3] Providing citations to electronics catalogs and hobbyist publications.

11

specification] is adequate corresponding structure to achieve the claimed function [described by Apple]. A person of ordinary skill in the art would be able to recognize the structure in the specification and associate it with the corresponding functions of the claim." (D.I. 584 at ¶¶ 17-18)

When, as at bar, the indefiniteness inquiry is intertwined with claim construction, the court may resolve factual disputes. *See EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 620 (Fed. Cir. 2015) (affirming the district court's grant of summary judgment of indefiniteness, which was based on numerous detailed findings of fact by the district court, including evaluating expert testimony, when the indefiniteness inquiry was intertwined with claim construction); *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1337-38 (Fed. Cir. 2014) (affirming district court's finding of indefiniteness, wherein the district court analyzed plaintiff's arguments based on expert testimony against defendant's arguments regarding whether the patent disclosed an algorithm for the means-plus-function claims and concluded that an algorithm was not disclosed); *cf. Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) (finding no clear error in the district court's reliance on certain expert testimony, as long as the district court did not "defer to [the expert's] ultimate conclusion about claim meaning").

"A party cannot transform into a factual matter the internal coherence and context assessment of the patent simply by having an expert offer an opinion on it;" instead, such an "assessment of the patent, and whether it conveys claim meaning with reasonable certainty, are questions of law." *Teva*, 789 F.3d at 1342. The question for the court remains whether the specification discloses "corresponding structure," i.e.,

12

clearly linking such structure to the function recited in the claim. Such structure is adequate "if a person of ordinary skill in the art would be []able to recognize the structure in the specification and associate it with the corresponding function in the claim." *Williamson*, 792 F.3d at 1352. Moreover, "a challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function." *See Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376-77 (Fed. Cir. 2001). Dr. Balakrishnan testified that the limitation would involve "the speaker and the signal that needs to be generated in order to provide that transducer with the ability to create that particular sound." Consistent with Dr. Meldal's opinion, the court concludes that those of skill in the art would recognize the structure in the specification and associate it with the corresponding functions of the claim.

### b. "Control means for controlling said alert sound generator"[4]

The specification states: "The inner circuit is constituted by a CPU 7 (control means) as a main part so that the CPU controls other parts of the inner circuit." (2:19-22) Figure 2 includes a box labeled "CPU" and another "alert on/off controller." The specification further describes that the "CPU 7 detects [an incoming] call and performs control to turn on an alert on/off controller 12 to thereby make an alert sound generator 13 generate an alert sound."[5] "If the power key 3A is depressed for a time shorter than a predetermined time (for example, shorter than one second) when an alert sound is

---

[4] Found in claim 12.
[5] The full quote is given above in the previous limitation.

13

being generated, the CPU 7 detects this depression and controls the alert on/off controller 12 to make it stop the generation of the alert sound." (2:48-52; 3:4-6) The power key may also be used to reduce the volume of an alert sound. (4:37-43, 5:7-11)

The Federal Circuit construed this limitation as having the function "controlling the alert sound generator to change a volume of the generated alert sound," and structure "CPU and alert sound generator on/off controller."[6] *MobileMedia*, 780 F.3d at 1180. Apple argues that the specification fails to disclose an algorithm or that the specification's disclosures are insufficient. The court disagrees. As explained above, an algorithm may be disclosed in any format. At bar, the specification discloses (using words and figures) the process by which the corresponding structure performs the given function.[7]

### c. "RF signal processing means for transmitting and/or receiving radio waves"[8]

The specification discloses a box labeled "RF signal processing" in figure 2, which is "a block diagram showing an example of the inner circuit of the communication terminal equipment according to the present invention." (1:58-60) The specification explains that "[i]f the user operates the send key 3C, the CPU 7 begins call origination to the other party through an RF signal processing portion 10 and the antenna 5." (2:32-35) The specification describes fetching a reception signal through the signal

---

[6] Such construction is similar to that proposed by MobileMedia during the initial claim construction exercise. (D.I. 303 at 4)
[7] **Extrinsic evidence.** Dr. Meldal opines that a person skilled in the art would find the required algorithm disclosed in the specification and figures. (D.I. 584 at ¶¶ 29-30) Apple offers no expert testimony on this point.
[8] Found in claim 12.

14

processing portion 10 and transmitting through the signal processing portion 10. (2:36-47) The specification describes the function of the limitation and provides a corresponding structure.[9] The court construes this limitation as having a function of "transmitting and/or receiving radio waves" and a structure of "RF signal processing circuitry."[10] Apple's motion for summary judgment of indefiniteness is denied.

### B. Non-Infringement

#### 1. Standard

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. See *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); see also *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is ... appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the claims (as construed by the Court). See *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

---

[9] **Extrinsic evidence.** Dr. Meldal opined that a person of ordinary skill in the art "would understand from the descriptions in the '231 patent specification that the 'RF signal processing' portion 10 is RF signal processing circuitry." (D.I. 584 at ¶ 33) Apple offers no expert testimony on this point.

[10] This construction was agreed to by the parties during the claim construction phase. (D.I. 239, ex. A at 5)

15

The Federal Circuit has declined to "state a per se rule that expert testimony is required to prove infringement when the art is complex." *See Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369-70 (Fed.Cir.2004) ("In many patent cases expert testimony will not be necessary because the technology will be 'easily understandable without the need for expert explanatory testimony.'") (citations omitted); *see also, Wyers v. Master Lock Co.*, 616 F.3d 1231, 1239-40, 1242 (Fed.Cir.2010) (The existence of a motivation to combine references "may boil down to a question of 'common sense'" and "expert testimony is not required when the references and the invention are easily understandable"). However, "in a case involving complex technology, where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof by relying only on testimony from those who are admittedly not expert in the field." *Id.*

### 2. Analysis

Apple argues that MobileMedia has failed to identify specific structures in the infringing products which meet the "alert sound generator" and "control means" limitations. Dr. Meldal opined that, if the claim limitations were construed as means-plus-function limitations, "the iPhone Products meet [the alert sound generator] element as construed by Apple. . . . [T]hey include a generator that generates the alert sound when a call is received from a remote caller, that includes a receiver and a speaker." The iPhone Products "meet [the control means] element as construed by Apple because they include a processor executing the software cited above that performs the function of controlling the alert sound generator in the iPhone Products." For each opinion, he identified (but did not discuss) schematics and documents to support his

16

conclusion. (D.I. 584, ex. A at 318-322) At the summary judgment stage, viewing the facts in the light most favorable to MobileMedia, that Apple (through attorney argument only) finds insufficient Dr. Meldal's disclosures does not provide the court with a record on which to enter judgment of non-infringement. *Cf. Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002). ("It is not our task, nor is it the task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage.). The court concludes that Apple has failed to meet its burden of persuasion and denies the motion.

## V. CONCLUSION

For the foregoing reasons, the court denies Apple's motion for summary judgment of invalidity and non-infringement of the '231 patent. (D.I. 577) An appropriate order shall issue.