# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| MOBILEMEDIA IDEAS, LLC, | ) |  |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 10-258-SLR |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Jack B. Blumenfeld, Esquire, Rodger D. Smith II, Esquire, and Jeremy A. Tigan, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Steven M. Bauer, Esquire, Safraz W. Ishmael, Esquire, Kenneth Rubenstein, Esquire, Kimberly A. Mottley, Esquire, Laura E. Stafford, Esquire, William D. Dalsen, Esquire, and Anthony C. Coles, Esquire of Proskauer Rose LLP.

Richard K. Herrmann, Esquire, and Mary B. Matterer, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: George A. Riley, Esquire, Luann L. Simmons, Esquire, Melody N. Drummond Hansen, Esquire, Xin-Yi Zhou, Esquire, and David S. Almeling, Esquire of O'Melveny & Myers LLP.

## MEMORANDUM OPINION

Dated: July $\mathcal{H}$ , 2016
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff MobileMedia Ideas, LLC ("MobileMedia") filed a patent infringement complaint against Apple Inc. ("Apple") on March 31, 2010, alleging in its amended complaint infringement of sixteen patents, including U.S. Patent No. RE 39,231 ("the '231 patent") and 6,725,155 ("the '155 patent").[1] (D.I. 1; D.I. 8) Apple answered and counterclaimed on August 9, 2010. (D.I. 10) The court resolved the parties' claim construction issues and summary judgment motions for infringement and invalidity. (D.I. 461; D.I. 462); *MobileMedia Ideas, LLC v. Apple Inc.*, 907 F. Supp. 2d 570, 596-99 (D. Del. 2012). The case proceeded to a six day jury trial beginning on December 3, 2012 on three of the asserted patents. The court then resolved the parties' post-trial motions. (D.I. 539; D.I. 540; D.I. 541; D.I. 542); *MobileMedia Ideas, LLC v. Apple Inc.*, 966 F. Supp. 2d 433 (D. Del. 2012); *MobileMedia Ideas, LLC v. Apple Inc.*, 966 F. Supp. 2d 439 (D. Del. 2012). The Federal Circuit issued its mandate on June 5, 2015, affirming in part, reversing in part, vacating and remanding. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159 (Fed. Cir. 2015). Presently before the court is Apple's motion for summary judgment regarding damages (D.I. 633) and motions to exclude certain expert opinions (D.I. 636, 639). The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. SUMMARY JUDGMENT

---

[1] The '231 patent, titled "Communication Terminal Equipment and Call Incoming Control Method," reissued on August 8, 2006. An ex parte reexamination resulted in a reexamination certificate that issued April 3, 2012. The '155 patent, titled "Method and Apparatus for Information Processing, and Medium for Information Processing," was filed on February 9, 2000 and issued on April 20, 2004.

## A. Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of

a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## B. Analysis[2]

### 1. Prosecution history

On March 6, 1998, twice amended claims 1 and 12 were again amended in response to an office action[3] rejecting the claims over prior art, adding certain language relevant to the issue at bar:

1. (Twice Amended) A communication terminal for informing a user of a **received call** from a remote caller by an alert sound comprising:

an alert sound generator for generating a sound; and

control means for controlling said alert sound generator and determining whether a predetermined operation is operated when said alert sound is being rung and when said predetermined operation is operated an operating state of said alert sound generator is altered based on an

---

[2] The court recites only the background needed for the issues at bar. A fuller recitation may be found in previous opinions. (*See e.g.*, D.I. 630)

[3] During prosecution of U.S. Patent No. 5,995,852 ("the '852 patent"). Original claim 12 of the '231 patent was issued in the '852 patent. The subsequent reexamination yielded the '231 patent, which proceedings added new claims 20-23. The prosecution history of the '852 patent is properly considered in the above analysis.

outcome of the determination and **a communication state between the terminal and the remote caller remains unchanged**.

