IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IRONWORKS PATENTS, LLC,          )
                                 )
        Plaintiff,               )
                                 )
    v.                           )          Civ. No. 10-258-SLR
                                 )
APPLE, INC.                      )
                                 )
        Defendant.               )
                                 )

---

Brian E. Farnan, Esquire and Michael J. Farnan, Esquire of Farnan LLP, Wilmington, Delaware. Of Counsel: David Berten, Esquire and Alison A. Richards, Esquire of Global IP Law Group, LLC  Counsel for Plaintiff.

Richard K. Herrmann, Esquire and Mary Matterer, Esquire of Morris James LLP, Wilmington, Delaware. Of Counsel: Tara D. Elliott, Esquire of Wilmer Cutler Pickering Hale and Dorr, and Melody Drummond Hansen, Esquire, Luann L. Simmons, Esquire, and Xin-Yi Zhou, Esquire of O'Melveny & Myers LLP  Counsel for Defendant.

---

## MEMORANDUM OPINION

Dated: June 12 , 2017
Wilmington, Delaware

ROBINSON, Senior District Judge

## I. INTRODUCTION

On March 31, 2010, plaintiff MobileMedia Ideas LLC ("MMI") filed suit against defendant Apple, Inc. ("defendant"), alleging infringement of a number of patents including U.S. Patent No. RE 39,231 ("the '231 patent). As part of an extensive motion practice, on November 8, 2012, the court construed the relevant claim terms of the '231 patent and granted summary judgment of noninfringement in favor of defendant. (D.I. 461 at 45) The court denied reconsideration (D.I. 539, 540), and the parties went to trial on the other patents-in-suit in December 2012. (*See, e.g.*, D.I. 506 (verdict sheet)) After post-trial briefing, and the court's memorandum opinion and order (D.I. 539, 540), the parties appealed to the Federal Circuit. (D.I. 548, 550) The Federal Circuit construed the '231 patent and vacated and remanded the court's finding of noninfringement. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1181 (Fed. Cir. 2015) ("Consistent with the specification, 'controlling the alert sound generator to change a volume of the generated alert sound' by the 'control means' encompasses both stopping and reducing the volume of the alert sound as recited in dependent claims 2 and 3, respectively."). The court held a five-day jury trial from September 12-18, 2016 on infringement, validity, and damages of claims 12 and 2 of the '231 patent. On September 20, 2016, the jury returned a verdict that defendant's iPhone infringes claims 12 and 2 of the '231 patent. (D.I. 704 at 2) The jury determined that the asserted claims are not invalid as obvious or for indefiniteness. (D.I. 704 at 2-3) As a consequence of this infringement, the jury awarded MMI damages of $3 million. (D.I. 704 at 4) After post-trial briefing was complete, Ironworks Patents LLC ("Ironworks")

acquired rights in the '231 patent and was substituted as the plaintiff; MMI withdrew from this matter.[1]  (D.I. 734)

Presently before the court are the following motions:  (1) Ironworks' renewed motion for judgment as a matter of law or motion for a new trial with respect to damages (D.I. 712); (2) Ironworks' motion for an award of prejudgment and postjudgment interest (D.I. 713); and (3) defendant's renewed motion for judgment as a matter of law or motion for a new trial with respect to validity, infringement, and damages (D.I. 714). The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND

The '231 patent, entitled "Communication Terminal Equipment and Call Incoming Control Method," was filed under U.S. Application No. 09/571,650 on December 13, 1995, claiming priority to an application filed in Japan on December 19, 1994. The '231 patent originally issued on November 30, 1998 as U.S. Patent No. 5,995,852 and was reissued on August 8, 2006. As part of related litigation against other defendants in other courts, on February 10, 2011, Research In Motion, Ltd. requested an *ex parte* reexamination of the '231 patent.[2]  In a reexamination certificate that issued April 3, 2012, claims 1, 11, 13-16, and 18-23 were cancelled; claims 2-4, 8, 12, and 17 were amended and determined to be patentable; claims 5-7, 9 and 10 were determined to be patentable as dependent on an amended claim, and new claims 24-29 were determined to be patentable. ('231 patent, *ex parte* reexamination certificate at 1:20-29)

The patent teaches communication terminal equipment and a method for stopping or reducing the volume of an alert sound for an incoming call on a telephone.

---

[1] The court refers to MMI and Ironworks collectively as ("plaintiff") except where a specific reference (e.g. "an MMI employee" and "an MMI license") is necessary.
[2] *See* File Wrapper, U.S. Application No. 90/011,482, "Receipt of Orig. Ex Parte Request by Third Party" (Feb. 10, 2011).

('231 patent, abstract) Conventionally, a "call incoming on a telephone is informed by means of an alert sound," but the alert sound "does not stop ringing before a user effects [a] next operation." ('231 patent, 1:17-20) A user who cannot respond to a call incoming has only the option to forcibly disconnect the incoming call, turn off the telephone, or allow the alert sound to continue ringing. ('231 patent, 1:20-25) The first two options, forcibly disconnecting the incoming call or turning off the telephone, may give the person on the call origination side an "unpleasant feeling because [he or she] can notice that the circuit was broken off intentionally" or may give the person the impression that the telephone network has failed. ('231 patent, 1:26-30, 39-42) Moreover, a user who turns off the power may forget to turn the power back on and miss the next incoming call. ('231 patent, 1:37-39) On the other hand, the third option, allowing the alert sound to continue ringing, may disturb the user or other persons in the surroundings. ('231 patent, 1:3-33)