12. (Twice Amended) The communication terminal according to claim 1, further comprising:

RF signal processing means for transmitting and/or receiving radio waves; and

an antenna for transmitting and/or receiving said radio waves, **wherein said communication status** between said apparatus and said remote caller is established by said transmitted and/or received radio waves.

(D.I. 658, ex. G at JA268-72) (emphasis added) On February 16, 1999, claim 1 was

further amended[4] in relevant part to change the last limitation to:

1. (Four-Times Amended) A communication terminal for informing a user of a **received call** from a remote caller by an alert sound, comprising:

an alert sound generator for generating the alert sound when the call is received from the remote caller;

control means for controlling said alert sound generator; and

means for specifying a predetermined operation by the user,

wherein when said alert sound generator is generating the alert sound and said means for specifying said predetermined operation is operated by the user, said control means controls said alert sound generator to change a volume of the alert sound only for **the received call**, without affecting the volume of the alert sound for future **received calls**, while **a call ringing state, as perceived by the remote caller, of the call to the terminal from the remote caller remains unchanged.**

(*Id.* at JA 339) (emphasis added) Claim 12 was not amended. The applicant argued,

in response to an obviousness rejection, that the prior art did "not disclose or suggest

control of the alert sound in the manner provided in" amended claim 1. More

specifically, it did not disclose "changing a volume of the alert sound only for the call . .

---

[4] The interim amendment to claim 1 (on August 18, 1998) did not affect the language at issue. (D.I. 658, ex. G at JA299-301)

4

., while leaving a call ringing status, as perceived by the remote caller, of the call from

the remote caller to the communication apparatus unchanged . . . ." (*Id.* at 341-42)

(emphasis omitted) As issued, claims 1 and 12 recited:

> 1. A communication terminal for informing a user of a **received call** from
> a remote caller by an alert sound, comprising:
>
> an alert sound generator for generating the alert sound when the call is
> received from the remote caller;
>
> control means for controlling said alert sound generator; and
>
> means for specifying a predetermined operation by the user,
>
> wherein when said alert sound generator is generating the alert sound and
> said means for specifying said predetermined operation is operated by the
> user, said control means controls said alert sound generator to change a
> volume of the generated alert sound only for the **received call**, without
> affecting the volume of the alert sound for future **received calls**, while
> leaving **a call ringing state**, as perceived by the remote caller, of the call
> to the terminal from the remote caller unchanged.
>
> 12. The communication terminal according to claim 1, further comprising:
>
> RF signal processing means for transmitting and/or receiving radio waves;
> and
>
> an antenna for transmitting and/or receiving said radio waves, wherein
> **said communication status** between said apparatus and said remote
> caller is established by said transmitted and/or received radio waves.

('231 patent, 5:49-67, 6:43-50) (emphasis added)

The applicant amended claim 12 to be an independent claim during

reexamination (incorporating all the limitations of independent claim 1), as reflected in

the communication dated October 4, 2011:

> 12. A communication terminal for informing a user of a **received call** from
> a remote caller by an alert sound, comprising:
>
> an alert sound generator for generating the alert sound when the call is
> received from the remote caller;

control means for controlling said alert sound generator; and

means for specifying a predetermined operation by the user,

wherein when said alert sound generator is generating the alert sound and said means for specifying said predetermined operation is operated by the user, said control means controls said alert sound generator to change a volume of the generated alert sound only for the **received call**, without affecting the volume of the alert sound for future **received calls**, while leaving **a call ringing state**, as perceived by the remote caller, of the call to the terminal from the remote caller unchanged,

further comprising:

RF signal processing means for transmitting and/or receiving radio waves; and

an antenna for transmitting and/or receiving said radio waves, wherein **said communication status** between said apparatus and said remote caller is established by said transmitted and/or received radio waves.