In light of these problems, the invention aims "to provide a communication terminal equipment which is superior in selecting and handling properties for users . . . ." ('231 patent, 1:43-46) It teaches a telephone in which an alert sound muting or volume reducing function is allotted to a key. ('231 patent, 2:2-5; 4:40-42; 5:12-17) When the telephone receives an incoming call, the user can use a predetermined operation, such as depressing a key for a short time, to prompt the "alert on/off controller" to stop generation of the alert sound. ('231 patent, 3:36-48) Alternatively, the alert sound may be reduced. ('231 patent, 4:40-42)

Claims 2, 3, 4, and 12 are at issue. During reexamination, claim 12 was amended to recite as follows:

12. A communication terminal for informing a user of a received call from a remote caller by an alert sound, comprising:

an alert sound generator for generating the alert sound when the call is received from the remote caller;

3

control means for controlling said alert sound generator; and

means for specifying a predetermined operation by the user,

wherein when said alert sound generator is generating the alert sound and said means for specifying said predetermined operation is operated by the user, said control means controls said alert sound generator to change a volume of the generated alert sound only for the received call, without affecting the volume of the alert sound for future received calls, while leaving a call ringing state, as perceived by the remote caller, of the call to the terminal from the remote caller unchanged,

further comprising:

RF signal processing means for transmitting and/or receiving radio waves; and

an antenna for transmitting and/or receiving said radio waves, wherein said communication status between said apparatus and said remote caller is established by said transmitted and/or received radio waves.

('231 patent, *ex parte* reexamination certificate, 2:11-39)

Reexamined claims 2, 3, and 4 are all dependent from claim 12. Reexamined claim 2 adds the limitation that the "control means controls the state of said alert sound generator to stop the sound." Reexamined claim 3 adds the limitation that the alert sound generator reduces the volume of the sound. Finally, reexamined claim 4 adds the limitation "where said predetermined operation is an operation depressing a predetermined operation key."

## III. STANDARD OF REVIEW

### A. Renewed Motion for Judgment as a Matter of Law

The Federal Circuit "review[s] a district court's denial of judgment as a matter of law under the law of the regional circuit. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1325 (Fed. Cir. 2016) (citation omitted). In the Third Circuit, a "court may grant a judgment as a matter of law contrary to the verdict only if 'the record is critically deficient of the minimum quantum of evidence' to sustain the verdict." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009) (citing *Gomez v. Allegheny*

4

*Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)); *see also McKenna v. City of Philadelphia*, 649 F.3d 171, 176 (3d Cir. 2011). The court should grant judgment as a matter of law "sparingly," and "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citing *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 545 n.8 (3d Cir. 2007)). "In performing this narrow inquiry, [the court] must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [its] own version of the facts for that of the jury. *Id.* (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)). Judgment as a matter of law may be appropriate when there is "a purely legal basis" for reversal "that does not depend on rejecting the jury's findings on the evidence at trial." *Acumed*, 561 F.3d at 211.

### B. Motion for a New Trial

Federal Rule of Civil Procedure 59(a) provides, in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed. R. Civ. P. 59(a). The decision to grant or deny a new trial is within the sound discretion of the trial court and, unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) (citing *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282 (3d Cir. 1993)); *LifeScan Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 345, 350 (D. Del. 2000) (citations omitted); *see also* 9A Wright & Miller, *Federal Practice and Procedure* § 2531 (2d ed. 1994) ("On a motion for new trial

the court may consider the credibility of witnesses and the weight of the evidence.").
Among the most common reasons for granting a new trial are: (1) the jury's verdict is
against the clear weight of the evidence, and a new trial must be granted to prevent a
miscarriage of justice; (2) newly-discovered evidence exists that would likely alter the
outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced
the verdict; or (4) the jury's verdict was facially inconsistent. *See Zarow–Smith v. N.J.
Transit Rail Operations*, 953 F. Supp. 581, 584-85 (D.N.J. 1997) (citations omitted).
The court must proceed cautiously, mindful that it should not simply substitute its own
judgment of the facts and the credibility of the witnesses for those of the jury. Rather,
the court should grant a new trial "only when the great weight of the evidence cuts
against the verdict and a miscarriage of justice would result if the verdict were to stand."
*Leonard*, 834 F.3d at 386 (citing *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006)
and *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991)) (internal
quotation marks omitted).

## IV. DISCUSSION

### A. Defendant's Renewed JMOL – Liability

Defendant argues that "JMOL of noninfringement should be granted because no
reasonable jury could have found that the accused iPhones literally infringe claims 12
and 2 of the '231 patent." (D.I. 717 at 12) In support, defendant contends that: (1) the
"alert sound generator" as construed under § 112, ¶ 6, requires plaintiff to show "that
the accused iPhones contain structures identical to the structure disclosed in the '231
patent;" (2) plaintiff did not provide sufficient evidence of infringement of the "control
means" limitation; and (3) plaintiff's expert only testified as to the iPhone 3GS and did
not present sufficient evidence of infringement by the other accused iPhone products.
(D.I. 717 at 12-13)

6

### 1. **Standard**

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a). To prove direct infringement, the patentee must establish that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). A two-step analysis is employed in making an infringement determination. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). First, the court must construe the asserted claims to ascertain their meaning and scope, a question of law. *Id.* at 976-77; *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, __ U.S. __, 135 S. Ct. 831, 837 (2015). The trier of fact must then compare the properly construed claims with the accused infringing product. *See Markman*, 52 F.3d at 976. This second step is a question of fact. *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015) (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

"Direct infringement requires a party to perform each and every step or element of a claimed method or product." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (quoting *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007)). "If any claim limitation is absent . . ., there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. *Ferring B.V. v. Watson Labs., Inc.-Florida*, 764 F.3d 1401, 1411 (Fed. Cir. 2014) (citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.")). However, "[o]ne may infringe an independent claim and not

7

infringe a claim dependent on that claim." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (quoting *Wahpeton Canvas*, 870 F.2d at 1552) (internal quotations omitted). The patent owner has the burden of proving literal infringement by a preponderance of the evidence. *Octane Fitness*, 134 S. Ct. at 1758.