(D.I. 635, ex. 2 at JA 3156-57) The applicant argued that the prior art (directed to a cordless telephone) did not anticipate claim 12 as it did not teach or suggest the limitation "said communication status between said apparatus and said **remote caller** is established by said transmitted and/or received radio waves." (*Id.* at JA 3170-71) On October 4, 2011, in response to a final office action, the applicant argued (based on the above prosecution history) that the antecedent basis for "said communication status" is a "call ringing state." (*Id.* at JA 3316-46)

During an interview with the examiner, the patentee again asserted that the antecedent basis for "said communication status" in the above claim 12 was "call ringing state, as perceived by the remote caller," as provided in issued claim 1. The examiner disagreed, stating that as claim 12 recites a "received call" (also a communication status) the antecedent basis for "said communication status" was unclear. The

6

"received call" status would allow the claims to embrace both the cellular telephone and

cordless telephone.  The examiner requested that the patentee correct the claim

limitation by amendment.  (D.I. 658, ex. C at JA3382)  On December 15, 2011, the

applicant amended the last limitation of claim 12:

> 12.  A communication terminal for informing a user of a **received call** from
> a remote caller by an alert sound, comprising:
>
> an alert sound generator for generating the alert sound when the call is
> received from the remote caller;
>
> control means for controlling said alert sound generator; and
>
> means for specifying a predetermined operation by the user,
>
> wherein when said alert sound generator is generating the alert sound and
> said means for specifying said predetermined operation is operated by the
> user, said control means controls said alert sound generator to change a
> volume of the generated alert sound only for the **received call**, without
> affecting the volume of the alert sound for future **received calls**, while
> leaving **a call ringing state**, as perceived by the remote caller, of the call
> to the terminal from the remote caller unchanged,
>
> further comprising:
>
> RF signal processing means for transmitting and/or receiving radio waves;
> and
>
> an antenna for transmitting and/or receiving said radio waves, wherein
> **said call ringing state** between said apparatus and said remote caller is
> established by said transmitted and/or received radio waves.

 (D.I. 635, ex. 2 at JA3395) (emphasis added)  The PTO then allowed the claim, stating

that the previous rejections over the prior art were based upon interpreting "said

communication status" as referring to the earlier recited "received call," which allowed

claim 12 to embrace both of the disclosed cellular telephone and cordless telephone

embodiments.  The examiner noted that the applicant "followed the examiner's

7

suggestion by replacing the phrase 'said communication status' with 'said call ringing state,' whose antecedent basis is clearly established and thus 'call ringing state' must [be] interpreted more narrowly." The examiner also explained that the prior art uses a wireline PSTN telephone network and does not teach "leaving any type of call ringing state unchanged when, as is now recited due to the amendment, the call ringing state is established by transmitted radio waves." (D.I. 635, ex. 2 at JA3476-79, ex. 4)

### 2. Intervening rights

Pursuant to 35 U.S.C. §§ 252 and 307(b), a patentee of a reexamined patent may only recover "infringement damages for the time period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and the reexamined claims are 'substantially identical.'" *R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1349 (Fed. Cir. 2015) (citations omitted). "To determine whether substantive changes have been made," a court must consider "whether the scope of the claims are identical, not merely whether different words are used." *Id.* (citing *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998); *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997)).

The parties dispute whether "communication status" was meant to embrace both "call ringing state" and "received call" as suggested by the examiner. The examiner's conclusion that "call ringing state" should be interpreted more narrowly follows from his explanation that a "received call" is also a communication status. Having reviewed the prosecution history, the court disagrees. Claim 1 is directed to "informing a user of a received call." The first relevant iteration of the claims at issue included the language a "communication state between the terminal and the remote caller remains unchanged"

8

(claim 1) and "said communication status" (claim 12).  The patentee amended the claim

language to provide "a call ringing state, as perceived by the remote caller, of the call to

the terminal from the remote caller remains unchanged" (claim 1) without changing the

language "said communication status" (claim 12).  The term "received call" appears in

the first relevant iteration of claim 1 and was not a "communication status" as indicated

by the plain language.  The examiner's conclusion does not compel the court at bar to

interpret "communication status" more broadly in the first instance.  As the claims

remained substantially identical in scope, intervening rights do not apply.[5]