### 2. All accused iPhone products

Defendant argues that plaintiff "presented no evidence at trial that the accused products perform the claimed functions of generating an alert sound and stopping the alert sound using structures identical to any structure disclosed in the '231 Patent specification." (D.I. 717 at 13, citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1345-46 (Fed. Cir. 2016))

### a. "Alert sound generator"

Defendant argues that plaintiff "presented no evidence that the iPhone's components are identical to the 'alert sound generator 13' in Figure 2 of the '231 patent." (D.I. 717 at 13) The court construed "an alert sound generator for generating the alert sound when the call is received from the remote caller" under § 112, ¶ 6, and identified that "[t]he function is generating the alert sound when the call is received from the remote caller" and "[t]he structure is an alert sound generator (such as the alert sound generator 13 in the '231 patent." (D.I. 703 at 19 (emphasis omitted)) Defendant repeatedly sought to limit the construction to item 13 in figure 2, and the court disagreed. (*See, e.g.*, D.I. 739 at 941:4-23) This motion is essentially a request for reconsideration.

### i. Standard

A motion for reconsideration is the "functional equivalent" of a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990) (citing *Fed. Kemper Ins. Co. v.*

*Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986)). The standard for obtaining relief under Rule 59(e) is difficult to meet. The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A court should exercise its discretion to alter or amend its judgment only if the movant demonstrates one of the following: (1) a change in the controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted. *See id.* A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made and may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

### ii. Analysis

Defendant argues that plaintiff "can establish infringement only by proving that the accused iPhones contain structures identical to the structure disclosed in the '231 patent specification. (D.I. 717 at 12) Defendant presents no new evidence to support its argument, identifies no changes in the law, and addresses no clear errors of law or fact in the court's construction. *Max's Seafood Cafe*, 176 F.3d at 677. Therefore, the court denies defendant's motion for reconsideration.

### b. "Control means"

Plaintiff presented testimony from Sigurd Meldal, PhD ("Dr. Meldal") in which he opined that, in the accused iPhone products, the "control means" limitation is met by the CPU running software and the "L61" audio interface. (D.I. 737 at 412:18-413:23; *see also* D.I. 740 at 1080:8-1081:10, 1134:1-10) Defendant's expert, Ravin Balakrishnan,

PhD ("Dr. Balakrishnan"), opined that "the accused iPhones do not have the control means element." (D.I. 739 at 842:2-8)

Defendant argues that "[w]ith respect to the 'control means,' [plaintiff] failed to present any evidence that the accused iPhones include a structure identical to the structure disclosed in the specification—a CPU and an alert sound generator on/off controller." (D.I. 717 at 14) The jury was instructed that "control means for controlling said alert sound generator" is construed under § 112, ¶ 6, "[t]he function is controlling the alert sound generator to change a volume of the generated alert sound," and "[t]he structure is CPU and alert sound generator on/off controller." (D.I. 703 at 19 (emphasis omitted)) Dr. Meldal expressed the opinion that the CPU, software, and the L61 audio is the structure that performs the identified function. Dr. Balakrishnan disagreed. The jury credited the testimony of Dr. Meldal over that of Dr. Balakrishnan. The court declines to re-weigh the evidence or the credibility of the witnesses. Viewing the record in the light most favorable to plaintiff, substantial evidence supports the jury's verdict. For these reasons, defendant's renewed motion for JMOL is denied.

### 3. iPhone 3G, iPhone 4 GSM, and iPhone 4 CDMA

Defendant presents numerous overlapping arguments as to liability on the iPhone 3G, iPhone 4 GMS, and iPhone 4 CDMA. (D.I. 717 at 16-17) With respect to the "alert sound generator" term, the court declines to reconsider defendant's duplicative arguments as to these three accused devices. Defendant argues that "for the limitation '[wherein] said call ringing state between said apparatus and said remote caller is established by said transmitted and/or received radio waves,' Dr. Meldal relied exclusively on the iPhone 3GS's practice of the GSM standard." (D.I. 717 at 17 (citing D.I. 737 at 424:20-425:4)) Defendant contends that plaintiff "presented no infringement evidence for any CDMA product." (D.I. 717 at 17) Dr. Meldal expressed the opinion that, for limitation "F," the iPhone 3G and the iPhone 4 (CDMA and GSM) contain the

same limitation "for the same reasons if not exactly the same hardware."[3] (D.I. 737 at 426:6-10) Dr. Meldal performed a limitation-by-limitation analysis of the iPhone 3GS as compared to claims 12 and 2 of the '231 patent. (D.I. 737 at 407:21-408:22, 410:2-21, 411:1-412:2, 412:18-413:23, 416:17-417:18, 418:2-421:16, 421:20-422:20, 423:3-425:4, 426:11-20) Dr. Meldal addressed the comparisons between the iPhone 3GS and the other accused iPhone products on a limitation-by-limitation basis. (D.I. 737 at 409:1-3, 412:13-17, 416:13-16, 417:19-23, 421:17-19, 422:21-423:2, 426:6-10, 426:21-23) The jury credited the testimony of Dr. Meldal and concluded that the iPhone 3G, iPhone 4 GSM, and iPhone 4 CDMA infringe the claims. The court declines to re-weigh the evidence or the credibility of the witnesses. Viewing the record in the light most favorable to plaintiff, substantial evidence supports the jury's verdict. For these reasons, defendant's renewed motion for JMOL is denied.