### 3. Marking

35 U.S.C. § 287(a), provides:

> Patentees, and persons making, offering for sale, or selling within the
> United States any patented article for or under them, or importing any
> patented article into the United States, may give notice to the public that
> the same is patented, either by fixing thereon the word "patent" or the
> abbreviation "pat.", together with the number of the patent, or by fixing
> thereon the word "patent" or the abbreviation "pat." together with an
> address of a posting on the Internet, accessible to the public without
> charge for accessing the address, that associates the patented article with
> the number of the patent, or when, from the character of the article, this
> can not be done, by fixing to it, or to the package wherein one or more of
> them is contained, a label containing a like notice.  In the event of failure
> so to mark, no damages shall be recovered by the patentee in any action
> for infringement, except on proof that the infringer was notified of the
> infringement and continued to infringe thereafter, in which event damages
> may be recovered only for infringement occurring after such notice.  Filing
> of an action for infringement shall constitute such notice.

The parties at bar dispute who bears the burden of satisfying the marking

requirement where, as here, there is a question as to whether the patentee ever

---

[5] Having found that intervening rights do not apply, the court declines to address
MobileMedia's arguments that Apple did not properly plead such defense.  While
Apple's presentation thereof was untimely, the decision of scope is one of law and did
not cause undue prejudice to MobileMedia in the current litigation context.

marketed a product within the United States that practices the asserted patent. The Federal Circuit has not provided clear guidance on this issue and the case law remains split. Certain courts hold that the burden is properly on patentee to prove that it never marketed a patented product. Other courts hold that the accused infringer must first come forward with proof that the patentee sold a patented product as, absent such product, there would be nothing to mark. Upon that threshold showing the burden shifts to the patentee to show compliance with the marking statute. *See Sealant Sys. Int'l, Inc. v. TEK Glob. S.R.L.*, Civ. No. 11-774-PSG, 2014 WL 1008183, at *29-31, nn.222-23 (N.D. Cal. Mar. 7, 2014) (gathering cases); *Golden Bridge Tech. Inc v. Apple, Inc.*, Civ. No. 12-4882-PSG, 2014 WL 1928977, at *11-12 (N.D. Cal. May 14, 2014). "The marking statute serves three related purposes: 1) helping to avoid innocent infringement; 2) encouraging patentees to give notice to the public that the article is patented; and 3) aiding the public to identify whether an article is patented." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (citations omitted). The court concurs with the reasoning requiring an alleged infringer (seeking to limit damages) to come forward with particular unmarked products allegedly triggering § 287. Without such a threshold showing, the "universe of products for which [MobileMedia] would have to establish compliance with, or inapplicability of, the marking statute would be unbounded." *See Sealant Sys.*, 2014 WL 1008183, at *31. In the case at bar, Apple has not met this initial burden. The court denies Apple's motion for summary judgment.

## IV. MOTIONS TO EXCLUDE

Rule 702 of the Federal Rules of Civil Procedure allows a qualified witness to testify in the form of an opinion if the witness' "scientific, technical, or other specialized

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and if his/her testimony is the product of reliable principles and methods which have been reliably applied to the facts of the case.

## A. Pertinent Art

Dr. Gareth Loy ("Loy") received a Doctor of Musical Arts degree from Stanford University focusing on computer science, digital signal processing, and computer systems for audio, real-time computing, and compiler technology.  He taught graduate courses in computer science and digital signal processing at the University of California, San Diego for a decade and worked as a software architect, information engineer, and digital audio engineer for another decade.  (D.I. 660, ex. 1)

The '155 patent "relates to an information processing apparatus and . . . method, and a providing medium, and more particularly, relates to an information processing apparatus and . . . method and a providing medium which can guide a variety of routes without holding map data."  (1:8-12)  The patent specifies that the information processing apparatus and method "can be utilized in a portable navigation system," with certain of the claim limitations specifying detecting Global Positions System ("GPS") information.  (17:46, 55-56, 18:33-34)