### 4. New trial – liability

In the alternative, defendant requests a new trial on liability should the court deny the renewed motion for JMOL. (D.I 717 at 20) Defendant's request is premised on the same arguments as its renewed motion for JMOL with respect to liability. (*Id.*) Defendant asks the court to exercise its own judgment in assessing the evidence, and reach the opposite conclusion as the jury. (*Id.*) For the reasons discussed above, the jury's verdict is not against the clear weight of the evidence, therefore, the court denies defendant's request for a new trial on liability.

### B. Defendant's Renewed JMOL – Validity

Defendant has moved for a JMOL that the '231 patent is invalid on three grounds: indefiniteness, obviousness, and lack of written description. (D.I 717 at 3)

---

[3] Defendant argues that this type of opinion testimony is insufficient evidence of infringement. (D.I. 717 at 16-17)

Plaintiff responds that defendant is "reargu[ing] the myriad of issues it has lost throughout the case." (D.I. 724 at 1)

## 1. Indefiniteness

Defendant argues that claims 12 and 2 of the '231 patent are indefinite. Defendant contends that plaintiff's evidence of infringement with respect to the "alert sound generator for generating the alert sound" term was an "attempt to claim all past, current, and future structures for performing a function [, which] violates the fundamental prohibition against 'pure functional claiming' and renders the asserted claims indefinite." (D.I. 717 at 6) As to the "control means for controlling said alert sound generator" term, defendant asserts that "[d]uring trial, [plaintiff] did not identify any computer algorithm disclosed by the specification, instead relying exclusively on the recited function. Because the '231 Patent fails to disclose an algorithm for the claimed function, the 'control means' term is indefinite." (D.I. 717 at 6 (citation omitted)) These are re-arguments of positions that defendant lost at summary judgment, therefore, the court treats these as motions for reconsideration.

### a. "Alert sound generator"

Defendant argued at summary judgment that "the '231 Patent specification fails to disclose structure corresponding to the 'alert sound generator' term's claimed functions" and the term, therefore, is indefinite. (D.I. 578 at 9) "Consistent with Dr. Meldal's opinion, the court conclude[d] that those of skill in the art would recognize the structure in the specification and associate it with the corresponding functions of the claim." (D.I. 630 at 13) Defendant contends that, in light of plaintiff's infringement evidence, the claims are indefinite, but defendant fails to identify any factors that would assist the court in reconsidering its summary judgment opinion. (D.I. 717 at 3-6) Therefore, the court denies defendant's motion for reconsideration. *Max's Seafood Cafe*, 176 F.3d at 677.

12

### b. "Control means"

At summary judgment, defendant argued that "all asserted claims are invalid as indefinite" for failing "to disclose sufficient structure," such as an algorithm, for the "control means for controlling said alert sound generator" term. (D.I. 578 at 14) "The court disagree[d]. As explained [in the memorandum opinion], an algorithm may be disclosed in any format. At bar, the ['231 patent] specification discloses (using words and figures) the process by which the corresponding structure performs the given function." (D.I. 630 at 14) Defendant articulates no basis upon which the court should reconsider its summary judgment opinion, therefore, the court denies defendant's motion for reconsideration. *Max's Seafood Cafe*, 176 F.3d at 677.

### 2. Obviousness

Defendant contends that Dr. Meldal "admitted that the obviousness dispute boils down to whether it would have been obvious to implement 'polite ignore'[4] in a cellular phone" and that, therefore, "the claimed invention is obvious as a matter of law." (D.I. 717 at 7, citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007); *see also* D.I. 740 at 1157:24-1158:8) Defendant argues that "[t]he '231 patent does not disclose anything beyond the application of 'polite ignore' to an otherwise unmodified cellular phone." (D.I. 717 at 8) Plaintiff contends that defendant's "obviousness arguments wrongly characterize the 'essence of the alleged invention' as 'polite ignore'" and substantial evidence in the record demonstrated that the '231 patent is not obvious in light of the Motorola and Panasonic references, either individually or in combination. (D.I. 724 at 7)

---

[4] Despite defendant's repeated use of this term, the intrinsic record is devoid of it.

13

### a. Standard

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Obviousness is a question of law, which depends on underlying factual inquiries.

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR*, 550 U.S. at 406 (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).

"[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 418. Likewise, a defendant asserting obviousness in view of a combination of references has the burden to show that a person of ordinary skill in the relevant field had a reason to combine the elements in the manner claimed. *Id.* at 418-19. The Supreme Court has emphasized the need for courts to value "common sense" over "rigid preventative rules" in determining whether a motivation to combine existed. *Id.* at 419-20. "[A]ny need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 420. In addition to showing that a person of ordinary skill in the art would have had reason to attempt to make the composition or device, or carry out the claimed process, a defendant must also demonstrate that "such a person would

have had a reasonable expectation of success in doing so." *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007).