Apple seeks to limit the field of pertinent art to "navigation systems and location detection," thereby excluding Dr. Loy's opinions as outside his general experience in embedded systems and information processing.  That the patent uses the information processing apparatus and method to process navigation and location information does not narrow the field of pertinent art as Apple suggests.  Indeed, the accused products are iPhones and iPads executing certain Apple software.  Dr. Loy's experience with

11

embedded systems and information processing may be applied to the interpretation and application of processing navigation and location information as directed by the '155 patent.[6] Apple's motion is denied.

### B.  Royalty Rates

Generally, "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010). More specifically, "[t]he degree of comparability of . . . license agreements as well as any failure on the part of [the] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion." *ActiveVideo Networks, Inc. v. Verizon Comm., Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *see also Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1331 (Fed. Cir. 2014) (finding that "though there were undoubtedly differences between the licenses at issue and the circumstances of the hypothetical negotiation, '[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject'") (citation omitted).  In contrast, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012); *see also, ResQNet.com, Inc. v.*

---

[6] The cases cited by Apple are distinguishable.  For example, in *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008), the Federal Circuit held that a patent attorney, with no experience in the field of tarps or covers (the pertinent art), who "practiced as an engineer for but a year and a half in unrelated areas," was "not qualified to testify as an expert witness on the issues of infringement or validity."). *Id.* at 1361-62.

*Lansa, Inc.*, 594 F.3d 860, 871-72 (Fed. Cir. 2010) (criticizing an expert who relied on licenses to inflate his royalty recommendation, with "little or no evidence of a link between [such] licenses and the claimed invention").

MobileMedia's expert, John Jarosz ("Jarosz"), presents a hypothetical negotiation and calculates a reasonable royalty rate based on certain license agreements and the economics of patent portfolios. (D.I. 653, ex. A at 30-59) He explains that "the patented features at issue in this matter improve the overall user experience and ease of use of the accused Apple products." He then selects certain Apple patents at issue in a prior litigation,[7] which patents covered features contributing to a device's ease of use. He uses the reasonable royalty rates (adjusted for certain variables) claimed by Apple for these features in an "incremental benefits analysis" to test his calculated royalty rates. (*Id.* at 84-90)

Apple objects to the use of the royalty rates from the prior litigation, asserting that no evidence supports that any of the eight patents are technologically or economically comparable to the patents at bar. Additionally, according to Apple, the circumstances of the royalty rate calculations in the prior litigation (based on a hypothetical negotiation between Apple as licensor and Samsung as licensee) are substantially different than those of the case at bar. (D.I. 639)

Jarosz's analysis is sufficiently detailed. He offers reasons for his patent selection and acknowledges and adjusts the royalty rates for the differing circumstances of the prior litigation. Accordingly, the court is persuaded that the evidence used by

---

[7] *Apple Inc. v. Samsung Electronics Co. Ltd.*, Civ. Nos. 11-1846-LHK and 12-630-LHK (N.D. Cal.).

13

Jarosz is "sufficiently related" and any disagreements by Apple regarding his factual assumptions, considerations, and conclusions are more properly addressed via cross examination. Apple's motion to exclude these opinions is denied.