A combination of prior art elements may have been "obvious to try" where there existed "a design need or market pressure to solve a problem and there [were] a finite number of identified, predictable solutions" to it, and the pursuit of the "known options within [a person of ordinary skill in the art's] technical grasp" leads to the anticipated success. *Id.* at 421. In this circumstance, "the fact that a combination was obvious to try might show that it was obvious under § 103." *Id.*

A fact finder is required to consider secondary considerations, or objective indicia of nonobviousness, before reaching an obviousness determination, as a "check against hindsight bias." *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1079 (Fed. Cir. 2012). "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Graham*, 383 U.S. at 17-18.

"Patents are presumed to be valid, and overcoming that presumption requires clear and convincing evidence." 35 U.S.C. § 282; *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1333 (Fed. Cir. 2015) (citing *Microsoft Corp. v. i4i Ltd. P'ship.*, 564 U.S. 91, 95 (2011) (holding that an invalidity defense must be proved by clear and convincing evidence)). In conjunction with this burden, the Federal Circuit has explained that,

> [w]hen no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (citations omitted).

### b. Analysis

Defendant has argued extensive propositions of law[5] to support its position that the '231 patent is simply the application of the "polite ignore" feature to a mobile phone. (D.I. 717 at 7-11)  At trial, defendant carried the burden to prove obviousness by clear and convincing evidence.  (D.I. 703 at 14, 27, 28, 31, 33)  The jury found claims 12 and 2 of the '231 patent to be valid and infringed.  (D.I. 704 at 2)  In its motion, defendant must show that "the record is critically deficient of the minimum quantum of evidence to sustain the verdict."  *Acumed*, 561 F.3d at 211.  In its brief, defendant dedicates a single sentence to the evidence supporting obviousness:

> when combined with the knowledge of a person of ordinary skill in the art, Panasonic (DTX-271, DTX-272, and PTX-272A) and Motorola (DTX-260) each renders obvious claims 12 and 2 as a matter of law.  See Trial Tr. at 864:3-874:3, 894:19-897:12.

(D.I. 717 at 7)  Defendant has failed to "state with particularity the grounds" for its motion for judgment as a matter of law.  Fed. R. Civ. P. 7(b)(1)(B).  Therefore, defendant's motion is denied.

### 3. Written Description

According to defendant, the written description must demonstrate that the inventor was in possession of the infringing product.  (D.I. 731 at 7 ("nothing suggests the inventors possessed an invention that generates an alert sound via a digital audio file subsystem—the accused structure in the accused iPhones."))  Similarly, defendant contends that the '231 patent fails to satisfy the written description requirement,

---

[5] Perhaps these arguments are better suited for an appellate brief.

because the claims are broad.[6] (D.I. 731 at 7 ("The breadth of these claims renders them invalid because nothing in the specification suggests the inventors were in possession of such a broad invention at the time of filing.")) Meanwhile, defendant argues that Dr. Meldal's testimony on infringement and no invalidity leads to inconsistent arguments that ultimately points to lack of written description.[7] (D.I. 717 at 11-12 ("[Plaintiff's] position confuses enablement with written description and contradicts its position on obviousness . . . . And in his attempt to distinguish prior art, [plaintiff's] expert identified numerous supposed challenges of applying 'polite ignore' to cell phones; the '231 Patent says nothing about how to overcome any of those challenges.") Plaintiff argues that substantial evidence supports the jury's finding of no invalidity for lack of written description. (D.I. 724 at 11)

### a. Standard

The statutory basis for the written description requirement, § 112 ¶1, provides in relevant part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . .

The written description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (citation omitted) (internal quotation marks omitted). "In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art

---

[6] It is not apparent how the cited case law supports this proposition. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (finding claims invalid for lack of written description).

[7] *See supra* note 5.

that the inventor had possession of the claimed subject matter as of the filing date." *Id.* (citations omitted). This inquiry is a question of fact; "[t]he level of detail required to satisfy the written description requirement depends, in large part, on the nature of the claims and the complexity of the technology." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012) (citing *Ariad*, 598 F.3d at 1351). Neither examples nor actual reduction to practice is required; "a constructive reduction to practice that in a definite way identifies the claimed invention can satisfy the written description requirement." *Id.* (citing *Ariad*, 598 F.3d at 1352).

### b. Defendant's evidence

Dr. Balakrishnan testified that "there are two claim terms that lack sufficient written description. The first is the alert sound generator. The second is a control means." (D.I. 739 at 853:22-854:1) He explained that, based upon the specification "[a]s one of skill in the art, I don't get a complete visualization of the claimed invention."[8] (D.I. 739 at 854:21-22) On cross-examination about the Panasonic reference and obviousness, plaintiff's counsel at the time asked Dr. Balakrishnan whether the person having ordinary skill in the art (whom he testified "would find the elements of claim 12 to be obvious" in light of Panasonic) "would have found . . . that the patent didn't display with reasonable clarity [that] the inventor knew how to" make the invention. (D.I. 739 at 983:6-9) Dr. Balakrishnan opined that a person having ordinary skill in the art, "in reading the '231 patent, reading the specification and the claims, would have found that the specification did not convey with reasonable clarity to those of skill in the art that the