## C. Survey Evidence

Admissible evidence "must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com*, 594 F.3d at 869 (citations omitted). MobileMedia's expert, Dr. Tulin Erdem ("Dr. Erdem"), conducted a survey regarding the '155 patent. Apple seeks to strike a survey question as having too broad a footprint.[8] Specifically, Dr. Erdem stated that "the benefits of the '155 patent relate to quicker and more accurate location detection." (D.I. 654 at 6) Such description was used as one of the "features" in survey questions.[9] The feature "quicker and more accurate location detection" was more fully described as "[y]our iPhone automatically calculates your location using cellular, Wi-Fi, and GPS when using navigation apps. This can reduce the time needed to calculate your location from several minutes to just a few seconds without sacrificing accuracy." (D.I. 654, app. A at 9) Dr. Erdem relied in part on Dr. Loy's report in formulating the survey question. Specifically, Dr. Loy agreed with the examiner that using any of three different modes to detect positional information is complementary and allows the results to be combined or used as fallbacks. (D.I. 654, ex. 2 at ¶ 70) Dr. Loy also cited to an Apple press release noting

---

[8] The court requested that the parties' submit the survey and supporting evidence for its review. While the parties did so, the court points out that such submission would have been substantially more helpful had the parties listed the pages containing the "enclosed red boxes and blue boxes," i.e., the material designated by the parties for the court's review.

[9] For example, the survey asked: "How satisfied or dissatisfied are you with the following iPhone features?" (D.I. 654, app. A at 12)

the "benefits made possible by the '155 patented invention" – the "iPhone's ability to

calculate iPhone users' locations [in just a few seconds] by using cell towers, Wi-Fi

hotspots and Global Positions System ("GPS") satellites." (*Id.* at ¶ 324)  Dr. Loy's

deposition testimony used the term "redundancy" to describe the fallback capability.[10]

The court concludes that the survey question is sufficiently tied to Dr. Loy's opinion

regarding the benefit of the patent.[11]  Apple's request to exclude the survey question is

denied.

## D. Non-Infringing Alternatives

The existence of a non-infringing alternative may be relevant to the determination

of a royalty rate. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996).  The

parties dispute whether Apple's non-infringing alternatives would have been

commercially acceptable.  Having reviewed the parties' submissions and cited case-law,

the court concludes that "empirical evidence, such as user surveys, customer

interviews, or market data" are not mandatory as argued by MobileMedia.  Instead, the

cases suggest that courts generally allow opinion evidence. *Micro Chem., Inc. v.*

*Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003) (discussing *Grain Processing Corp.*

*v. American Maize–Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999), which did not erect a

---

[10] Provided to the court during oral argument on the issue.  (Tr., June 28, 2016 at 132;
Tr., April 21, 2016 at 45)

[11] In contrast, in *Fractus, S.A. v. Samsung*, Civ. No. 6:09-CV-203-LED-JDL, 2011 WL
7563820 (E.D. Tex. Apr. 29, 2011), the patent at issue was directed to "one type of
internal antenna that purportedly provides advantages such as multiband functionality
and reduced size."  The survey "was intended to determine the relative importance of
internal antennas in cell phones to consumers" vs. external antennas.  The court
reasoned that "the surveys do not measure how consumers value the purported
advantages provided by [p]laintiff's technology . . . but merely measure the perceived
consumer value of cell phones with any internal antennas" and excluded the survey
evidence. *Id.* at *1.

15

rigid test for determining availability). MobileMedia's arguments go to the weight of the expert's testimony, not to the admissibility. *See e.g., TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1013-14 (N.D. Cal. 2013) (explaining that the court would not exclude an expert's opinions regarding a non-infringing alternative, even though the expert "had not analyzed whether the proposed alternatives would be acceptable with respect to consumers or the marketplace" as defendant stated that it would introduce other evidence); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civ. No. 09-290, 2012 WL 3686736, at *5 (W.D. Pa. Aug. 24, 2012) (concluding that plaintiff's objections to expert testimony were better addressed in cross-examination, when the expert did not specifically state that the non-infringing alternative was "acceptable" to consumers). MobileMedia's request to exclude the opinion on non-infringing alternatives is denied.

## V. CONCLUSION

For the foregoing reasons, the court denies Apple's motion for summary judgment on damages (D.I. 633) and denies Apple's motions to exclude (D.I. 636, 639). Apple's request to exclude the survey question is denied. MobileMedia's request to exclude the opinion regarding non-infringing alternatives is denied. An appropriate order shall issue.