---

[8] In its reply brief, defendant identified additional testimony in which Dr. Balakrishnan "gave specific examples of how [the '231 patent's] specification was lacking." (D.I. 731 at 7) The court is unable to discern how this evidence relates to the written description requirement. (*See* D.I. 739 at 839:11-841:24 (noninfringement opinion); 853:14-856:23 (indefiniteness and noninfringement opinions)) Defendant also has cited the testimony of Dr. Meldal as supporting its written description position, but none of the cited evidence appears to relate to the written description. (D.I. 717 at 11-12)

inventor was in possession of that information."[9]  (D.I. 739 at 983:10-14)  In a
deposition, one of the inventors of the '231 patent was asked if, in December of 1994,
"was Sony designing a phone that could change the ringer on the phone in a way we
were discussing, changing the ringer volume for an incoming call?"  (D.I. 738 at 748:6-
9)  The inventor responded "[w]ell, this was still a stage of an idea.  It was not yet
developed into a commercial product, I think."[10]  (D.I. 738 at 748:10-12)

### c.  Plaintiff's evidence

Dr. Meldal opined that, with respect to the "alert sound generator," a person of
ordinary skill "would have reasonable clarity that the inventor did, indeed, have
possession of the invention and, in particular, of this particular piece within the
invention."  (D.I. 740 at 1075:20-1076:6)  Dr. Meldal expressed a similar opinion with
respect to the "control means for controlling said alert sound generator."  (D.I. 740 at
1135:11-1136:3)  When asked about Dr. Balakrishnan's testimony on written
description, Dr. Meldal disagreed and reiterated his own opinion.  (D.I. 740 at 1067:2-
1068:2 (discussing the "alert sound generator"), 1081:25-1082:13 (addressing the
"control means"))

### d.  Analysis

Defendant presented evidence from its expert that the '231 patent was invalid for
lack of written description.  Plaintiff's expert disagreed and explained that the written
description requirement was satisfied.  Defendant also presented evidence that the
inventor had not reduced the invention to practice at the time of the patent application,

---

[9] Defendant identified this evidence as supporting its written description position.  Even
though it is not clear from the record that either party was talking about the written
description requirement, the court has included it, because Dr. Balakrishnan uses the
magic words of "the inventor was in possession of."

[10] Defendant argues that this "evidence suggests the inventors were not in possession
of solutions to such problems."  (D.I. 731 at 7)

19

but this is not dispositive. *See Ariad*, 598 F.3d at 1352. The jury credited the testimony of Dr. Meldal over that of Dr. Balakrishnan and found the '231 patent not invalid as lacking written description. The court declines to re-weigh the evidence or the credibility of the witnesses. Viewing the record in the light most favorable to plaintiff, substantial evidence supports the jury's verdict. For these reasons, defendant's renewed motion for JMOL is denied in this regard.

### C. Damages

#### 1. Standard

"A party challenging a jury damages verdict must show that the award is, in view of all of the evidence, either so outrageously high or so outrageously low as to be unsupportable as an estimation of a reasonable royalty." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1345 (Fed. Cir. 2011) (citing *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed.Cir.1995) (en banc) (internal quotation omitted)). The court must "scrutinize the evidence carefully to ensure that the 'substantial evidence' standard is satisfied, while keeping in mind that a reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Id.* (citation and internal quotation omitted).

#### 2. Plaintiff's JMOL

Plaintiff has moved for a JMOL on damages, because defendant did not present opinion testimony from an expert witness on damages, and "the amount of damages has not been put in dispute." (D.I. 716 at 2) Plaintiff contends that "[t]he jury's verdict therefore falls well outside the amounts advocated by the parties, and is far too low to fully compensate MobileMedia." (D.I. 716 at 1) Accordingly, plaintiff requests that the court modify the damages award to reflect the $17.9 million sum proposed by plaintiff's expert. (D.I. 716 at 6-8) Defendant responds that plaintiff failed to "meet its burden to prove that

$17.9 million should be awarded." (D.I. 723 at 9) Moreover, defendant avers that "[t]he trial evidence supported the jury's lower damages award of $3 million." (D.I. 723 at 10)

### a. Plaintiff's evidence

Plaintiff presented testimony from its damages expert, John C. Jarosz ("Jarosz"), who expressed the opinion "that a reasonable royalty that would fairly and adequately compensate MobileMedia is 25 cents per phone. Applying that 25 cents to the number of iPhones that have been accused of infringement here, which is 71.5 million phones, results in total damages of $17.9 million." (D.I. 738 at 537:3-8) In support, Jarosz explained that a hypothetical negotiation is "the most useful method to determine a reasonable royalty." (D.I. 738 at 538:11-19; 540:8-16) Jarosz testified that a hypothetical negotiation differs from a negotiation in the real world, because the "uncertainty is removed" by assuming that "the patent is valid and infringed." (D.I. 738 at 539:3-19) Before addressing the qualitative *Georgia Pacific* factors, Jarosz discussed the two quantitative approaches that he took: licensing comparables and incremental benefits. (D.I. 738 at 545:11-21) Jarosz evaluated various license agreements[11] into which plaintiff had entered, and he expressed the opinion that "[f]rom the licensing comparables approach . . . a reasonable range is 12-and-a-half to 50 cents per phone for the '231 patent." (D.I. 738 at 556:9-15) According to the incremental benefits approach, Jarosz compared defendant's "cut, copy, and paste" feature available on the iPhone as part of a "software upgrade[] covering several features" that defendant had valued at $25 per phone "in its signed financials." (D.I. 738 at 561:6-562:5) Jarosz opined that the cut, copy, and paste feature was worth between 30 cents and 83 cents per phone. (D.I. 738 at 564:4-13) Based upon this quantitative analysis, Jarosz expressed that "the range from the licensing comparables and incremental benefits is 12 and-a-half cents to $0.83." (D.I. 738 at 568:2-3) Jarosz then explained

---

[11] These were licenses of portfolios of patents that included the '231 patent.

21

that he employed the *Georgia-Pacific* factors to arrive at a reasonable royalty "toward the middle to lower end of the [quantitative] range . . . of $0.25 per phone." (D.I. 738 at 570:5-14) Based upon this reasonable royalty, Jarosz opined that $17.9 million "is fair and reasonable compensation." (D.I. 738 at 570:15-22)

### b. Defendant's evidence

Defendant did not offer the testimony of a damages expert and, instead, relied on the testimony it was able to elicit from plaintiff's witnesses.[12] When asked on cross-examination about the "relative value" of the '231 patent in the licensed portfolios, Jarosz testified that:

> I don't know for sure what the value is to Doro, Plantronics, HTC, and BlackBerry. With regard to the first three, there wasn't specific discussion about the patent, making me wonder whether it was terribly valuable to any of those companies. With regards to BlackBerry, there was discussion about [the '231] patent.[13]

(D.I. 738 at 634:14-19) The BlackBerry license was supported by documentary evidence. (PTX 041) ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ ██

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

---

[12] In support, defendant presents extensive attorney argument. (D.I. 723 at 9-15) The court has attempted to summarize the redundant and overlapping evidence identified by defendant.

[13] Defendant argues that, based upon this statement, Jarosz acknowledged that "the only MMI license that specifically discussed the '231 patent was the BlackBerry agreement." (D.I. 723 at 10)

[14] Defendant also cites to its own closing argument as evidence of this license agreement. (D.I. 723 at 10 (citing D.I. 740 at 1303:12-15))

Defendant asked Horn to perform various mathematical calculations.[15] ███

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Defendant presented documentary evidence of an e-mail from an MMI employee to Horn about the Doro license. (DTX 525) ██████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████.

███████████████████████████████████████████████████████████████████

When asked questions about plaintiff's standard term sheet, Horn agreed that the term sheet "does not distinguish the '231 patent from any of the other patents in . . . [plaintiff's] portfolio." (D.I. 737 at 304:5-8 (referencing PTX 30)) █████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Jarosz expressed the opinion that, while he knew "the value of the '231 [patent] to [defendant]," he did not "know for sure what the value is to Doro, Plantronics, HTC, and BlackBerry." (D.I. 738 at 634:7-19)

### c. Analysis

The jury's award of $3 million in damages on 71.5 million accused iPhone devices equates to a royalty of approximately 4.2 cents/unit. Plaintiff presented the testimony of Jarosz, who expressed the opinion that damages should be 25 cents/unit.

---

[15] For reasons discussed herein, absent the statements made by defendant's counsel (with which Horn and Jarosz disagreed, and which is not evidence), the only evidence defendant was able to elicit from Horn and Jarosz were calculation of the averages and not the basis to explain why per-patent averages would be a relevant comparison.

Defendant presented no damages expert and argues that plaintiff failed to meet its burden to prove damages. (D.I. 723 at 9) Defendant avers that it "was not required to 'disprove' [plaintiff's] damages theory" and that the burden lies solely with [plaintiff] to establish damages. (D.I. 723 at 1; *see also id.* at 6, citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010)) The Court in *ResQNet* explained that the burden on damages shifts to the defendant once a plaintiff has come forward with "reliable and sufficient evidence." *ResQNet*, 594 F.3d at 872. In the case at bar, plaintiff came forward with reliable and sufficient evidence[16] of damages in the range between 12.5 cents and 83 cents/unit. Therefore, the burden shifted to defendant to present an alternative damages figure.

Defendant argues that substantial evidence supports the jury's 4.2 cents/unit damages award, because a comparison of per-patent license fees shows that the jury's award is well above the comparable license fees on a per-patent basis and below the amount proposed by Jarosz. (D.I. 723 at 9-15) Defendant illustrated its argument with a graphic:



Total payment on per patent basis

---

[16] Plaintiff's "conservative" numbers were based upon quantitative evidence of MMI licenses to patent families that included the '231 patent as well as an economic analysis according to defendant's public statements about how the company valued the cut, copy, and paste feature.

(D.I. 723 at 12) This chart is not in evidence, and there is no record that defendant presented any evidence supporting its damages position.[17] (See, e.g., D.I. 740 at 1303:6-1307:8 (presenting, at closing argument, a synopsis of the per-patent licensing calculations followed by counsel's opinion that, for damages, "the appropriate number is zero.")) Horn and Jarosz disagreed with defendant's per-patent comparisons. For example, defendant cross-examined Horn about the Doro license as follows:



[17] Or to explain why damages should be solely determined by a comparison to other licenses entered into by plaintiff. It is worth noting that defendant did not present an opinion as to a hypothetical negotiation, nor did defendant present an evaluation of the pertinent Georgia-Pacific factors.



A. **I don't agree with that characterization.**

Q. But that's the math, I'm just saying?

A. That is the math.

(D.I. 737 at 321:12-17; 324:14-326:12 (emphasis added))

The jury was instructed that "[t]he lawyers' statements and arguments are not evidence. Their questions and objections are not evidence." (D.I. 703 at 3) Given the jury's award, defendant may have called into question plaintiff's damages amount; however, defendant's per-patent licensing comparison is based entirely on the statements and arguments of defendant's counsel. Omitting these statements and arguments, and viewing the record in the light most favorable to defendant, the record lacks the minimum quantum of evidence to support the per-patent damages that defendant argues in its brief.

Plaintiff contends that the court should increase damages to the $17.9 million proposed by Jarosz, because "[a] jury is 'entitled to choose a damages award within the amounts advocated by the opposing parties'—but [defendant] here chose not to introduce any evidence as to damages." (D.I. 716 at 1, citing *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1347 (Fed. Cir. 2011)) Defendant responds that "[t]here is no requirement that the jury award a rate advocated by a party." (D.I. 723 at 7) According to defendant, *Spectralytics* supports such a conclusion, because "the Federal

Circuit upheld a jury award of a royalty rate of 5% of sales, when neither party advocated for a 5% rate: plaintiff's expert suggested a 20% rate, and defendant's expert offered a lump sum figure." (Id., citing Spectralytics, 649 F.3d at 1347) The jury in Spectralytics was presented with evidence from competing damages experts and was able to determine a damages award based upon the testimony of both. Similarly, in Fuji Photo Film Co. v. Jazz Photo Corp., 394 F.3d 1368 (Fed. Cir. 2005), "[t]he jury had before it a wide range of reasonable royalty rates propounded by each party's damages expert" and selected a damages amount between the two. Id. at 1378.

In the case at bar, the only damages evidence presented to the jury was the opinion of Jarosz. The jury award of $3 million in damages reflected a per-unit royalty of approximately 4.2 cents/unit, which is below the lowest amount (12.5 cents/unit) discussed by Jarosz. The 12.5 cents/unit royalty is the lowest damages award supported by sufficient evidence; therefore, the court adjusts the damages award to $8,940,544.[18]

### 3. New trial – damages

In the alternative, plaintiff requests a new trial on damages should the court deny the renewed motion for JMOL or fail to adjust the damages award. (D.I 716 at 14) The court has adjusted the damages award. The motion for a new trial is denied.

### 4. Defendant's JMOL

Defendant has moved for "JMOL of no damages[,] because [defendant]'s . . . intervening rights preclude recovery." (D.I. 717 at 17-20) The court addressed this question at summary judgment and concluded that the claims remained substantially identical in scope, [therefore,] intervening rights do not apply." (D.I. 675 at 9)

---

[18] This reflects a 12.5 cents/unit royalty on 71,524,349 iPhones. (See PTX 214 (documenting sales of infringing devices during the relevant time period))

27

Defendant argues that plaintiff's arguments at trial differed from the position it took at summary judgment and these new statements have narrowed the claims; therefore, plaintiff's arguments have created intervening rights that did not exist at the time of summary judgment. (D.I. 717 at 19-20) During closing arguments, plaintiff's counsel at the time referred to "narrowing" the claims to get around a reference. (*See, e.g.,* D.I. 740 at 1225:14-21 ("Patent prosecution is a give-and-take process with the patent office . . . . and that's why we have a claim that's narrowed and limited to cell phones here, even though the background of the patent talks about potential application beyond cell phones.")) Because the court addressed this question of claim scope at summary judgment,[19] defendant's motion is effectively a motion for reconsideration. It is not apparent from the record that plaintiff narrowed the scope of the claims during its closing argument to the jury, therefore, the court denies defendant's motion for reconsideration.

### D. Interest

#### 1. Prejudgment Interest

"[P]rejudgment interest should be awarded under § 284 absent some justification for withholding such an award."). *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Plaintiff has moved for an award of prejudgment interest at the prime rate, compounded quarterly. (D.I. 715 at 3-5) Defendant does not object to the award of prejudgment interest. (D.I. 721 at 1) However, defendant argues for the lower, Treasury Bill interest rate, because "the original patentee, i.e., Sony, delayed in bringing suit." (D.I. 721 at 1) The court sees no reason to employ a lower prejudgment interest rate based upon laches. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby*

---

[19] *See R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1349–50 (Fed. Cir. 2015) ("reviewing the scope of the reexamined and original claims . . . is a matter of claim construction.").

*Prods., LLC*, No. 15-927, slip op. at 16 (U.S. Mar. 21, 2017) (eliminating laches as a defense to patent damages for suits filed within the time frame specified in § 286). Therefore, the court concludes that an award of prejudgment interest at the prime rate, compounded quarterly, is appropriate.[20]

### 2. Postjudgment Interest

Defendant does not contest the award of postjudgment interest. (D.I. 721 at 2, 7) According to the statute, "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. §1961(a). The court entered judgment on September 22, 2016. (D.I. 709) The applicable annual statutory interest rate for the week ending September 16, 2016 (the prior week) is 0.61%. *See* Data Download Program, H.15 Selected Interest Rates, FEDERAL RESERVE SYSTEM, http://www.federalreserve.gov/releases/h15/ (select "Weekly Averages" preformatted data package and download .csv file; data is found in column entitled "Market yield on U.S. Treasury securities at 1-year constant maturity, quoted on investment basis"). Therefore, defendant is liable for statutory postjudgment interest at the 0.61% annual rate.

### V. CONCLUSION

For the foregoing reasons, the court grants-in-part and denies-in-part plaintiff's motion for judgment as a matter of law or new trial on damages (D.I. 712); grants

---

[20] The amount requested − $582,640 (D.I. 715 at 4-5), which represents the prime interest rate as applied to the apportioned revenues and compounded quarterly − is reasonable and consistent with the court's past awards. The court adjusts the amount to $1,736,372 to reflect interest on damages of $8,940.544.

plaintiff's motion for an award of prejudgment and postjudgment interest (D.I. 713); and denies defendant's motion for post-trial relief (D.I. 714).

An appropriate order shall issue.